**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| DAWN CADA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 2:26-cv-2704<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

CLASS ACTION COMPLAINT
011394-12/5087587 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**TABLE OF CONTENTS**

**Page**

I.     NATURE OF THE ACTION .................................................................................1

II.    JURISDICTION AND VENUE .........................................................................5

III.   PARTIES ...........................................................................................................7

IV.    FACTUAL ALLEGATIONS .............................................................................8

     A.   The Contaminated Products ...................................................................8

     B.   Amazon Sells the Contaminated Products in Its Online
          Marketplace and Delivers These Products Directly to Consumers .......9

     C.   Amazon Controls and Creates Content for the Contaminated
          Products' Detail Pages which Make an Overall Impression,
          including the Omissions, Misrepresentations and Partial
          Misrepresentations, that Contradict the Presence of Heavy Metals .....11

     D.   Additionally, Statements about the Contaminated Products on
          Amazon's Product Detail Pages, including on the Packaging, are
          Misleading.............................................................................................43

     E.   The Consumption of Heavy Metals Poses Real Health Risks ...............43

     F.   Negative Health Effects of Arsenic ......................................................45

     G.   Negative Health Effects of Cadmium ...................................................46

     H.   Negative Health Effects of Lead...........................................................48

     I.   The Contaminated Products Contain Levels of Heavy Metals that
          are Unhealthy and Unsafe at Any Level...............................................55

     J.   Defendant Actively Concealed the Truth About the Contaminated
          Products from Consumers......................................................................60

     K.   Protein Powder Products Sold by Amazon Can Be Manufactured
          Without Heavy Metals ..........................................................................62

     L.   The Material Omissions and Misrepresentations Mislead and
          Deceive Reasonable Consumers............................................................63

     M.   Amazon's Knowledge and Failure to Disclose....................................68

V.     CLASS ACTION ALLEGATIONS ..................................................................72

VI.    CLAIMS FOR RELIEF ...................................................................................75

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

COUNT I VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, Wash. Rev. Code Ann. §19.86.010, *et seq.* (Against Defendant on Behalf of the Class)..................................................................................................75

COUNT II FRAUDULENT CONCEALMENT (Based on Washington Law Against Defendant on Behalf of the Class)........................................................79

PRAYER FOR RELIEF ................................................................................................81

JURY DEMAND ..........................................................................................................82

CLASS ACTION COMPLAINT - ii
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Plaintiff Dawn Cada ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Amazon.com, Inc. ("Amazon" or "Defendant") for violations of the Washington Consumer Protection Act, Wash. Code. Ann. ("RCW") §19.86.020, and the common law. Plaintiff alleges the following based upon personal knowledge as to allegations regarding herself, the investigation of her counsel, and on information and belief as to all other allegations.

## I.     NATURE OF THE ACTION

1.     Amazon sells Orgain Organic Protein Powder (the "Contaminated Products")[1] online. Though the Contaminated Products are represented on Amazon's website as having beneficial attributes such as "Cleaner Ingredients," "Quality Ingredients," "Higher Standards," "Non-GMO," "USDA ORGANIC," and "#1 plant protein brand" and providing "Feel Good Energy,"[2] the Contaminated Products' representations and the overall impression it creates are not true and are misleading, as the Contaminated Products are tainted with heavy metals which include lead, cadmium, and arsenic.

2.     Heavy metals are known to pose significant and adverse health risks and consequences to humans. It is well-recognized that there are no safe levels of human exposure to any of the heavy metals, including cadmium and lead.[3] Exposure to heavy metals, including

---

[1] As used herein, the "Contaminated Products" collectively refers to Orgain Organic Vegan Protein + 50 Superfoods Powder in Creamy Chocolate Fudge, Orgain Organic Vegan Protein + 50 Superfoods Powder in Vanilla Bean, Orgain Organic Vegan Protein Powder in Vanilla Bean, and Orgain Organic Vegan Protein Powder in Creamy Chocolate Fudge. Discovery may reveal other products by Defendant that contain heavy metals. Plaintiff reserves her rights to amend and include such additional products and/or heavy metals in this action.

[2] For a list that includes but is not limited to the Contaminated Products' claims, refer to Appendix A.

[3] Transcript from Public Meeting, *Closer to Zero Action Plan: Impacts of Toxic Element Exposure and Nutrition at Different Crucial Developmental Stages for Babies and Young Children* (Nov. 18, 2021), https://www.fda.gov/media/155396/download at 32, 72, 179 (last accessed July 30, 2026) ("*Closer to Zero Public Meeting Transcript*"); *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance* (March 2, 2023), at 5, https://www.fda.gov/media/166188/download (last accessed July 30, 2026) ("Although we may not be able to say the reference level is a safe level, it is a level we could rely on as a benchmark to measure exposure to foods."); *see also* Kevin Loria, *Congressional Report Finds More Problems With Heavy Metals in Baby Food*, Consumer Reports (Sept. 29, 2021, updated Oct. 20,

---

CLASS ACTION COMPLAINT - 1
011394-12/5087587 V1

cadmium and lead, can cause negative health effects, such as various cancers, gastric and vascular disorders, liver, kidney, and brain damage, miscarriages, and reproductive disorders:[4]



3.     Critically, the scientific consensus is that there are no known safe levels of heavy metals: "***On the contrary, for the [heavy metals] we are discussing today, we have not identified safe levels of exposure for developmental outcomes***."[5] Heavy metals accumulate over time resulting in latent health effects that cannot be mitigated and may appear years later.[6] Further,

2021), https://www.consumerreports.org/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/#:~:text=%E2%80%9CThere%2 0is%20no%20safe%20level,research%20and%20testing%20at%20CR (last accessed July 30, 2026) ("Consumer Reports: Heavy Metals in Baby Food"); *see*, *e.g.*, World Health Organization, *Lead Poisoning* (June 10, 2026), https://who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed July 30, 2026) ("WHO Lead Poisoning").

[4] Anirban Goutam Mukherjee, et al., *Heavy Metal and Metalloid Contamination in Food and Emerging Technologies for Its Detection*, Sustainability (Jan. 9, 2023), at p. 4 & fig.1, https://www.mdpi.com/2071-1050/15/2/1195 (last accessed July 30, 2026).

[5] Conrad Choiniere, Center for Food Safety and Applied Nutrition, *Closer to Zero Public Meeting Transcript*, *supra*, at 32 (emphasis added).

[6]*See, e.g.*, Agency for Toxic Substances and Disease Registry ("ATSDR"), *What is the Biological Fate of Lead in the Body?* (May, 24, 2023), https://archive.cdc.gov/www_

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

because heavy metals accumulate in the body over time, even very low-level exposure on a regular basis can be hazardous. This is why the presence of heavy metals is material to reasonable consumers and must be disclosed.

4.    The inclusion or material risk of elevated levels of arsenic, cadmium, and lead also contradict and impede the central function of the Contaminated Products, which are intended to act as a supplement to boost nutrition. Arsenic, cadmium, and lead provide no such benefits and, instead, pose health risks.

5.    Amazon controls the content of product listings that describe the Contaminated Products to consumers. It also conveys the Contaminated Products to consumers, by selling the Contaminated Products directly to consumers through its website.

6.    Amazon sells the Contaminated Products on Amazon.com and markets the Contaminated Products as high quality, clean, and nutritious without disclosing the presence or risk of heavy metals, including lead, cadmium, and arsenic.

7.    Defendant fails to disclose the Contaminated Products contain heavy metals. Nowhere at Amazon's point-of-sale webpage (also referred to as "product detail page") does it disclose to consumers that the Contaminated Products contain heavy metals, including lead, cadmium, and arsenic (collectively, the "Omissions").

8.    The packaging and the point-of-sale webpages for the Contaminated Products contain misrepresentations and partial misstatements that contradict the presence of heavy metals such as lead, cadmium, and arsenic (collectively, the "Misrepresentations").

9.    Defendant knew or, at a minimum, should have known, that the Contaminated Products it sells contained detectable levels of heavy metals, including lead, cadmium, and arsenic,

---

atsdr_cdc_gov/csem/leadtoxicity/biologic_fate.html ("The body accumulates lead over a lifetime and normally releases it very slowly.") (last accessed July 30, 2026); Sustainability Directory, *What are Long-Term Effects of Heavy Metal Exposure?* (Nov. 22, 2025), https://pollution.sustainability-directory.com/question/what-are-long-term-effects-of-heavy-metal-exposure/ ("Bioaccumulation is the key, meaning [heavy metals] build up faster than they can be removed, concentrating in tissues and organs. This buildup is not just a minor inconvenience; it disrupts cellular function, which affects normal body processes.") (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 3
011394-12/5087587 V1

but chose to remain silent and sold the Contaminated Products online anyway, in violation of its statutory duties.

10.    Based on the messaging and overall impression communicated by Defendant's point-of-sale webpages, including the material Misrepresentations and Omissions, no reasonable consumer purchasing protein powder products would expect the Contaminated Products to contain heavy metals, especially since the Contaminated Products are marketed as high quality, clean, and nutritious, and intended to be ingested. Furthermore, reasonable consumers, like Plaintiff, would consider the inclusion of heavy metals like lead, cadmium, or arsenic a material fact when considering what protein powder products to purchase.

11.    Reasonable consumers, like Plaintiff, could not learn of the inclusion of heavy metals in the Contaminated Products unless Amazon included a proper disclosure, because identifying the presence of heavy metals requires expensive and sophisticated laboratory testing. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

12.    Reporting by the Clean Label Project and Consumer Reports showed detectable levels of heavy metals in protein powder products, including the Contaminated Products. The Clean Label Project found 79% of organic protein powders tested over California's Proposition 65's level for lead, with 41% testing more than two times the Proposition 65 level.[7] Consumer Reports tested Orgain Organic Plant-Based Protein Powder Vanilla Bean and found it exceeded its "level of concern" for lead.[8]

13.    Independent laboratory testing conducted by Plaintiff's counsel confirmed the presence of heavy metals in the Contaminated Products.

---

[7] Clean Label Project, *Nearly half of top-selling protein powders exceed safety thresholds for heavy metal contamination*, Jan. 9, 2025, https://cleanlabelproject.org/protein-study/ (last accessed July 30, 2026) ("*Clean Label Project Protein Study*").

[8] Paris Martineau, Consumer Reports, *Protein powders and shakes contain high levels of lead* (Oct. 14, 2025, Updated Jan. 8, 2026), https://www.consumerreports.org/lead/protein-powders-and-shakes-contain-high-levels-of-lead-a4206364640/ (last accessed July 30, 2026) ("Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead").

CLASS ACTION COMPLAINT - 4
011394-12/5087587 V1

| Product | Lead (ppb) | Cadmium (ppb) | Arsenic (ppb) |
|---|---|---|---|
| Orgain Organic Vegan Protein +50 – Vanilla Bean | 37.1 | 32.2 | 17.3 |
| Orgain Organic Vegan Protein +50 – Chocolate Fudge | 18.2 | 84.8 | 15.2 |
| Orgain Organic Vegan Protein Powder Vanilla Bean | 13.2 | 32.2 | 18.8 |
| Orgain Organic Vegan Protein Powder Chocolate Fudge | 26 | 87.9 | 14.1 |

14. Accordingly, reasonable consumers must and do rely on Defendant to honestly and completely report what the Contaminated Products contain.

15. Defendant intended for consumers to rely on the overall impression, Misrepresentations, Omissions, and other deceptive conduct of the advertising and packaging in purchasing the Contaminated Products at a premium. Defendant's business practices—including the Misrepresentations and Omissions—were deceptive, misleading, unfair, and/or false because, among other things, the Contaminated Products contained undisclosed toxic heavy metals.

16. Defendant knows its customers trust the quality of the Contaminated Products it markets and sells and expect the Contaminated Products to conform to the packaging and advertising and be nutritious, healthy, and high quality with no risk of containing detectable levels of heavy metals.

17. Defendant also knows consumers will pay more (*i.e.*, a premium) for products that they are led to believe are free from harmful contaminants such as heavy metals.

18. By engaging in the conduct alleged in this complaint, Defendant has violated Washington state law and the common law on behalf of a class of all purchasers of the Contaminated Products.

## II.  JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because: (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) minimal diversity exists because at least

one member of the proposed class is a citizen of a state different from the Defendant; and (c) the proposed class consists of more than 100 members. Amazon sells the Contaminated Products from coast to coast in the United States and, as such, Class Members are citizens of numerous diverse states outside of Washington. Any exemptions to jurisdiction under 28 U.S.C. §1392(d)(2) do not apply.

20.     Plaintiff has Article III standing to bring this action. Plaintiff suffered a concrete and particularized injury-in-fact: she paid approximately $30 per container for 36 containers of the Contaminated Products (approximately $1,080 total), products she would not have purchased at any price had Amazon disclosed the presence of heavy metals. Plaintiff's injuries are fairly traceable to Amazon's deceptive conduct because, absent the Misrepresentations and Omissions, Plaintiff would not have purchased the Contaminated Products or would have purchased lower-priced alternatives with non-detectable levels of heavy metals. Plaintiff's injuries are redressable by a favorable judicial decision awarding damages and injunctive relief. Plaintiff has standing to seek injunctive relief because she would purchase the Contaminated Products again in the future if she could rely on Defendant's product detail pages, including the Contaminated Products' labeling, to confirm they do not contain heavy metals, but she currently cannot rely on Defendant's product detail pages, including the Contaminated Products' labeling, to make that determination.

21.     The Western District of Washington has personal jurisdiction over Defendant Amazon.com, Inc. because it is headquartered in this District and conducts substantial business in this State and in this District through its headquarters and sale of products, including the Contaminated Products.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is headquartered and resides in this District. Venue is further appropriate in this District pursuant to the forum selection clause in Amazon's online "conditions of use," which are available when a consumer signs up for an Amazon account and makes purchases. The conditions provide that "[a]ny dispute or claim relating in any way to your use of any Amazon Service will be

CLASS ACTION COMPLAINT - 6
011394-12/5087587 V1

adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts."

23. Pursuant to RCW 19.86.095, the Washington Attorney General shall be served with a copy of this Complaint contemporaneously with or shortly after its filing.

### III.    PARTIES

24. Plaintiff Dawn Cada is, and at all relevant times was, a resident and citizen of the State of Florida. During the Class Period, Plaintiff purchased Orgain Organic Vegan Protein + Superfoods in Creamy Chocolate Fudge and Vanilla Bean flavors from Amazon.com for her family, including her child with severe special needs. Plaintiff paid approximately $30 per container for the Contaminated Products, purchasing approximately 36 containers between 2022 and 2026. At the time of each purchase, Plaintiff reviewed the product packaging and Amazon's website, which prominently displayed claims such as "Cleaner Ingredients," "Quality Ingredients," "Higher Standards," "Non-GMO," "USDA ORGANIC," and "#1 plant protein brand" and providing "Feel Good Energy," and relied on those representations in deciding to purchase the Contaminated Products over lower-priced alternatives or at all.

25. Prior to purchasing, Plaintiff saw and relied upon the packaging of the Contaminated Products and representations on Defendant's website, including the claims that the Contaminated Products have "Cleaner Ingredients," "Quality Ingredients," and "Higher Standards," and provide "Feel Good Energy." These specific representations were material to Plaintiff's purchasing decisions because they conveyed that the Contaminated Products were pure, safe, and free from harmful contaminants. During the time Plaintiff was purchasing and consuming the Contaminated Products, and as a result of the Misrepresentations and Omissions as detailed herein, Plaintiff was unaware the Contaminated Products contained or had a material risk of containing heavy metals. Plaintiff expected the Contaminated Products to be safe and free from detectable levels of undisclosed heavy metals, and would not have purchased the Contaminated Products or would have paid significantly less for them if that information had been fully disclosed. Had Plaintiff known the Contaminated Products contained detectable levels of heavy metals, such

CLASS ACTION COMPLAINT - 7
011394-12/5087587 V1

as cadmium at levels as high as 87.9 ppb or lead at levels as high as 37.1 ppb or arsenic levels as high as 18.8 ppb, Plaintiff would not have purchased the Contaminated Product at all and certainly would not have paid a premium price. Plaintiff would, however, purchase the Contaminated Products again in the future, if she could be certain the Contaminated Products do not contain or have a material risk of containing harmful heavy metals.

26. Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3).

27. Defendant Amazon.com, Inc. ("Amazon") is a Delaware corporation with its principal executive offices located at 410 Terry Avenue North, Seattle, Washington 98109.

28. At all relevant times, Amazon was engaged in the trade and commerce of selling consumer goods, including dietary supplements and protein powder products, to the general public in Washington and nationwide. Amazon marketed and sold the Contaminated Products to consumers, including Plaintiff and Class Members, through its website.

29. Amazon knowingly created, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive point-of-sale webpages for the Contaminated Products that did not disclose the presence of heavy metals, including cadmium, arsenic, and lead.

30. Plaintiff relied on the point-of sale webpages, including the Misrepresentations and Omissions, which were prepared, reviewed, and/or approved by Amazon and its agents at its headquarters in Seattle and disseminated by Amazon and its agents. The Misrepresentations and Omissions were nondisclosed material content that a reasonable consumer would consider important when purchasing the Contaminated Products.

## IV.    FACTUAL ALLEGATIONS

### A.    The Contaminated Products

31. The Contaminated Products are plant-based protein supplements sold through Amazon.com.



32. Plaintiff and the Class Members were exposed to the Misrepresentations and Omissions on Defendant's point-of-sale webpages for the Contaminated Products, which included the Contaminated Products' packaging and other marketing.

33. The point-of-sale webpages, including the packaging, for the Contaminated Products do not contain any disclosure or warning regarding the presence of lead, cadmium, arsenic, or other heavy metals. The point-of-sale webpages, including the packaging, includes beneficial features about the Contaminated Products which a reasonable consumer would associate with purity and the absence of harmful contaminants.

**B.      Amazon Sells the Contaminated Products in Its Online Marketplace and Delivers These Products Directly to Consumers**

34. Amazon operates the largest online retail marketplace in the United States, which includes its website, applications for mobile devices, and voice-controlled devices that allow consumers to make purchases from Amazon ("Amazon's marketplace").

35. Amazon directly sells a wide range of consumer goods—approximately 12 million goods—to customers on its marketplace.[9] Some of these products are manufactured by third parties but sold to consumers by Amazon as a traditional first-party retailer.

36. Amazon sells the Contaminated Products directly to consumers as a first party. In other words, Amazon itself—not a third party—lists the Contaminated Products on Amazon's marketplace and sells, ships, and delivers them to consumers.

37. In addition to selling goods as a first party, Amazon allows third-party sellers to list products on Amazon's marketplace. Such sellers enter into an agreement with Amazon to participate in its ecommerce marketplace by executing Amazon's Business Solutions Agreement as well as other related agreements.

38. Amazon's Business Solutions Agreement with third-party sellers provides, *inter alia*, that Amazon controls: the formatting of product listings on its online marketplace; all communications about the third party's products with Amazon customers, which must take place

---

[9] *Amazon Statistics*, AMAZON SCOUT, https://amzscout.net/blog/amazon-statistics (last accessed July 30, 2026).

exclusively through Amazon's online platform; and the processing of all payments, including what the permissible means of purchase are, and remittance of payments to merchants minus Amazon's substantial service fees—which range from 15-40% of the purchase price.

39. Amazon operates a fulfillment service known as "Fulfillment by Amazon." For third-party sellers participating in Fulfillment by Amazon, there are additional policies and requirements that govern the third party's products' presence on Amazon's marketplace.

40. When a third-party seller participates in Fulfillment by Amazon, Amazon undertakes numerous activities to put the seller's goods in consumers' hands. Amazon stores Fulfillment by Amazon products at Amazon warehouses and tracks data related to inventory of the product. When a consumer places an order for the goods on Amazon's marketplace, Amazon facilitates the transaction, sorts and packages the goods in its warehouses, ships the goods directly to the consumer's doorstep, often via Amazon delivery vehicles, and handles customer service, including processing of returns, complaints, and refund requests.[10]

41. Sales on Amazon's marketplace make up between 65% and 70% of all online marketplace sales in the United States and account for over 50% of all online retail sales revenue in the United States.[11] The vast majority of sales on Amazon's marketplace are of products that are either sold by Amazon as a first party or handled and shipped by Amazon via Fulfillment by Amazon.

---

[10] *In the Matter of Amazon.com, Inc.*, No. 21-2, Decision and Order of the United States Consumer Product Safety Commission at 7–11 (July 29, 2024). In regulatory proceedings, Amazon has attempted to avoid responsibility for selling dangerous products by arguing that it is a "third-party logistics provider" rather than a distributor. *Id.* at 6. In 2024, the United States Consumer Product Safety Commission rejected that argument, finding that Amazon acts as a distributor via Fulfillment by Amazon, and noting that Amazon "controls communications between [third-party sellers] and customers," and that "Amazon controls the distribution of Fulfilled by Amazon products from the initial transactions on Amazon.com through product returns[.]" *Id.* at 34, 39.

[11] Jerrold Nadler and David N. Cicilline, *Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations*, SUBCOMMITTEE ON ANTITRUST, COMMERCIAL, AND ADMINISTRATIVE LAW OF THE COMMITTEE ON THE JUDICIARY OF THE HOUSE OF REPRESENTATIVES, Part I, 117th Congress, (released Oct. 2020, adopted Apr. 2021, published July 2022), https://www.govinfo.gov/content/pkg/CPRT-117HPRT47832/pdf/CPRT-117HPRT47832.pdf, at 213 (last accessed July 30, 2026).



**C.   Amazon Controls and Creates Content for the Contaminated Products' Detail Pages which Make an Overall Impression, including the Omissions, Misrepresentations and Partial Misrepresentations, that Contradict the Presence of Heavy Metals**

42.   Amazon controls the content for the point-of-sale webpages for products, including the Contaminated Products, sold to consumers on its website. Amazon's own descriptions of the products are also available at the point-of-sale via "Alexa," an artificial intelligence shopping agent technology developed by Amazon.

43.   Amazon exercises extensive control over the format and content of the product detail pages, even for products listed by third parties. The Business Solutions Agreement requires third-party sellers to provide certain "Required Product Information," on point-of-sale webpages, including a description, SKU number, information regarding in-stock status and availability, product category information, digital images, price information, shipping and handling information, product dimensions, and "any text, disclaimers, warnings, notices, labels, warranties, or other content required by applicable Law to be displayed, or that are necessary for the safe use of Your Product, in connection with the offer, merchandising, advertising, or sale of Your Product."[12]

44.   Defendant does not require the manufacturer of the Contaminated Products to test its products, including the Contaminated Products, for heavy metals or to include the results of such tests on the product detail pages.

45.   Each of the Contaminated Products is sold on Amazon's website via a product detail page, or point-of-sale webpage. The point-of-sale webpage for each product includes the Omissions and Misrepresentations, in the form of product descriptions and pictures of the product packaging and ingredient panel and marketing, as well as statements from the manufacturer. The Misrepresentations and Omission include but are not limited to those described below:

---

[12] *Amazon Services Business Solutions Agreement*, AMAZON SELLER CENTRAL, https://sellercentral.amazon.com/help/hub/reference/external/G1791?local=en-US (last visited July 30, 2026).

CLASS ACTION COMPLAINT - 11
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

**Orgain Organic Plant-Based Protein + 50 Superfoods Powder in Creamy Chocolate Fudge**[13]

46.    Amazon's description on the point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge includes: "CLEANER INGREDIENTS," "HIGHER STANDARDS," "ORGANIC 50 SUPERFOODS BLEND," and "PERFECT FOR ANY LIFESTYLE":



47.    The front packaging for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge on Amazon's point-of-sale webpage touts it having "No Soy Ingredients," as "VEGAN," "Gluten Free," "Non-GMO" and a "PLANT-BASED PROTEIN" that is "USDA Organic":

---

[13] Amazon.com, https://www.amazon.com/dp/B07PVKBGV3?ref_=ppx_printOD_title_dt_b_fed_asin_title_0_0&th=1 (last accessed July 30, 2026).



48.   "Certified Plant Based" is stated below the ingredient panel for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge on Amazon's point-of-sale webpage.



49.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge touts its "Organic 50 Superfoods Blend," and containing "No Dairy, Lactose, or Soy Ingredients," "No Added Sugar," and "No Artificial Flavors, Preservatives, or Sweeteners," and as "Carrageenan Free":



50.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge describes the brand as the "#1 plant protein powder brand":

51.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge promotes its "FEEL GOOD ENERGY" and

"Muscle Support & Recovery," and describes that it "Supports Metabolism," "Helps Manage Hunger," "Promotes Healthy Weight Management," and is a "Good Source of Fiber":




52. Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge includes the manufacturer's descriptions about its "Higher Standards," "Quality Ingredients," and "The Power of Clean," including that "what's on the inside [] matters most" and "You can bet this organic protein powder packs good, clean nutrition" and the "master plan to give you good, clean fuel in every sip":

## Higher Standards

We believe it's what's on the inside that matters most, and that includes what we left out. Our blend is Organic, vegan, non–GMO, gluten–free and contains no soy ingredients.

## Quality Ingredients

Enjoy 21g of our unique blend of organic, vegan protein along with the added benefits of 50 organic superfoods like kale, flax, chia, quinoa, beet, and turmeric. You can bet this organic protein powder packs good, clean nutrition.

CLASS ACTION COMPLAINT - 17
011394-12/5087587 V1



**The Power of Clean**

We thought it was about time protein cleaned up its act. Every gram here comes from hand–selected ingredients for maximum nutrition. It's all a part of our master plan to give you good, clean fuel in every sip.

53. Additionally, the point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge identifies the manufacturer's mission: "to help more people live vibrant lives through the power of good, clean nutrition" and includes a video of the Contaminated Products' manufacturer's founder, Andrew Abraham, where the last message states, "Orgain: Clean Nutrition" and "Good, Clean Nutrition" is stated below the video message:

**Our mission is to help more people live vibrant lives through the power of good, clean nutrition.**

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



**Good, Clean Nutrition**

**Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean[14]**

54.    Amazon's description on the point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean includes: "CLEANER INGREDIENTS," "HIGHER STANDARDS," "ORGANIC 50 SUPERFOODS BLEND," and "PERFECT FOR ANY LIFESTYLE":

---

[14] Amazon.com, https://www.amazon.com/dp/B07PXNNFGT?ref_=ppx_printOD_title_dt_b_fed_asin_title_0_1&th=1 (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 19
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



Click to see full view



Size: **2.02 Pound (Pack of 1)**

**Top highlights**

| | |
|---|---|
| Brand | Orgain |
| Model Name | Orgain Organic Protein + Superfoods Powder |
| Flavor | Vanilla |
| Servings per Container | 18 |
| Item Weight | 21 g |

**About this item**

- CLEANER INGREDIENTS: 21g plant protein and 1g sugar per serving. Our protein blend consists of Organic pea, brown rice, and chia seeds, to provide a complete protein with all nine essential amino acids. It also features 8g of Prebiotic plus fiber for gut support and our 50 Superfoods Blend.
- HIGHER STANDARDS: We believe it's what's on the inside that matters most, and that includes what we left out. This product is USDA Organic, vegan, gluten-free, kosher, made without soy, and Non-GMO. You also won't find any carrageenan, lactose or dairy ingredients, artificial colors, flavors, sweeteners, or preservatives. We also use third parties to verify that we are certified USDA Organic and plant based.
- ORGANIC 50 SUPERFOODS BLEND: Each serving contains 50 organic superfoods like chia, tumeric, kale, flax, broccoli, spinach, quinoa, beet, acai and is an excellent source of Vitamin B6, Vitamin C and iron to support your immune system.
- CUSTOMIZE ANY WAY YOU WANT: You can mix this with any liquid like water, almond milk, oat milk, or blend it to create a delicious shake or smoothie for a quick breakfast or snack drink. For even more creative ways to use this, you can add it to your overnight oats, cookies, brownies, and other baked goods for a protein and energy boost.
- PERFECT FOR ANY LIFESTYLE: This protein powder is perfect for men and women alike, whether you're maintaining a healthy lifestyle, working out, looking to add more protein to your diet, following a diet regiment or an on the go meal replacement.
- WHAT TO EXPECT: Includes 1 (2.03 Lb) (20 Servings) ready to mix Orgain Organic Protein plus 50 Superfoods Vanilla Bean Protein Powder.

⌃ Show less

CLASS ACTION COMPLAINT - 20
011394-12/5087587 V1

55. The packaging for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean on Amazon's point-of-sale webpage touts it as having "No Soy Ingredients," as "VEGAN," "Gluten Free," and "Non-GMO," and a "PLANT-BASED PROTEIN" that is "USDA Organic":



56.    "Certified Plant Based" is stated below the ingredient panel for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean on Amazon's point-of-sale webpage:



57.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean touts its "Organic 50 Superfoods Blend," that contains "No Dairy, Lactose, or Soy Ingredients," "No Added Sugar," and "No Artificial Flavors, Preservatives, or Sweeteners," and as "Carrageenan Free":



58.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean describes the brand as the "#1 plant protein powder brand":

59.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean promotes its "FEEL GOOD ENERGY" and "Muscle Support & Recovery," and describes that it "Supports Metabolism," "Helps Manage Hunger," "Promotes Healthy Weight Management," and is a "Good Source of Fiber":



60.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean includes the manufacturer's descriptions about its "Higher Standards," "Quality Ingredients," and "The Power of Clean," including that "what's on the inside [] matters most" and "You can bet this organic protein powder packs good, clean nutrition" and the "master plan to give you good, clean fuel in every sip":

## Higher Standards

We believe it's what's on the inside that matters most, and that includes what we left out. Our blend is Organic, vegan, non-GMO, gluten-free and contains no soy ingredients.

## Quality Ingredients

Enjoy 21g of our unique blend of organic, vegan protein along with the added benefits of 50 organic superfoods like kale, flax, chia, quinoa, beet, and turmeric. You can bet this organic protein powder packs good, clean nutrition.

CLASS ACTION COMPLAINT - 25
011394-12/5087587 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



**The Power of Clean**

We thought it was about time protein cleaned up its act. Every gram here comes from hand–selected ingredients for maximum nutrition. It's all a part of our master plan to give you good, clean fuel in every sip.

61.    Additionally, the point-of-sale webpage for Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean identifies the manufacturer's mission: "to help more people live vibrant lives through the power of good, clean nutrition" and includes a video of the Contaminated Products' manufacturer's founder, Andrew Abraham, where the last message states, "Orgain: Clean Nutrition" and "Good, Clean Nutrition" is stated below the video message:

**Our mission is to help more people live vibrant lives through the power of good, clean nutrition.**

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**Good, Clean Nutrition**

**Orgain Organic Plant-Based Protein Powder Vanilla Bean[15]**

62.    Amazon's description on the point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Vanilla Bean includes: "CLEANER INGREDIENTS," "HIGHER STANDARDS," "USDA ORGANIC & CERTIFIED PLANT-BASED," and "PERFECT FOR ANY LIFESTYLE":

---

[15] Amazon.com, https://www.amazon.com/dp/B00J074W7Q?ref_=ppx_printOD_title_dt_b_fed_asin_title_0_2&th=1 (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 27
011394-12/5087587 V1



63.    The packaging for Orgain Organic Plant-Based Protein Powder in Vanilla Bean Amazon's point-of-sale webpage touts it is "VEGAN" with "No Soy Ingredients," and "Gluten Free" and "Non-GMO," and is a "PLANT-BASED PROTEIN" that is "USDA Organic":



64.    "Certified Plant Based" is stated below the ingredient panel for Orgain Organic Plant-Based Protein Powder Vanilla Bean on Amazon's point-of-sale webpage:



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

65.     Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Vanilla Bean touts its "Higher Standards" and that it is "Certified Organic," "Non-GMO," "Gluten Free" and has "No Soy Ingredients," "No Dairy Ingredients," and "No Artificial Preservatives, Sweeteners or Flavors":

66.     Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Vanilla Bean describes the brand as the "#1 plant protein powder brand":

CLASS ACTION COMPLAINT - 30
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX



67.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Vanilla Bean promotes its "FEEL GOOD ENERGY" and "Muscle Support & Recovery," and describes that it "Supports Metabolism," "Helps Manage Hunger," "Promotes Healthy Weight Management," and is a "Good Source of Fiber":





68.     Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Vanilla Bean describes that it has "No Dairy, Lactose, or Soy Ingredients," "No Added Sugar," "No Artificial Flavors, Preservatives, or Sweeteners," is "Carrageenan Free," and has "No Erythritol":

CLASS ACTION COMPLAINT - 32
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



69.   Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Vanilla Bean includes the manufacturer's descriptions about its "Quality Ingredients" and "The Power of Clean," including that "You can bet this organic protein powder packs good, clean nutrition" and the "master plan to give you good, clean fuel in every sip":

## Quality Ingredients

Enjoy 21g of our unique blend of organic, vegan protein along with the added benefits of 50 organic superfoods like kale, flax, chia, quinoa, beet, and turmeric. You can bet this organic protein powder packs good, clean nutrition.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge[16]**

70.　　Amazon's description on the point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge includes: "CLEANER INGREDIENTS," "HIGHER STANDARDS," "USDA ORGANIC & CERTIFIED PLANT-BASED," and "PERFECT FOR ANY LIFESTYLE":

---

[16] Amazon.com, https://www.amazon.com/dp/B00J074W94?ref_=ppx_printOD_title_dt_b_fed_asin_title_0_3&th=1 (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 34
011394-12/5087587 V1





71. The packaging for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge on Amazon's point-of-sale webpage touts that it is "VEGAN" with "No Soy Ingredients," and "Gluten Free" and "Non-GMO," and is a "PLANT-BASED PROTEIN" that is "USDA Organic":

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



72.    "Certified Plant Based" is stated below the ingredient panel for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge on Amazon's point-of-sale webpage:



73.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge touts its "Higher Standards" and that it is "Certified Organic," "Non-GMO," "Gluten Free," and has "No Soy Ingredients," "No Dairy Ingredients," and "No Artificial Preservatives, Sweeteners or Flavors":



74.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge describes the brand as the "#1 plant protein powder brand":

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



75.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge promotes its "FEEL GOOD ENERGY" and "Muscle Support & Recovery," and describes that it "Supports Metabolism," "Helps Manage Hunger," "Promotes Healthy Weight Management," and is a "Good Source of Fiber":









76. Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge describes that it has "No Dairy, Lactose, or Soy Ingredients," "No Added Sugar," "No Artificial Flavors, Preservatives, or Sweeteners," is "Carrageenan Free," and has "No Erythritol":



77.    Amazon's point-of-sale webpage for Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge includes the manufacturer's descriptions about its "Quality Ingredients" and "The Power of Clean," including that "You can bet this organic protein powder packs good, clean nutrition" and the "master plan to give you good, clean fuel in every sip":

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## Quality Ingredients

Enjoy 21g of our unique blend of organic, vegan protein along with the added benefits of 50 organic superfoods like kale, flax, chia, quinoa, beet, and turmeric. You can bet this organic protein powder packs good, clean nutrition.

## The Power of Clean

We thought it was about time protein cleaned up its act. Every gram here comes from hand-selected ingredients for maximum nutrition. It's all a part of our master plan to give you good, clean fuel in every sip.



78.     The content of the point-of-sale webpages for the Contaminated Products show that Defendant knows the benefits and ingredients of a protein powder are material to consumers and that it fails to disclose to consumers the fact that the Contaminated Products contain heavy metals.

79.     Amazon's point-of-sale webpages for the Contaminated Products described above contradict the presence of heavy metals in the Contaminated Products.[17]

80.     The point-of-sale webpages make no disclosure whatsoever regarding the presence of any heavy metals in the Contaminated Products. To the contrary, the Contaminated Products' point-of-sale webpages misleadingly and deceptively convey to reasonable consumers that the Contaminated Products are high quality, clean, and nutritious, and not contaminated with heavy metals.

81.     Defendant knows reasonable consumers expect the Contaminated Products to be healthy and not have detectable levels of harmful heavy metals, including lead, cadmium, and arsenic. The Omissions and Misrepresentations described above reinforce these reasonable expectations.

82.     When reasonable consumers view the point-of-sale webpages' overall impression, including the Misrepresentations and Omissions, they would have no reason to suspect that the Contaminated Products contain or risk containing heavy metals. Foods that contain high levels of heavy metals are neither nutritious nor healthy.

83.     Consumers like Plaintiff and Class Members rely heavily on Defendant to supply clean, nutritious Products and to provide accurate and complete information about the contents of the Contaminated Products it sells.

84.     Defendant had a duty to ensure the Contaminated Products were not deceptively, misleadingly, unfairly, or falsely marketed and that all material information was properly and fully disclosed, which it failed to do, including by its failure to sufficiently or adequately monitor or test

---

[17] Refer to Appendix A for a list that includes but is not limited to the Contaminated Products' Omissions and Misrepresentations.



for (or require the Contaminated Products' manufacturer to sufficiently or adequately monitor or test for) and disclose the presence or material risk of heavy metals in the Contaminated Products.

85.    As detailed below, the inclusion or material risk of elevated levels of lead, cadmium, and arsenic contradict and impede the central function of the Contaminated Products. Lead, cadmium, and arsenic provide no such benefits and instead pose health risks.

**D.    Additionally, Statements about the Contaminated Products on Amazon's Product Detail Pages, including on the Packaging, are Misleading**

86.    Amazon's product detail pages for the Contaminated Products include statements that are misleading, including: "CLEANER INGREDIENTS," "HIGHER STANDARDS," "Non-GMO," "USDA ORGANIC," "#1 plant protein brand," "FEEL GOOD ENERGY" and "Quality Ingredients."

87.    These statements emphasize and create the overall and net impression that the Contaminated Products are pure and safe and made with clean and high-quality ingredients to help support energy.

88.    These statements also stress and create the overall and net impression that the Contaminated Products do not include any adverse, harmful, or genetically modified ingredients.

89.    Based on these statements and their overall and net impression, no reasonable consumer could expect or understand that the Contaminated Products contained heavy metals. The statements are inconsistent with, if not directly contradictory, to the presence of heavy metals in the Contaminated Products.

**E.    The Consumption of Heavy Metals Poses Real Health Risks**

90.    Heavy metals are neurotoxins, *i.e.*, poisons that affect the nervous system.[18]

---

[18] *See*, *e.g.*, U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, at 2, Feb. 4, 2021, https://oversightdemocrats.house.gov/imo/media/doc/2021-02-04%20ECP%20Baby%20Food %20Staff%20Report.pdf (last accessed July 20, 2026) ("*Congressional Committee Report*") ("The Food and Drug Administration and the World Health Organization have declared them dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.").

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

91.    Exposure to heavy metals, even in small amounts, can lead to life-long effects. Heavy metals can remain in the human body for years and, as a result, can accumulate in the body, such as in the kidneys and other internal organs, increasing their risk to a person over time.[19]

92.    Because heavy metals bioaccumulate in the body, even regular consumption of small amounts can increase the material risk of various health issues, including bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[20]

93.    Exposure to heavy metals has also been shown to have long-lasting effects on cardiovascular toxicity, hypertension, arrhythmia, atherosclerosis,[21] as well as gastrointestinal and kidney dysfunction, nervous system disorders, skin lesions, vascular damage, immune system dysfunction, birth defects, and cancer.[22]

94.    Government agencies and other experts acknowledge and agree that there are no known safe levels of heavy metals. As examples:

- Conrad Choiniere, Director of the Office of Analytics and Outreach in the U.S. Food and Drug Administration's ("FDA") Center for Food Safety and Applied Nutrition: "However overall exposure adds up because many of the foods we eat contain these contaminants in small amounts. This is not to say that we should not be concerned. On the contrary, for the contaminants we are discussing today, we have not identified safe levels of exposure for developmental outcomes."[23]

- Dr. Aparna Bole, pediatrician speaking on behalf of the American Academy of Pediatrics ("AAP"): "There is no known safe level of exposure to these metals for children. Exposure to toxic elements has a disproportionate effect on infants and

---

[19] Consumer Reports: Heavy Metals in Baby Foods, *supra*.

[20] *Id.*

[21] Pan Ziwei, et al., *Heavy Metal Exposure and Cardiovascular Disease*, Circulation Research (Apr. 26, 2024), https://www.ahajournals.org/doi/epub/10.1161/CIRCRESAHA.123.323617 (last accessed July 30, 2026).

[22] Mahdi Balali-Mood, et al., *Toxic Mechanisms of Five Heavy Metals: Mercury, Lead, Chromium, Cadmium, and Arsenic*, Frontiers in Pharmacology (Apr. 12, 2021), https://www.frontiersin.org/journals/pharmacology/articles/10.3389/fphar.2021.643972/full (last accessed July 30, 2026).

[23] *Closer to Zero Public Meeting Transcript*, *supra*, at 32.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

toddlers because their brains are rapidly developing, especially during their first 1,000 days."

- Dr. Karagas, Professor and Chair of the Department of Epidemiology at the Geisel School of Medicine at Dartmouth College: "Arsenic, cadmium, mercury and lead, shown here, circled in these red circles, they do not have any known physiologic essential function in the body and there is no known safe level to our knowledge."[24]

**F.    Negative Health Effects of Arsenic**

95.    There is no health benefit to the inclusion of arsenic in food products.

96.    Arsenic is toxic to humans, classified as a carcinogen, and is one of the World Health Organization's ("WHO") "10 chemicals of major public concern."[25]

97.    Arsenic can cause cancer, as well as diabetes, atherosclerosis, and potentially cardiovascular disease when ingested chronically.[26]

98.    Arsenic can affect multiple organs and systems, including the endocrine, immune, nervous, and respiratory system; liver, kidney, and bladder; prostate glands; and skin.[27]

99.    Chronic or long-term exposure to arsenic can cause skin disease and is also associated with skin, bladder, and lung cancer, as well as adverse pregnancy outcomes, infant mortality, diabetes, and cardiovascular disease.[28]

---

[24] *Id.* at 72.

[25] World Health Organization, *Arsenic* (Dec. 7, 2022), https://www.who.int/news-room/fact-sheets/detail/arsenic (last accessed July 30, 2026) ("WHO: Arsenic").

[26] J. Christopher States, et al., *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis,* PLOS ONE (June 15, 2012), 7(6): e38713, https://doi.org/10.1371/journal.pone.0038713 (last accessed July 30, 2026).

[27] National Institute of Environmental Health Sciences, *Arsenic and Your Health* (Oct. 2023), at 3, http://www.niehs.nih.gov/sites/default/files/health/materials/arsenic_and_your_health_508.pdf (last accessed July 30, 2026) ("Arsenic and Your Health").

[28] WHO: Arsenic, *supra*; Stephen J. Genuis, et al., *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE (Nov. 21, 2012), 7(11): e49676, https://doi.org/10.1371/journal.pone.0049676 (last accessed July 30, 2026) ("Toxic Element Contamination of Natural Health Products") (chronic exposure to arsenic has also been associated with dermatological lesions and malignancies).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

100.    Even low-level exposure to arsenic can result in severe long-term health effects and increase the risk of other types of chronic disease.[29] Long-term exposure to lower levels of arsenic can also cause a shortage of red and white blood cells, which can lead to fatigue and an increased risk of infections.[30]

101.    Further, "[t]here is no evidence that the harm caused by arsenic is reversible."[31]

102.    Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a maximum contaminant level). The FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[32]

**G.    Negative Health Effects of Cadmium**

103.    There is no known safe level of exposure to cadmium,[33] and cadmium has no known beneficial function in the human body.[34]

104.    The U.S. Department of Health and Human Services ("HHS") and the International Agency for Research on Cancer ("IARC") have determined that cadmium and cadmium

---

[29] Arsenic and Your Health, *supra*, at 3.

[30]    American Cancer Society, *Arsenic and Cancer Risk* (June 1, 2023), https://www.cancer.org/cancer/risk-prevention/chemicals/arsenic.html (last accessed July 30, 2026).

[31] Healthy Babies Bright Futures, *What's in My Baby's Food?* (Oct. 2019), at 13, https://hbbf.org/sites/default/files/2022-12/BabyFoodReport_ENGLISH_R6_0.pdf (last accessed July 30, 2026).

[32] *See* Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed July 30, 2026); *see also* 21 C.F.R. § 165.110(b)(4)(iii)(A) (1995).

[33] *See* Closer to Zero Public Meeting, *supra*, at 72.

[34] ATSDR, *What Is the Biological Fate of Cadmium in the Body?* (May 23, 2023), https://archive.cdc.gov/www_atsdr_cdc_gov/csem/cadmium/Biological-Fate.html (last visited July 30, 2026).

CLASS ACTION COMPLAINT - 46
011394-12/5087587 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

compounds are known human carcinogens, and the EPA has likewise determined that cadmium is a probable human carcinogen.[35]

105. Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequester[s] in [human] tissue."[36]

106. Cadmium exposure may be associated with prostrate, bladder, pancreatic, kidney, and breast cancers; the development of diseases related to the central nervous system including Alzheimer's, Parkinsonism and Parkinson's disease, Huntington's disease, amyotrophic lateral sclerosis, multiple sclerosis, and osteoporosis.[37]

107. Cadmium is also suspected to be mutagenic, meaning it can cause genetic mutation and can inhibit DNA repair and induce DNA strand breaks and chromosomal aberrations.[38]

108. Chronic exposure to even lower levels of cadmium can damage the kidneys, liver, and other parts of the body, and can cause bones to become fragile and easily break.[39] Long-term exposure to low levels of cadmium can also cause various diseases, such as cancer, leukemia, and genetic toxicity.[40]

109. Cadmium is particularly harmful to children and exposure in childhood is associated with decreases in cognitive ability, as well as the development of attention deficit

---

[35] *See* Centers for Disease Control and Prevention, Agency for Toxic Substances and Disease Registry, *Public Health Statement for Cadmium*, https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed July 30, 2026) ("Public Health Statement for Cadmium").

[36] Toxic Element Contamination of Natural Health Products, *supra*.

[37] Angelika Edyta Charkiewicz, et al., *Cadmium Toxicity and Health Effects- A Brief Summary*. Molecules (Sept. 14, 2023); 28(18):6620, https://pmc.ncbi.nlm.nih.gov/articles/PMC10537762/ (last accessed July 30, 2026) ("Cadmium Toxicity and Health Effects").

[38] *See, e.g.*, Yong Hawn Jin, et al., *Cadmium is a mutagen that acts by inhibiting mismatch repair*, National Library of Medicine (July 2003) https://pmc.ncbi.nlm.nih.gov/articles/PMC2662193/#:~:text=Cadmium%20is%20a%20mutagen%20that%20acts%20by%20inhibiting%20mismatch%20repair (last accessed July 30, 2026).

[39] Public Health Statement for Cadmium, *supra*; *see also* FDA, *Cadmium in Food and Foodwares* (Mar. 5, 2024), https://www.fda.gov/food/environmental-contaminants-food/cadmium-food-and-foodwares (last accessed July 30, 2026).

[40] Cadmium Toxicity and Health Effects, *supra*.

---

CLASS ACTION COMPLAINT - 47
011394-12/5087587 V1



hyperactivity disorder ("ADHD"). A 2018 study linked cadmium exposure to ADHD, finding that the disorder was more common among children with the highest levels of cadmium exposure as compared to a control group.[41]

110.    Cadmium appears to affect cognitive development of children, particularly of boys, with studies showing that boys exhibiting higher amounts of cadmium exposure had seven fewer IQ points than those exhibiting less cadmium exposure.

111.    Cadmium can also cross the placenta and the barrier to a fetus, resulting in teratogenic effects.[42] Human and animal epidemiological studies have shown cadmium exposure in pregnancy to be associated with significant reduction in birthweight and increased occurrence of stillbirth.[43]

112.    Like lead, cadmium accumulates in the body with a long half-life of 6 to 38 years in the kidneys and 4 to 19 years in the liver.[44]

113.    The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb (*see* 40 C.F.R. §141.62(b) (2004)); the FDA has set a maximum level in bottled water to 5 ppb; and the WHO set a maximum cadmium level in drinking water to 3 ppb.[45]

**H.    Negative Health Effects of Lead**

114.    Lead is a highly toxic heavy metal, used in the production of batteries, ammunition, and metal products such as solder and pipes.[46]

---

[41]  *See* Min-Jing Lee, et al., *Heavy Metals' Effect on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony*, Int'l Journal of Env't Research and Public Health, June 10, 2018, https://doi.org/10.3390/ijerph15061221 (last accessed July 30, 2026).

[42]  *Id.*

[43]  California Environmental Protection Agency, *Evidence on Developmental and Reproductive Toxicity of Cadmium* (Oct. 1996), https://oehha.ca.gov/sites/default/files/media/downloads/proposition-65/chemicals/cd-hid.pdf (last accessed July 30, 2026).

[44]  ATSDR, *What Is the Biological Fate of Cadmium in the Body?*, *supra*.

[45]  *See* Congressional Committee Report, *supra*, at 29.

[46]  ATSDR, *Lead - ToxFAQs* (Aug. 7, 2020), https://www.atsdr.cdc.gov/toxfaqs/tfacts13.pdf (last accessed July 30, 2026) ("ATSDR ToxFAQs for Lead").

115. Lead is highly toxic to humans and has been identified as a carcinogen. The harmful effects of lead cannot be reversed or remediated due to its accumulation in the body over time.[47]

116. There is no health benefit to the inclusion of lead in food products.

117. Lead is an element, which means it does not break down.

118. Lead is universally identified as a probable human carcinogen by health agencies in the United States and worldwide. For example:

- HHS determined that lead was "reasonably anticipated to be a human carcinogen."

- The EPA classifies lead as a "probable human carcinogen."

- The IARC classifies lead as "probably carcinogenic to humans."

119. Lead is number one on the Agency for Toxic Substances and Disease Registry's ("ASTDR") list of substances present in the environment that pose the most significant potential threat to human health[48] and the WHO identifies lead as one of ten chemicals of major public health concern requiring action.[49]

120. Once lead enters the body, it is distributed to organs, including the brain, kidneys, and liver, and it accumulates and is stored in teeth and bones.[50]

121. Because lead accumulates in the body, even very low-level exposure can be hazardous over time. Lead is a cumulative toxin in bones and soft tissues, where it continues to disrupt critical biological functions long after exposure. The risk intensifies with repeated or prolonged exposure. As the Mayo Clinic warns, "Signs and symptoms usually don't appear until

---

[47] *See* Congressional Committee Report, *supra*, at 11.

[48] ATSDR, *Substance Priority List* (April 13, 2026), https://www.atsdr.cdc.gov/programs/substance-priority-list.html (last accessed July 30, 2026).

[49] WHO: Lead Poisoning, *supra*.

[50] *Id*.



the amount of lead detected in the blood has climbed to a dangerous level."[51] The CDC also states, "The effects of lead poisoning can be permanent and disabling."[52]

122. Because exposure to lead builds up in the human body over time, it can disrupt neurological, skeletal, reproductive, hematopoietic, renal, and cardiovascular systems.[53]

123. Even "[r]epeated low-level exposure [to lead] over a prolonged period" can result in clinical symptoms including "[p]ersistent vomiting, encephalopathy, lethargy, delirium and coma[.]"[54]

124. No amount of lead is safe for human consumption or exposure.[55]

125. Nearly 50 years ago in 1978, the U.S. banned lead-based paint use in residential homes because of concerns over exposure risks to lead.[56] The use of lead as an additive to

---

[51] Mayo Clinic, *Lead Poisoning* (Dec. 24, 2025), https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717 (last accessed July 30, 2026).

[52] CDC, *About Childhood Lead Poisoning Prevention* (Aug. 21, 2025), https://www.cdc.gov/lead-prevention/about/index.html (last accessed July 30, 2026).

[53] Collin, M. Samuel, et al., *Bioaccumulation of Lead (Pb) and Its Effects on Human: A Review*, Journal of Hazardous Material Advances (May 17, 2022), (7), https://doi.org/10.1016/j.hazadv.2022.100094 (last accessed July 30, 2026).

[54] Taanvi Bhasin, et al., *Unveiling the Health Ramifications of Lead Poisoning: A Narrative Review*, Cureus (Oct. 9, 2023), 15(10), https://www.cureus.com/articles/184381-unveiling-the-health-ramifications-of-lead-poisoning-a-narrative-review#!/ (last accessed July 30, 2026).

[55] *See, e.g.*, FDA, *Lead in Food and Foodwares* (Jan. 6, 2025), https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares (last accessed July 30, 2026) ("Because there is no known safe level of exposure to lead, the FDA monitors and regulates levels of lead in foods."); WHO: Lead poisoning, *supra* ("There is no level of exposure to lead that is known to be without harmful effects."); CDC, *CDC Updates Blood Lead Reference Value* (Apr. 2, 2024), https://www.cdc.gov/lead-prevention/php/news-features/updates-blood-lead-reference-value.html (last accessed July 30, 2026); AAP, *Lead Exposure in Children* (May 12, 2025), https://www.aap.org/en/patient-care/lead-exposure/lead-exposure-in-children/#:~:text=How%20Much%20Lead%20is%20Safe,Prevention%20recommends%20evaluation%20and%20intervention (last accessed July 30, 2026); *see also* Consumer Reports: Heavy Metals in Baby Food, *supra*.

[56] CDC, *About Lead in Paint* (March 26, 2025), https://www.cdc.gov/lead-prevention/prevention/paint.html (last accessed July 30, 2026).

---

CLASS ACTION COMPLAINT - 50
011394-12/5087587 V1

automobile gasoline was also banned in the United States.[57] This is notable given that paint and gasoline—unlike the Contaminated Products—are not intended to be consumed and put directly into the body or bloodstream.

126. Lead can cause health problems in almost every organ and system in your body. [58] As examples, exposure to lead can cause damage to the kidneys, anemia (low iron in the blood), and increases in blood pressure. Long-term exposure to lead can also result in neuropathy and brain damage, along with cognitive deficits, such as decreased learning, memory, and attention.

---

[57] ATSDR ToxFAQs for Lead, *supra*.

[58] EPA, *Learn About Lead* (May 28, 2026), https://www.epa.gov/lead/learn-about-lead (last accessed July 30, 2026) ("Lead can harm almost every organ and system in your body."); HHS, National Toxicology Program, *NTP Monograph: Health Effects of Low-Level Lead* (June 2012), https://ntp.niehs.nih.gov/sites/default/files/ntp/ohat/lead/final/ monographhealtheffectslowlevellead_newissn_508.pdf (last accessed July 30, 2026); A. Spivey, *The Weight of Lead: Effects Add Up in Adults*, Environ. Health Perspectives (Jan. 2007), 115(1), at A30-A36, https://pmc.ncbi.nlm.nih.gov/articles/PMC1797860/ (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 51
011394-12/5087587 V1



127.    Exposure to high lead levels can severely damage the brain and kidneys, damage male reproductive organs, and even cause death.[59]

128.    Exposure to lead contributed to more than 3.5 million deaths globally in 2023.[60]

129.    During pregnancy, lead can cause premature birth, lower birth weight, harm to the baby's brains, kidneys, and nervous system, and learning or behavior problems.[61] It can be

---

[59] ATSDR ToxFAQs for Lead, *supra*; Geneva Environment Network, *Update: Preventing Lead Poisoning from Geneva: Environmental and Health Impacts of Lead* (May 18, 2026), https://www.genevaenvironmentnetwork.org/resources/updates/lead-poisoning-prevention/ (last accessed July 30, 2026).

[60] WHO: Lead Poisoning, *supra*.

[61] CDC, *Risk Factors and Pregnancy* (March 13, 2025), https://www.cdc.gov/lead-prevention/risk-factors/pregnancy.html (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 52
011394-12/5087587 V1

transmitted from pregnant women to their babies during pregnancy[62] This can result in "miscarriage, stillbirth, premature birth, and low birth weight infants."[63]

130. Lead is particularly dangerous to the health and well-being of small children, and early childhood exposure to lead is known to cause behavioral health problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth, as well as severe neurological effects. Lead exposure in children is linked to learning disabilities, behavioral difficulties, and lowered IQ. Additionally, lead exposure in early childhood is proven to have a strong inverse relationship with test scores, as well as lower reading and math scores in third-grade children.



131. While lead levels in protein powders are not regulated, approved, reviewed, or tested by United States regulatory bodies, lead ingestion by humans has long been subject to

[62] *Id.*

[63] Taanvi Bhasin, et al., *Unveiling the Health Ramifications of Lead Poisoning: A Narrative Review,* Cureus (Oct. 9, 2023), 15(1), https://pmc.ncbi.nlm.nih.gov/articles/PMC10631288/ (last accessed July 30, 2026).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

regulatory scrutiny. Indeed, the FDA has set a 5 ppb lead standard for bottled water, the WHO has set 10 ppb lead as a provisional guideline for drinking water, and the EPA has set an action level of 15 ppb for lead in drinking water, while acknowledging that "there is no known safe level of lead in a child's blood."[64]

132. Under the Lead and Copper Rule, if more than 10 percent of tap water samples from a public water system exceed this level, the system is required to take corrective actions.[65] The FDA has set interim reference levels of 2.2 micrograms per day for children and 8.8 micrograms per day for women of childbearing age.[66] It has also set action levels ranges for lead in processed foods intended for infants and young children.[67]

133. The FDA has also issued non-binding guidance for lead in certain juices (50 ppb) and candy (100 ppb). The EU has set the maximum lead level in infant formula to 20 ppb.

134. Some public health authorities have adopted more protective standards. For example, New York State recently lowered the action level for lead in school drinking water from 15 ppb to 5 ppb. When lead levels in school fixtures meet or exceed 5 ppb, schools must remove the fixture from service, provide free, alternate drinking water, notify the community, and take steps to remediate the issue.[68]

135. There is a growing consensus among health experts that lead levels in food and drinks consumed by children should not exceed 1 ppb. The AAP, the Environmental Defense Fund, and Consumer Reports have all called for this limitation.

---

[64] EPA, *Basic Information About Lead in Drinking Water* (June 18, 2026), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water (last accessed July 30, 2026).

[65] *Id.*

[66] FDA, *Action Levels for Lead in Processed Food Intended for Babies and Young Children: Guidance for Industry* (Jan. 2025), at 5, https://www.fda.gov/media/164684/download (last accessed July 30, 2026).

[67] *See, generally, id.*

[68] New York State Education Department: *Lead Testing of Drinking Water*, https://www.nysed.gov/new-york-state-school-deaf/lead-testing-drinking-water (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 54
011394-12/5087587 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

I.    **The Contaminated Products Contain Levels of Heavy Metals that are Unhealthy and Unsafe at Any Level**

136.    While Defendant's marketing repeatedly communicates that the Contaminated Products are carefully and safely manufactured and clean, laboratory tests show that, in fact, Defendant sold Contaminated Products containing undisclosed lead levels as high as 37.1 ppb, cadmium levels as high as 87.9 ppb, and arsenic levels as high as 18.8 ppb.

137.    The Clean Label Project is a national nonprofit "on a mission to bring truth and transparency to food and consumer product labeling."[69]

138.    In January 2025, the Clean Label Project published a report that showed 47% of 160 protein powder products tested exceed California's Proposition 65 limits for heavy metals.[70]

139.    The Clean Label Project tested the Contaminated Products, neither of which are included on its list of "clean sixteen" nor among the sixteen protein powders that are Clean Label Project Certified.[71]

140.    The Clean Label Project collaborated with an analytical chemistry laboratory to test 165 of the top-selling protein powders.[72] It found that 79% of organic protein powders and 77% of plant-based protein powders exceeded California's Proposition 65 limit for lead levels.[73] It also found that 47% of the tested products exceeded federal or state regulatory limits set for safety.[74]

---

[69]    Clean Label Project, *Know What's Really in Your Products*, https://cleanlabelproject.org/app/ (last accessed July 30, 2026).

[70] Clean Label Project Protein Study, *supra*.

[71] Products are tested for purity and chemicals of concern including heavy metals and compares the results to California's Proposition 65 list; if the product is found to comply, it qualifies for Clean Label Certification. Certification also requires ongoing compliance with unannounced sampling and testing. Clean Label Project, *Clean Label Project Certification*, https://cleanlabelproject.org/clean-label-project-certification/ (last accessed July 30, 2026); Clean Label Project, *Clean Sixteen*, https://cleanlabelproject.org/wp-content/uploads/CLPSweet-16OneSheeter_061125.pdf (last accessed July 30, 2026) ("Clean Sixteen").

[72] Clean Label Project Protein Study, *supra*.

[73] *Id.*

[74] *Id.*



141. Consumer Reports "is an American nonprofit consumer organization dedicated to independent product testing, investigative journalism, consumer-oriented research, public education, and consumer advocacy."[75]

142. In October 2025, Consumer Reports published a report that showed more than two-thirds of the 23 protein products it tested exceeded its level of concern for lead.[76]

143. Consumer Reports further found that plant-based protein powders had lead levels nine times higher than dairy-based powders on average.

144. Consumer Reports identified the Orgain Organic Plant-Based Protein Powder in Vanilla Bean as a product "Okay to eat occasionally" with lead levels at 143% of its level for concern and a limit of 4 ¾ servings per week.[77]

---

[75] Wikipedia, *Consumer Reports*, https://en.wikipedia.org/wiki/Consumer_Reports (last accessed July 30, 2026).

[76] Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead, *supra*.

[77] *Id.*

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

145. In introducing Consumer Reports' test results, the Report described the significant health risks for any human consumption of lead, explaining:

*While no amount of lead is technically safe, the greatest danger comes from repeated or continued exposure, particularly at high doses, says Rose Goldman, MD, an associate professor of medicine and physician at Cambridge Health Alliance in Medford, Mass. Children and pregnant people are most vulnerable because lead can damage the developing brain and nervous system, which has the potential to cause neurological issues, learning delays, and behavioral problems. But chronic lead exposure has also been linked to immune suppression, reproductive problems, kidney damage, and high blood pressure in adults.*[78]

146. To conduct its testing, Consumer Reports:

*purchased multiple samples of each product, including two to four distinct lots, over a three-month period beginning [November 2024]. CR bought the Contaminated Products anonymously from a variety of sources, including popular online retailers like Amazon and Walmart, and at supermarkets and health food stores in New York state, such as the Vitamin Shoppe and Whole Foods Market. Then CR tested samples from multiple lots of each product for total protein, arsenic, cadmium, lead, and other elements.*[79]

[78] *Id.*

[79] *Id.*

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

147.    To conduct its study, Consumer Reports analyzed two to three unique samples of the 23 products it tested, which were blind coded and sent to an independent, accredited laboratory for testing in accordance with the Association of Official Analytical Chemists ("AOAC") Method 2015.01. According to Consumer Reports, the "testing conformed to the quality control criteria and performance requirements set in cited official methods, as well as those in ISO 17025."[80]

148.    Consumer Reports based its daily exposure limit for lead on the California Proposition 65 (the Safe Drinking Water and Toxic Enforcement Act of 1986) maximum allowable dose level ("MADL") for lead, which is 0.5 micrograms per day.[81]

149.    These findings were later confirmed by additional independent testing: Plaintiff's counsel tested the Contaminated Products, and the results confirmed the presence of detectable levels of heavy metals in the Contaminated Products:

| Product | Lead (ppb) | Cadmium (ppb) | Arsenic (ppb) |
|---|---|---|---|
| Orgain Organic Vegan Protein +50 – Vanilla Bean | 37.1 | 32.2 | 17.3 |
| Orgain Organic Vegan Protein +50 – Chocolate Fudge | 18.2 | 84.8 | 15.2 |
| Orgain Organic Vegan Protein Powder Vanilla Bean | 13.2 | 32.2 | 18.8 |
| Orgain Organic Vegan Protein Powder Chocolate Fudge | 26 | 87.9 | 14.1 |

[80]    Consumer Reports, *Heavy Metals in Protein Supplements* (Oct. 2025), at 1 https://article.images.consumerreports.org/image/upload/v1761140939/prod/content/dam/CRO-Images-2025/Special%20Projects/Consumer-Reports-Protein-Powders-and-Shakes-Contain-High-Levels-of-Lead-Methodology-Test-Results-v2.pdf (last accessed July 30, 2026) ("Consumer Reports: Heavy Metals in Protein Supplements").

[81]    *See, generally*, *id.*; *see also* State of California Office of Environmental Health Hazard Assessment ("OEHHA"), *About Proposition 65*, https://oehha.ca.gov/proposition-65/about-proposition-65#:~:text=Proposition%2065%20requires%20businesses%20to,are%20released%20into%20the%20environment (last accessed July 30, 2026); State of California OEHHA, *Proposition 65 No Significant Risk Levels (MSRLs) and Maximum Allowable Dose Levels (MADLs)*, https://oehha.ca.gov/proposition-65/general-info/proposition-65-no-significant-risk-levels-nsrls-and-maximum-allowable-dose-levels-madls (last accessed July 30, 2026).

CLASS ACTION COMPLAINT - 58
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

150. The first sample tested, with a lead level of 3.37 µg/serving, exceeded California's Proposition 65 MADL of 0.5 µg/day by 674%.

151. The laboratory results demonstrate that heavy metals were repeatedly detected across multiple product lots, multiple Amazon locations, and both tested flavors. Cadmium was detected in every tested sample. Lead was detected in multiple samples across different lots and locations.

152. Confirmatory testing by Microbac Laboratories, an independent ISO/IEC 17025 accredited laboratory, corroborated the presence of heavy metals in the Contaminated Products.

153. California Proposition 65 a safe harbor MADL for lead of 0.5 µg/day. Sample B1's lead level of 3.37 µg/serving exceeds this safe harbor by approximately 674%.

154. The Proposition 65 MADL for cadmium (oral) is 4.1 µg/day, and the No Significant Risk Level ("NSRL") for inorganic arsenic (oral) is 10 µg/day.

155. The FDA does not review, approve, or test protein powder supplements before they are sold to consumers. Unlike prescription drugs and medical devices, dietary supplements—including protein powders—are not subject to pre-market approval by the FDA. *See* 21 U.S.C. § 342(f)(1) (2005) (placing burden on FDA to prove adulteration after product reaches market). There are no federal regulatory limits for heavy metals in protein supplements or dietary supplements generally. The FDA has not established maximum allowable levels for lead, cadmium, or arsenic in protein powder products, nor has it issued any regulation requiring disclosure of heavy metal content on dietary supplement labels. This regulatory gap means that consumers must rely entirely on the manufacturer's and retailer's voluntary representations regarding product safety and purity—representations that Amazon made through its claims, including but not limited to claims such as "Cleaner Ingredients," "Quality Ingredients," "Higher Standards," "Non-GMO," "USDA ORGANIC," and "#1 plant protein brand" providing "Feel Good Energy," while omitting the presence of toxic heavy metals.

156. However, states have begun to investigate the presence of heavy metals in protein powder products and introduce legislation that would require heavy metals testing.

CLASS ACTION COMPLAINT - 59
011394-12/5087587 V1

157. In February 2026, California introduced Senate Bill 1033, which would require mandatory testing and public disclosure of heavy metals in protein products sold in the state.[82]

158. On June 8, 2026, the Texas Attorney General launched an industry-wide investigation into protein powder manufacturers, targeting potential violations of the Texas Deceptive Trade Practices Act related to undisclosed heavy metal contamination.[83]

**J.    Defendant Actively Concealed the Truth About the Contaminated Products from Consumers**

159. Defendant actively and knowingly concealed from and failed to disclose to consumers, including Plaintiff and the Class, that the Contaminated Products it sells to consumers contain or materially risk containing heavy metals, including lead, cadmium, and arsenic.

160. Defendant actively and knowingly concealed and failed to disclose material facts to Plaintiff and other consumers about the negative health effects of the Contaminated Products it sells.

161. Information regarding the presence of heavy metals in the Contaminated Products is in the exclusive possession of Amazon and not readily available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence of heavy metals in the Contaminated Products.

162. Defendant knowingly and actively concealed the material facts from consumers because it knew consumers cared about the Contaminated Products' quality, ingredients, standards, and suitability for use, and if consumers were to learn the truth about Amazon's claims, it would negatively affect its finances.

---

[82] California Legislative Information, *Senate Bill 1033* (April 6, 2026) https://leginfo.legislature.ca.gov/faces/billText Client.xhtml?bill_id=202520260SB1033 (last accessed July 30, 2026).

[83] The Attorney General of Texas, *Attorney General Ken Paxton Launches Industry-Wide Investigation into Protein Powder Manufacturers to Protect Texans from Heavy Metals, Including Lead and Cadmium, Found in Popular Protein Powders* (June 8, 2026), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-launches-industry-wide-investigation-protein-powder-manufacturers (last accessed July 30, 2026).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

163.    Defendant knew or should have known of the negative health effects caused by exposure to heavy metals, yet knowingly and actively concealed the presence or material risk of heavy metals in the Contaminated Products.

164.    The knowing and active concealment of these material facts renders the point-of-sale webpages for the Contaminated Products' deceptive, misleading, and unfair because without full disclosure, reasonable consumers, including Plaintiff and the Class, believe the Contaminated Products to be of a certain quality and suitable for use when they are not.

165.    Plaintiff and the Class Members made purchases they would not have made or paid a premium price for the Contaminated Products they would not have paid had they known the truth based on Defendant's active concealment, Omissions, Misrepresentations, and partial representations regarding the presence or material risk of heavy metals in the Contaminated Products.

166.    Defendant charged, and Plaintiff purchased, the Contaminated Products, paying a premium price, despite the availability of comparable, lesser-priced protein powder products sold by other retailers with no detectable levels of heavy metals.

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Orgain Organic Vegan Protein +50 – Vanilla Bean | $1.06/oz | 37.1 | 17.3 | 32.2 |
| Orgain Organic Vegan Protein +50 – Chocolate Fudge | $1.06/oz | 18.2 | 15.2 | 84.8 |
| Orgain Organic Vegan Protein Powder Vanilla Bean | $0.91/oz | 13.2 | 18.8 | 32.2 |
| Orgain Organic Vegan Protein Powder Chocolate Fudge | $0.91/oz | 26 | 14.1 | 87.9 |
| **Competitor Products** | **Price/oz** | **Lead (ppb)** | **Arsenic (ppb)** | **Cadmium (ppb)** |
| Muscle Tech 100% Mass Gainer Vanilla[84] | $0.42/oz | ND | 5.2 | ND |
| Dymatize Super Mass Gainer, Gourmet Vanilla[85] | $0.49/oz | 0.4 | 6.1 | ND |

---

[84] Consumer Reports: Heavy Metals in Protein Supplements, *supra.*

[85] *Id.*

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Premier Protein 100% Whey, Vanilla Milkshake[86] | $0.65/oz | ND | ND | ND |
| Transparent Labs Mass Gainer Vanilla[87] | $0.78/oz | 2.2 | 2.7 | ND |

167. The facts misrepresented, concealed, omitted, or not disclosed by Defendant were material such that reasonable consumers, including Plaintiff and the Class, would have considered them when deciding whether to purchase the Contaminated Products. Had Plaintiff known the truth, she would not have purchased the Contaminated Products or paid the premium price.

168. Defendant has been on notice about the problematic presence of heavy metals in organic and plant-based protein powders such as the Contaminated Products. In 2018, the Clean Label Project published a report where it tested 134 of the top-selling protein powder products where it found plant-based products tested worst, 75% of plant-based samples tested positive for lead, and certified organic protein powder products on average tested more than two times the levels of heavy metals compared to non-organic products tested.[88]

**K. Protein Powder Products Sold by Amazon Can Be Manufactured Without Heavy Metals**

169. It is possible to manufacture protein powder products with non-detectable levels of heavy metals, including lead, cadmium, and arsenic.

170. Consumer Reports tested MuscleTech's 100% Mass Gainer Vanilla Milkshake product and found no detectable levels of lead or cadmium[89] and the Clean Label Project tested 16 protein powders that had no detectable levels of lead, cadmium, or arsenic, including Premier Protein's 100% Whey Vanilla Milkshake.[90]

---

[86] Clean Sixteen, *supra*.

[87] Consumer Reports: Heavy Metals in Protein Supplements, *supra*.

[88] Clean Label Project, *Protein Powder Infographic*, https://cleanlabelproject.org/protein-powder-infographic/ (last accessed July 30, 2026).

[89] Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead, *supra*.

[90] Clean Sixteen, *supra*.

CLASS ACTION COMPLAINT - 62
011394-12/5087587 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE　(206) 623-0594 FAX

171. Seven products tested by Consumer Reports were categorized as "Better Choices for Daily Consumption," with six products at less than 88% of Consumer Reports' concern for lead per serving and one product with no detectable level of lead.[91]

172. Additionally, Lead Safe Mama tested another protein powder with no detectable levels of heavy metals, including arsenic, cadmium, and lead.[92]

173. Finally, the Clean Label Product testing showed sixteen products had non-detectable levels of heavy metals:[93]



**L. The Material Omissions and Misrepresentations Mislead and Deceive Reasonable Consumers**

174. Defendant does not disclose anywhere on the product detail pages for the Contaminated Products (or anywhere else) that the Contaminated Products contain heavy metals.

[91] Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead, *supra*.

[92] Lead Safe Mama, *Testing Simply Tera's Organic Whey Protein (Plain, Unsweetened) for Lead, Cadmium, Mercury, and Arsenic with Independent, Third-Party Laboratory Analysis* (Oct. 25, 2025, updated Oct. 29, 2025), https://tamararubin.com/2025/10/simply-teras-organic-whey-protein/ (last accessed July 30, 2026).

[93] Clean Sixteen, *supra*.

Those point-of-sale webpages list the ingredients of the Contaminated Products but omit any mention of heavy metals, including lead, cadmium, or arsenic.

175. The presence of heavy metals in the Contaminated Products is material to consumers.

176. Defendant's Omissions and Misrepresentations wrongfully cause reasonable consumers to believe that Products do not contain heavy metals, when in fact the Contaminated Products do contain heavy metals, including lead, cadmium, and/or arsenic.

177. Information regarding the presence of heavy metals in the Contaminated Products is in the exclusive possession of Defendant and not readily available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence of heavy metals in the Contaminated Products.

178. Reasonable consumers must and do rely on Defendant to honestly report what the Contaminated Products it sells contain.

179. Because of Defendant's failure to disclose the presence or material risk of heavy metals on the Contaminated Products' point-of-sale webpages, no reasonable consumer would expect, suspect, or understand that the Contaminated Products contained or had a material risk of containing heavy metals.

180. In light of Defendant's statements regarding the quality of the Contaminated Products, Defendant knew or should have known the Contaminated Products contained or had a material risk of containing heavy metals.

181. Defendant had a duty to ensure the Contaminated Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

182. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive point-of-sale webpages based on the material Misrepresentations, partial misrepresentations, and Omissions.

CLASS ACTION COMPLAINT - 64
011394-12/5087587 V1



183. The Misrepresentations, partial misrepresentations, and Omissions on Defendant's point-of-sale webpages are material and reasonably likely to deceive reasonable consumers, such as Plaintiff, in their purchasing decisions.

184. The Misrepresentations, partial misrepresentations, and Omissions were intended to and did, in fact, cause consumers like Plaintiff and the other Class Members, to purchase products they would not have purchased if Defendant had disclosed that the Contaminated Products contained heavy metals, or for which they would not have paid a premium price, or any price at all.

185. As a result of the Omissions and Misrepresentations, Defendant generated substantial sales and profited from Plaintiff's lack of information about the presence of heavy metals in the Contaminated Products.

186. Plaintiff and other reasonable consumers would not have purchased the Contaminated Products or would have paid less for them but for the Misrepresentations, partial misrepresentations, Omissions, concealment, and other deceptive conduct.

187. The Contaminated Products' point-of-sale webpages misled and deceived reasonable consumers because Defendant omitted and/or misrepresented that the Contaminated Products contained or had a material risk of containing heavy metals, while representing the Contaminated Products' health benefits.

188. Based on Defendant's Misrepresentations, partial misrepresentations, and Omissions, and the overall impression given by the point-of-sale webpages, no reasonable consumer could expect or understand the Contaminated Products contained or had a material risk of containing heavy metals such as cadmium and lead.

189. Defendant's point-of-sale webpages for the Contaminated Products contradict the presence of heavy metals such as lead, cadmium, and arsenic.

190. The Misrepresentations and Omissions misleadingly convey to consumers that the Contaminated Products are of a high quality and have certain characteristics that they do not actually possess.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

191. Defendant misleadingly causes consumers to believe the Contaminated Products it sells do not contain or have a material risk of containing heavy metals, including lead, cadmium, and arsenic, due to the material Omissions, Misrepresentations and partial misrepresentations, when in fact the Contaminated Products do contain or have a material risk of containing lead, cadmium, and/or arsenic.

192. Whether the Contaminated Products contain heavy metals is material information to reasonable consumers, including Plaintiff.

193. Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of or material risk of heavy metals in the Contaminated Products.

194. Due to the point-of-sale webpages, Misrepresentations, partial misrepresentations, and Omissions, reasonable consumers, like Plaintiff, would not suspect the presence of heavy metals in the Contaminated Products.

195. Unlike Defendant, reasonable consumers are not able to independently detect the presence of heavy metals in the Contaminated Products and are generally without the means to conduct their own scientific tests on the Contaminated Products.

196. Defendant knew, yet failed to disclose, that the Contaminated Products or the ingredients used in the Contaminated Products were not sufficiently or adequately monitored or tested for heavy metals.

197. The Misrepresentations, partial misrepresentations, and Omissions, were misleading due to Defendant's failure to ensure the Contaminated Products were sufficiently or adequately monitored or tested for heavy metals and to disclose the presence or material risk of heavy metals in the Contaminated Products.

198. Defendant knew or should have known that the Contaminated Products contained or may contain levels of heavy metals that were not disclosed on the point-of-sale webpages.

199. Defendant knew or should have known that reasonable consumers, including Plaintiff, expected it to ensure the Contaminated Products it sold were sufficiently monitored and

CLASS ACTION COMPLAINT - 66
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

tested for heavy metals and to disclose the presence or risk of heavy metals in the Contaminated Products.

200. Further, Defendant knew or should have known that reasonable consumers paid higher prices, or paid any price at all, for the Contaminated Products and expected the Contaminated Products sold by Defendant to be sufficiently tested and monitored for the presence of heavy metals.

201. The Misrepresentations, partial misrepresentations, and Omissions are material and render the Contaminated Products' point-of-sale webpages deceptive because without full disclosure, reasonable consumers, such as Plaintiff, believe the Contaminated Products do not contain or have a material risk of containing heavy metals.

202. Defendant charged, and Plaintiff purchased, the Contaminated Products, paying a premium price, despite the availability of comparable, lesser-priced protein powder products sold by other retailers with no detectable levels of heavy metals.

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Orgain Organic Vegan Protein +50 – Vanilla Bean | $1.06/oz | 37.1 | 17.3 | 32.2 |
| Orgain Organic Vegan Protein +50 – Chocolate Fudge | $1.06/oz | 18.2 | 15.2 | 84.8 |
| Orgain Organic Vegan Protein Powder Vanilla Bean | $0.91/oz | 13.2 | 18.8 | 32.2 |
| Orgain Organic Vegan Protein Powder Chocolate Fudge | $0.91/oz | 26 | 14.1 | 87.9 |
| **Competitor Products** | **Price/oz** | **Lead (ppb)** | **Arsenic (ppb)** | **Cadmium (ppb)** |
| Muscle Tech 100% Mass Gainer Vanilla[94] | $0.42/oz | ND | 5.2 | ND |
| Dymatize Super Mass Gainer, Gourmet Vanilla[95] | $0.49/oz | 0.4 | 6.1 | ND |

[94] Consumer Reports: Heavy Metals n Protein Supplements, *supra*.

[95] *Id.*

CLASS ACTION COMPLAINT - 67
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Premier Protein 100% Whey, Vanilla Milkshake[96] | $0.65/oz | ND | ND | ND |
| Transparent Labs Mass Gainer Vanilla[97] | $0.78/oz | 2.2 | 2.7 | ND |

203.   As a result of Defendant's deceptive, unfair, and misleading Misrepresentations, partial misrepresentations, and Omissions, it was able to generate substantial sales, which allowed it to reap enormous profits from Plaintiff and similarly situated consumers who paid the purchase price or premium for the Contaminated Products that were not as advertised.

204.   Plaintiff and other reasonable consumers would not have purchased the Contaminated Products or would have paid less for them but for the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions.

## M.   Amazon's Knowledge and Failure to Disclose

205.   As a major national retailer with sophisticated supply-chain management and quality control processes, Amazon knew or should have known about the heavy metals in the products it sells, including the Contaminated Products.

206.   Despite this knowledge, or constructive knowledge, Amazon continued to sell the Contaminated Products without any warning or disclosure to consumers regarding the presence or material risk of heavy metals in the Contaminated Products.

207.   Reasonable consumers, like Plaintiff, could not learn of the inclusion of heavy metals in the Contaminated Products unless Amazon included a proper disclosure, because identifying the presence of heavy metals requires expensive and sophisticated laboratory testing. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

208.   Based on the messaging and overall impression communicated by Amazon's point-of-sale webpages, including the material Misrepresentations, partial misrepresentations,

---

[96] *Clean Sixteen*, *supra*.

[97] Consumer Reports: Heavy Metals in Protein Supplements, *supra*.

**HAGENS BERMAN**

Omissions, active concealment, and other deceptive conduct, no reasonable consumer purchasing protein powder products would expect the Contaminated Products to contain heavy metals, especially since the Contaminated Products are marketed as high quality, clean, and nutritious, and intended to be ingested.

209. For example, the "USDA Organic" labeling on the Contaminated Products creates a misleading impression of purity and safety. However, the "USDA Organic" certification addresses the use of synthetic pesticides, fertilizers, and genetically modified organisms, but does not test for or certify the absence of heavy metals such as lead, cadmium, and arsenic.

210. A reasonable consumer would not expect "USDA Organic" protein powder to contain lead at levels exceeding recognized safety thresholds by more than 600%. The absence of any warning or disclosure regarding heavy metal content, combined with the prominent "USDA Organic" labeling, creates a deceptive net impression regarding product safety.

211. Defendant had a duty to ensure the Contaminated Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

212. Amazon's failure to disclose was not the result of ignorance or inability. As one of the largest retailers in the world, with annual revenues exceeding $240 billion, Amazon has the resources and capability to test products for heavy metal contamination and to require disclosure from its suppliers.

213. Specifically, Amazon knew or should have known of the heavy metal contamination for the following reasons: (a) the Clean Label Project's January 2025 report—which found that 79% of organic protein powders exceeded California's Proposition 65 limits for lead—was widely publicized in national media outlets and covered extensively on social media; (b) Consumer Reports' October 2025 investigation of protein powders, which specifically identified Orgain products as exceeding its level of concern for lead, was one of its most-read articles of the year; (c) as one of the world's most sophisticated retailers with dedicated quality assurance and product safety teams, Amazon actively monitors media coverage, regulatory developments, and

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

consumer safety reports related to products it sells; (d) the U.S. Consumer Product Safety Commission has previously found that Amazon acts as a "distributor" of products sold via Fulfillment by Amazon, not merely a passive platform, imposing heightened duties with respect to product safety; and (e) Amazon's own Business Solutions Agreement requires sellers to provide "any text, disclaimers, warnings, notices, labels, warranties, or other content required by applicable Law" in connection with the sale of products, yet Amazon failed to enforce this requirement with respect to heavy metals disclosure for the Contaminated Products, despite having both the contractual authority and the knowledge to do so.

214. Plaintiff's claims are not preempted by federal law. Plaintiff does not allege that Amazon violated the Federal Food, Drug, and Cosmetic Act ("FDCA") or the Nutrition Labeling and Education Act ("NLEA"), nor does she seek to enforce any federal labeling requirement. Rather, Plaintiff brings her claim exclusively under the Washington Consumer Protection Act, which independently prohibits unfair or deceptive acts or practices in trade or commerce, as well as common law. Plaintiff's claims exist independently of any federal labeling requirement because they are based on Amazon's affirmative misrepresentations that include that the Contaminated Products have "cleaner ingredients," "quality ingredients" "Higher Standards," "Non-GMO," "USDA ORGANIC," and "#1 plant protein brand" and provide "feel good energy"—claims that are deceptive under state law regardless of any federal labeling obligation. Plaintiff does not seek to impose labeling requirements that are "in addition to" or "different from" those required by federal law. *See* 21 U.S.C. § 343-1(a) (2010). Instead, Plaintiff challenges Amazon's voluntary affirmative representations and omissions that deceive consumers about the actual quality and safety of the Contaminated Products.

215. The NLEA contains a "savings clause" that expressly disavows implied preemption: "The [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343–1(a)]." Pub. L. No. 101–535, § 6(c)(1). Moreover, the FDCA does not occupy the field of food safety and consumer protection; it establishes a regulatory "floor," not a "ceiling." States retain the historic police power to protect

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

their citizens from deceptive trade practices, and private enforcement of state consumer protection laws coexists with—and is complementary to—FDA regulation. *See Wyeth v. Levine*, 555 U.S. 555, 579 (2009) (state law provides "an additional, and important, layer of consumer protection that complements FDA regulation"). Critically, the FDA does not review, approve, or test dietary supplements—including protein powders—before they are sold to consumers, and has established no regulatory limits for heavy metals in protein supplements or dietary supplements. Where the FDA has neither established standards nor exercised its enforcement authority, preemption is particularly inappropriate.

216. Furthermore, the implied preemption doctrine has no application here. Plaintiff does not allege that Amazon's labels violate any FDA regulation; she alleges that Amazon's affirmative marketing claims, for example—"Cleaner Ingredients," "Quality Ingredients," "Higher Standards," "Non-GMO," "USDA ORGANIC," and "#1 plant protein brand" and "Feel Good Energy"—are misleading because those voluntary representations are contradicted by the undisclosed presence of toxic heavy metals in the Contaminated Products. These claims would be actionable under the Washington CPA, fraudulent concealment of the truth, and tolling whether or not the FDCA existed, because they are grounded in Amazon's own deceptive marketing practices, not any federal requirement.

217. Plaintiff did not discover and could not have discovered through reasonable diligence the presence of heavy metals in the Contaminated Products because: (a) the FDA does not require testing or disclosure of heavy metals in protein supplements, leaving no publicly available regulatory data for consumers to review; (b) identifying the presence of heavy metals in food products requires sophisticated inductively coupled plasma mass spectrometry ("ICP-MS") laboratory equipment that is not available to consumers and costs hundreds of dollars per test; and (c) Amazon actively concealed the contamination by marketing the Contaminated Products as having "Cleaner Ingredients," "Quality Ingredients," and "Higher Standards," while being "Non-GMO," "USDA ORGANIC," and the "#1 plant protein brand" and providing "Feel Good Energy" as well as other claims while omitting any disclosure of heavy metal content, thereby affirmatively

CLASS ACTION COMPLAINT - 71
011394-12/5087587 V1

lulling consumers into a false sense of security,. The statute of limitations was tolled by Defendant's fraudulent concealment of the heavy metal contamination and by the discovery rule, which delays accrual of a claim until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the claim.

## V.    CLASS ACTION ALLEGATIONS

218.    Plaintiff brings this action on behalf of herself and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> **Nationwide Class**: All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Contaminated Products from Amazon.com for household use and not for resale (the "Class").

219.    Members of the Class are sometimes, where appropriate, referred to herein collectively as "Class Members."

220.    Excluded from the Class are: (a) Defendant, its officers, directors, employees, agents, and affiliates; (b) the Judge(s) assigned to this case and their immediate family members; (c) any member of the Class who timely and validly opts out of the Class; and (d) any entity in which Defendant has a controlling interest.

221.    **Numerosity (FRCP 23(a)(1)):** The Class consists of thousands, if not tens of thousands, of consumers. The Contaminated Products are regularly stocked items at Amazon's approximately 600 U.S. warehouse locations and are sold through Amazon.com. Amazon is one of the largest retailers in the United States, with more than 130 million customers. Given that the Contaminated Products are among Amazon's regularly stocked dietary supplement items, sold continuously throughout the Class Period online, the number of Class Members is necessarily large. The exact number of Class Members is readily ascertainable from Amazon's sales records, membership transaction data, and point-of-sale webpages, which track every purchase by member number. Joinder of all Class Members is impracticable due to the large number of geographically dispersed Class Members.

222.    **Commonality (FRCP 23(a)(2)):** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These

CLASS ACTION COMPLAINT - 72
011394-12/5087587 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

common questions are capable of generating common answers that will drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The deceptive conduct at issue—Amazon's uniform failure to disclose heavy metals in the Contaminated Products while making uniform affirmative representations such as having "cleaner ingredients," "quality ingredients" "Higher Standards," "Non-GMO," "USDA ORGANIC," and "#1 plant protein brand" and providing "feel good energy" was identical as to all Class Members. Whether such conduct constitutes an unfair or deceptive practice is answerable on a class-wide basis without reference to individual circumstances. Common questions include:

    a.    Whether Amazon engaged in unfair or deceptive acts or practices;

    b.    whether the Misrepresentations, partial misrepresentations, and Omissions were material to a reasonable consumer;

    c.    whether Amazon had knowledge that the Misrepresentations, partial misrepresentations, and Omissions were material, false, deceptive, and misleading;

    d.    whether Amazon owed a duty to disclose;

    e.    whether Amazon knew or should have known that the Contaminated Products contained or may contain detectable levels of heavy metals, including lead, cadmium, and/or arsenic;

    f.    whether Amazon failed to disclose that the Contaminated Products contained or may contain detectable levels of heavy metals, including lead, cadmium, and/or arsenic;

    g.    whether Amazon had exclusive knowledge of the Omissions;

    h.    whether Plaintiff could have reasonably discovered the Omissions;

    i.    whether Amazon violated Washington state law;

    j.    Whether Amazon's conduct occurred in trade or commerce within the meaning of RCW §19.86.010(2);

    k.    Whether Amazon's conduct affects the public interest;

    l.    Whether Class Members suffered injury to their business or property;

    m.    Whether Amazon's conduct caused Class Members' injuries; and

    n.    whether Plaintiff and the Class Members are entitled to actual, statutory, and punitive damages; and

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

o.    whether Plaintiff and the Class Members are entitled to declaratory and injunctive relief.

223.    These common questions are capable of generating common answers that will drive the resolution of the litigation. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

224.    **Typicality (FRCP 23(a)(3)):** Plaintiff's claims are typical of the claims of the Class because they arise from the same course of conduct by Amazon—namely, the sale of Contaminated Products containing heavy metals without any warning or disclosure. Plaintiff and all Class Members were exposed to the same packaging, the same product webpage representations, and the same material omissions regarding heavy metal content. Plaintiff and all Class Members were subject to the same deceptive Misrepresentations and Omissions and suffered the same type of injury: economic loss from purchasing products they would not have purchased, or would have paid less for, had the contamination been disclosed. The claims do not require any individualized proof unique to the named Plaintiff—the same representations, the same omissions, and the same laboratory test results establish liability as to all Class Members. No defense unique to the named Plaintiff exists that would render her claims atypical.

225.    **Adequacy (FRCP 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with, and are not antagonistic to, the interests of other Class Members. Plaintiff has retained counsel experienced in consumer protection and class action litigation who will adequately represent the interests of the Class.

226.    **Predominance (FRCP 23(b)(3)):** Common questions of law and fact predominate over any questions affecting only individual Class Members. The central issues in this case—whether Amazon's sale of products with undisclosed heavy metals constitutes an unfair, misleading, and/or deceptive practice under the Washington law, whether such conduct affects the public interest, and the appropriate measure of damages—are common to all Class Members and can be resolved on a class-wide basis.

227.    Individual issues, if any, do not predominate. Amazon's failure to disclose was uniform across all sales of the Contaminated Products. The materiality of the omitted information—including the presence of lead at levels exceeding recognized safety thresholds by

CLASS ACTION COMPLAINT - 74
011394-12/5087587 V1

more than 600%—can be assessed on a class-wide basis under an objective "reasonable consumer" standard.

228. **Superiority (FRCP 23(b)(3)):** A class action is the superior method for the fair and efficient adjudication of this controversy. Individual Class Members' damages may be relatively small compared to the expense and burden of individual litigation, making it impractical for individual Class Members to seek redress on their own. A class action efficiently adjudicates the claims of all members in a single proceeding, avoids inconsistent adjudications, and conserves judicial resources.

229. Class treatment is manageable because Amazon's sales records, membership transaction data, and point-of-sale webpages will identify Class Members and their purchases, and the legal and factual issues are common to the Class.

230. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VI.   CLAIMS FOR RELIEF

### COUNT I

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT,**
**Wash. Rev. Code Ann. §19.86.010, *et seq*.**
**(Against Defendant on Behalf of the Class)**

231. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

232. Plaintiff brings this Count on behalf of all Class Members.

233. Washington's Consumer Protection Act ("Washington CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" RCW §19.86.020.

234. Amazon's acts complained of herein are deceptive and unfair within the meaning of the Washington CPA. RCW §19.96.010.

235. Amazon committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of the Washington CPA. Wash. Rev. Code Ann. §19.86.010.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Amazon's decision to offer the Contaminated Products for sale was made from its offices in Washington as was its approval of the material on Amazon's website that describes the Contaminated Products.

236. To establish a claim under the Washington CPA, a plaintiff must prove five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) injury to the plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

237. Amazon's deceptive and unfair practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop on its website.

238. Amazon's deceptive conduct satisfies the public interest element of the Washington CPA because it involves a pattern of deceptive conduct occurring in the regular course of Amazon's business. Amazon.com is one of the largest online retailers in the United States, with over 200 million Prime members and more than 130 million unique customers. The Contaminated Products are among the top-selling protein powders on Amazon.com, sold continuously to thousands of consumers nationwide. Amazon's deceptive practice—marketing products as clean, safe, and high quality while omitting the presence of toxic heavy metals—has the capacity to affect millions of consumers who purchase protein powder on the platform. This is not a private dispute between individual parties but involves a pattern of conduct in trade or commerce affecting the general consuming public. Per se public interest exists where, as here, the deceptive practice occurs in the regular course of the seller's business and is part of a pattern or generalized course of conduct.

239. Amazon's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Amazon's business and were capable of deceiving a substantial portion of the consuming public.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

240. The facts concealed or not disclosed or misrepresented by Amazon were material facts in that Plaintiff and the Class, and other reasonable consumers, would have considered them in deciding whether to purchase the Contaminated Products. Had Plaintiff and the Class Members known the Contaminated Products did not have the quality, ingredients, standards, and suitability for use as advertised by Amazon and contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic, they would not have purchased the Contaminated Products or paid a premium price.

241. Amazon alone possessed the information that was material to Plaintiff and the Class and failed to disclose such material information to consumers.

242. Amazon intended for Plaintiff and the Class Members to rely on its Misrepresentations and partial misrepresentations, Omissions, active concealment, and other deceptive conduct regarding the Contaminated Products' quality, ingredients, standards, and suitability for use when purchasing the Contaminated Products, unaware of the undisclosed material facts.

243. Plaintiff and the Class Members did in fact rely on the material misrepresentations and partial misrepresentations, including the Misrepresentations, and Omissions and purchased the Contaminated Products to their detriment. Given the materiality of the Omissions, Plaintiff and the Class's reliance on the misrepresentations, partial misrepresentations, and Omissions were justifiable.

244. Plaintiff and the Class Members purchased the Contaminated Products that contain undisclosed levels of heavy metals, including lead, cadmium, and arsenic, despite the availability of other protein powder products with non-detectable levels of heavy metals.

245. Amazon charged, and Plaintiff and the Class Members paid, a premium price for the Contaminated Products despite the availability of other protein powder products with non-detectable levels of heavy metals.

246. The misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct caused Plaintiff

CLASS ACTION COMPLAINT - 77
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

and the Class Members to suffer injury in the form of actual damages when they purchased the Contaminated Products that were worth less than the price paid and that they would not have purchased at all had they known the Contaminated Products contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic.

247. Plaintiff and the Class Members have been harmed, and that harm will continue unless Amazon is enjoined from further omitting the true quality, ingredients, standards, and suitability for use of the Contaminated Products.

248. As a direct and proximate result of Amazon's conduct, Plaintiff and the Class suffered quantifiable economic injury to their business or property by: (1) paying a premium price for the Contaminated Products they reasonably believed did not contain or have a material risk of containing heavy metals, including lead, cadmium, and/or arsenic; (2) purchasing the Contaminated Products they would not have purchased without Defendant's Misrepresentations and partial misrepresentations, Omissions, active concealment, and other deceptive conduct at the prices they paid; and/or (3) receiving the Contaminated Products that were worth less than the price paid because they contained heavy metals, rendering the Contaminated Products less valuable than represented. This injury constitutes a tangible, quantifiable economic loss—not merely "dashed expectations"—sufficient to satisfy the Washington CPA's requirement of injury to "business or property" under RCW §19.86.090.

249. The price premium paid by Plaintiff and the Class is quantifiable and measurable. As set forth above, the Contaminated Products were sold at $0.91-$1.06/oz, while comparable protein powder products with non-detectable levels of heavy metals were available at prices as low as $0.42/oz. The difference between the price paid and the value received—given the undisclosed presence of toxic heavy metals—constitutes a concrete, measurable financial loss that can be calculated on a per-unit and per-Class-Member basis using Amazon's sales records.

250. Amazon is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under RCW §19.86.090.

## COUNT II

### FRAUDULENT CONCEALMENT
**(Based on Washington Law
Against Defendant on Behalf of the Class)**

251. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

252. As required by Federal Rule of Civil Procedure 9(b), Plaintiff alleges the following particularized facts regarding the fraudulent concealment: WHO: Amazon.com, Inc., through its product listing team and quality assurance personnel at its corporate headquarters at 410 Terry Avenue North, Seattle, Washington; WHAT: Defendant concealed the presence of lead (at levels up to 37.1 ppb), cadmium (at levels up to 87.9 ppb), and arsenic (at levels up to 18.8 ppb) in the Contaminated Products while affirmatively representing on its product detail pages that the Contaminated Products have "Cleaner Ingredients," "Quality Ingredients," and "Higher Standards" and are "Non-GMO," "USDA ORGANIC," and the "#1 plant protein brand" and provide "Feel Good Energy"; WHEN: from at least January 2022 through the present, a period during which Plaintiff purchased 36 containers of the Contaminated Products; WHERE: on Amazon.com product detail pages accessible nationwide at specific URLs including amazon.com/dp/B07PVKBGV3 and amazon.com/dp/B00J074W7Q, among others; HOW: by controlling the content of product detail pages, including through its Business Solutions Agreement for third-party sellers, failing to require heavy metal testing from Orgain or any supplier of the Contaminated Products, and omitting any disclosure of heavy metal contamination while simultaneously promoting safety-related and purity-related product attributes that directly contradict the presence of toxic heavy metals.

253. Plaintiff brings this Count on behalf of all Class Members as a Nationwide class under Washington law.

254. Defendant, as a seller of the Contaminated Products to Plaintiff and the Class, had a duty to disclose to consumers that the Contaminated Products contained heavy metals, including lead, cadmium, and arsenic.

CLASS ACTION COMPLAINT - 79
011394-12/5087587 V1

255. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and the Class, and other reasonable consumers, would have considered them in deciding whether to purchase the Contaminated Products. Had Plaintiff and the Class Members known the Contaminated Products did not have the quality, ingredients, standards, and suitability for use as advertised by Amazon and contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic, they would not have purchased the Contaminated Products or paid a premium price.

256. Defendant alone possessed the information that was material to Plaintiff and the Class and failed to disclose such material information to consumers.

257. Because identifying the presence of heavy metals requires expensive and sophisticated laboratory testing, reasonable consumers, such as Plaintiff, could not learn of the inclusion of heavy metals in the Contaminated Products unless Defendant included a proper disclosure.

258. Defendant misrepresented, partially misrepresented, omitted, suppressed, and concealed material facts regarding the Contaminated Products, namely the fact that the Contaminated Products contained heavy metals, including lead, cadmium, and arsenic.

259. As a result of Defendant's Misrepresentations and partial misrepresentations, with no disclosures as to the presence or risk of heavy metals in the Contaminated Products at the point-of-sale, Plaintiff did not expect the Contaminated Products to contain heavy metals.

260. Defendant intended for Plaintiff and the Class to rely on its Misrepresentations and partial misrepresentations, Omissions, active concealment, and other deceptive conduct regarding the Contaminated Products' quality, ingredients, standards, and suitability for use when purchasing the Contaminated Products, unaware of the undisclosed material facts.

261. Plaintiff and the Class Members did in fact rely on the material Misrepresentations, partial misrepresentations, and Omissions and purchased the Contaminated Products to their detriment. Given the materiality of the Omissions, Plaintiff's and the Class's reliance on the Misrepresentations, partial misrepresentations, and Omissions were justifiable.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

262. Plaintiff and the Class Members purchased the Contaminated Products that contain undisclosed levels of heavy metals despite the availability of other protein powder products with non-detectable levels of heavy metals.

263. Defendant charged, and Plaintiff and the Class Members paid, a premium price for the Contaminated Products despite the availability of other protein powder products with non-detectable levels of heavy metals.

264. Defendant's Misrepresentations and partial misrepresentations, Omissions, active concealment, and other deceptive conduct alleged herein caused Plaintiff and the Class Members to make their purchases of the Contaminated Products. Plaintiff was unaware of these material facts, and had Defendant communicated these material facts to consumers, Plaintiff and the Class Members would not have purchased the Contaminated Products, or would not have purchased the Contaminated Products at the prices they paid. Accordingly, Plaintiff and the Class Members have suffered injury in fact, including lost money or property, as a result of Defendant's Misrepresentations, partial misrepresentations, Omissions, and other deceptive conduct.

265. Accordingly, Defendant is liable to Plaintiff and the Class Members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

266. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Class Members' rights, in order to enrich itself. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court enter judgment against Defendant and grant the following relief:

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

B.      Enter judgment against Defendant on Plaintiff's claims for violation of the laws of Washington, and judgment under the law of fraudulent concealment;

C.      Award Plaintiff and all Class Members their actual damages and judgment under the law of fraudulent concealment;

D.      Award treble damages up to the maximum amount permitted under RCW § 19.86.090;

E.      Award Plaintiff and the Class reasonable attorneys' fees and costs of suit pursuant to RCW §19.86.090;

F.      Enter injunctive relief requiring Defendant to: (i) disclose the presence and levels of heavy metals, including lead, cadmium, and arsenic, in the Contaminated Products sold on Amazon.com; and (ii) cease selling such products without adequate disclosure of heavy metal contamination;

G.      Award pre-judgment and post-judgment interest at the maximum rate permitted by law; and

H.      Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

DATED: July 31, 2026                    Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman, WSBA No. 12536
*/s/ Shelby Smith*
Shelby Smith, WSBA No. 31377
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
shelby@hbsslaw.com

CLASS ACTION COMPLAINT - 82
011394-12/5087587 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Rebecca A. Peterson (*pro hac vice* forthcoming)
**HECHT PARTNERS LLP**
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
rpeterson@hechtpartners.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 83
011394-12/5087587 V1

**APPENDIX A**
**(CONTAMINATED PRODUCT MISREPRESENTATIONS AND OMISSIONS)**

**Orgain Organic Plant-Based Protein + 50 Superfoods Powder Creamy Chocolate Fudge**

- "CLEANER INGREDIENTS"
- "HIGHER STANDARDS"
- "ORGANIC 50 SUPERFOODS BLEND"
- "PERFECT FOR ANY LIFESTYLE"
- "No Soy Ingredients"
- "Gluten Free"
- "VEGAN"
- "Non-GMO"
- "PLANT-BASED PROTEIN"
- "USDA Organic"
- "Organic 50 Superfoods Blend"
- "No Dairy, Lactose, or Soy Ingredients"
- "No Added Sugar"
- "No Artificial Flavors, Preservatives, or Sweeteners"
- "Carrageenan Free"
- "#1 plant protein powder brand"
- "FEEL GOOD ENERGY"
- "Muscle Support & Recovery"
- "Supports Metabolism"
- "Helps Manage Hunger"
- "Promotes Healthy Weight Management"
- "Good Source of Fiber"
- "Quality Ingredients"
- "The Power of Clean"
- "what's on the inside [] matters most"
- "You can bet this organic protein powder packs good, clean nutrition"
- "master plan to give you good, clean fuel in every sip"
- "to help more people live vibrant lives through the power of good, clean nutrition"
- "Orgain: Clean Nutrition"
- "Good, Clean Nutrition"
- "Certified Plant Based"


**Orgain Organic Plant-Based Protein + 50 Superfoods Powder Vanilla Bean**

- "CLEANER INGREDIENTS"
- "HIGHER STANDARDS"

CLASS ACTION COMPLAINT - 84
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

- "ORGANIC 50 SUPERFOODS BLEND"
- "PERFECT FOR ANY LIFESTYLE"
- "No Soy Ingredients"
- "Gluten Free"
- "VEGAN"
- "Non-GMO"
- "PLANT-BASED PROTEIN"
- "USDA Organic"
- "Organic 50 Superfoods Blend"
- "No Dairy, Lactose, or Soy Ingredients"
- "No Added Sugar"
- "No Artificial Flavors, Preservatives, or Sweeteners"
- "Carrageenan Free"
- "#1 plant protein powder brand"
- "FEEL GOOD ENERGY"
- "Muscle Support & Recovery"
- "Supports Metabolism"
- "Helps Manage Hunger"
- "Promotes Healthy Weight Management"
- "Good Source of Fiber"
- "Quality Ingredients"
- "The Power of Clean"
- "what's on the inside [] matters most"
- "You can bet this organic protein powder packs good, clean nutrition"
- "master plan to give you good, clean fuel in every sip"
- "to help more people live vibrant lives through the power of good, clean nutrition"
- "Orgain: Clean Nutrition"
- "Good, Clean Nutrition"
- "Certified Plant Based"

**Orgain Organic Plant-Based Protein Powder Vanilla Bean**

- "CLEANER INGREDIENTS"
- "HIGHER STANDARDS"
- "USDA ORGANIC & CERTIFIED PLANT-BASED"
- "PERFECT FOR ANY LIFESTYLE"
- "VEGAN"
- "No Soy Ingredients"
- "Gluten Free"
- "Non-GMO"
- "PLANT-BASED PROTEIN"
- "USDA Organic"
- "Certified Organic"

CLASS ACTION COMPLAINT - 85
011394-12/5087587 V1

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

- "Non-GMO"
- "Gluten Free"
- "No Soy Ingredients"
- "No Dairy Ingredients"
- "No Artificial Preservatives, Sweeteners or Flavors"
- "#1 plant protein powder brand"
- "FEEL GOOD ENERGY"
- "Muscle Support & Recovery"
- "Supports Metabolism"
- "Helps Manage Hunger"
- "Promotes Healthy Weight Management"
- "Good Source of Fiber"
- "No Dairy, Lactose, or Soy Ingredients"
- "No Added Sugar"
- "No Artificial Flavors, Preservatives, or Sweeteners"
- "Carrageenan Free"
- "No Erythritol"
- "Quality Ingredients"
- "The Power of Clean"
- "You can bet this organic protein powder packs good, clean nutrition"
- "master plan to give you good, clean fuel in every sip"
- "Certified Plant Based"

**Orgain Organic Plant-Based Protein Powder Creamy Chocolate Fudge**

- "CLEANER INGREDIENTS"
- "HIGHER STANDARDS"
- "USDA ORGANIC & CERTIFIED PLANT-BASED"
- "PERFECT FOR ANY LIFESTYLE"
- "VEGAN"
- "No Soy Ingredients"
- "Gluten Free"
- "Non-GMO"
- "PLANT-BASED PROTEIN"
- "USDA Organic"
- "Certified Organic"
- "Non-GMO"
- "Gluten Free"
- "No Soy Ingredient"
- "No Dairy Ingredients"
- "No Artificial Preservatives, or Sweeteners or Flavors"
- "#1 plant protein powder brand"

CLASS ACTION COMPLAINT - 86
011394-12/5087587 V1

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

- "FEEL GOOD ENERGY"
- "Muscle Support & Recovery"
- "Supports Metabolism"
- "Helps Manage Hunger"
- "Promotes Healthy Weight Management"
- "Good Source of Fiber"
- "No Dairy, Lactose, or Soy Ingredients"
- "No Added Sugar"
- "No Artificial Flavors, Preservatives, or Sweeteners"
- "Carrageenan Free"
- "No Erythritol"
- "Quality Ingredients"
- "The Power of Clean"
- "You can bet this organic protein powder packs good, clean nutrition"
- "master plan to give you good, clean fuel in every sip"
- "Certified Plant Based"

CLASS ACTION COMPLAINT - 87
011394-12/5087587 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX