**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| DAWN CADA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 2:26-cv-02704<br><br>**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

A. The Scientific Consensus is There is No Safe Level of Heavy Metals That Bioaccumulate ....... 1

B. Amazon Deceived Consumers Based on the Misrepresentations, Partial Misrepresentations, Net Impression, and Omissions. ....... 6

C. Testing Confirms the Uniform Presence of Detectable Heavy Metals in the Contaminated Products ....... 8

II. JURISDICTION AND VENUE ....... 9

III. PARTIES ....... 11

IV. FACTUAL ALLEGATIONS ....... 18

A. The Contaminated Products ....... 18

B. Amazon Sells the Contaminated Products in Its Online Marketplace and Delivers These Products Directly to Consumers ....... 21

C. Amazon Controls and Creates Content for the Contaminated Products' Detail Pages which Make a Net Impression, including the Omissions, Misrepresentations and Partial Misrepresentations, that Contradict the Presence of Heavy Metals ....... 22

D. The Challenged Purity Statements and the Context in Which They Appear ....... 33

E. The Consumption of Heavy Metals Poses Real Health Risks ....... 39

F. Negative Health Effects of Arsenic ....... 40

G. Negative Health Effects of Cadmium ....... 43

H. Negative Health Effects of Lead ....... 45

I. The Contaminated Products Contain Levels of Heavy Metals that are Unhealthy and Unsafe at Any Level ....... 51

J. Amazon Actively Concealed the Truth About the Contaminated Products from Consumers ....... 57

K. Plaintiff and other Reasonable Consumers Paid a Price Premium and Did Not Receive the Benefit of the Bargain Based on the Misleading Marketing by Amazon ....... 59




HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

L. Protein Powder Products Sold by Amazon Can Be Manufactured Without Detectable Levels of Heavy Metals ........ 60

M. The Material Omissions and Misrepresentations Mislead and Deceive Reasonable Consumers ........ 63

N. Amazon's Knowledge and Duty to Disclose ........ 78

V. CLASS ACTION ALLEGATIONS ........ 84

VI. CLAIMS FOR RELIEF ........ 87

COUNT I VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, Wash. Rev. Code Ann. §19.86.010, *et seq.* ........ 87

COUNT II FRAUDULENT CONCEALMENT ........ 93

COUNT III FRAUDULENT MISREPRESENTATION ........ 98

PRAYER FOR RELIEF ........ 101

JURY DEMAND ........ 102



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Plaintiff Dawn Cada ("Plaintiff"), individually and on behalf of all others similarly situated, brings this First Amended Class Action Complaint against Defendant Amazon.com, Inc. ("Amazon" or "Defendant") for violations of the Washington Consumer Protection Act, Wash. Rev. Code Ann. ("RCW") §19.86.020, and the common law. Plaintiff alleges the following based upon personal knowledge as to allegations regarding herself, the investigation of her counsel, and on information and belief as to all other allegations.

## I. INTRODUCTION

1. Amazon sells Orgain Organic Protein Powder (the "Contaminated Products" or "Products")[1] on its platform. Amazon's "product detail pages" promise reasonable consumers "Higher Standards" and tout "what we left out," extol "The Power of Clean," and assure consumers that the Contaminated Products deliver "good, clean nutrition" and "good, clean fuel in every sip." Amazon knows that consumers trust the pages on its website and gaining customer trust is so central to Amazon's mission that its CEO once stated that "Americans trust Amazon" more than anyone but their "doctors and the military." Reasonable consumers would and did trust that those representations were true and not misleading. These representations, and the net impression created, tell consumers and convey that the Contaminated Products are pure and clean. They are not. The Contaminated Products are tainted with heavy metals, including lead, cadmium, and arsenic: substances that serve no beneficial function in the human body at any dose and for which the U.S. Food and Drug Administration and the World Health Organization have identified no safe level of exposure.

### A. The Scientific Consensus is There is No Safe Level of Heavy Metals That Bioaccumulate

2. Heavy metals are known to pose significant and adverse health risks and consequences to humans. The U.S. Food and Drug Administration ("FDA") states that "there is

[1] As used herein, the "Contaminated Products" collectively refers to Orgain Organic Protein + 50 Superfoods Powder in Creamy Chocolate Fudge, Orgain Organic Protein + 50 Superfoods Powder in Vanilla Bean, Orgain Organic Protein Powder in Vanilla Bean, and Orgain Organic Protein Powder in Creamy Chocolate Fudge. Discovery may reveal other products by Defendant that contain heavy metals. Plaintiff reserves her rights to amend and include such additional products and/or heavy metals in this action.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

no known safe level of exposure to lead,"[2] and the World Health Organization ("WHO") states that "[t]here is no level of exposure to lead that is known to be without harmful effects."[3] Amazon itself recognizes this:

**Figure 1:** Screenshot from Amazon's AI Alexa for Shopping, stating there is no safe level of lead.




3. The FDA has likewise stated that, for the heavy metals at issue: "***On the contrary, for the [heavy metals] we are discussing today, we have not identified safe levels of exposure for developmental outcomes***."[4] That there are no safe levels of human exposure to any of the heavy metals is also well recognized in the scientific community.[5]

---

[2] *Lead in Food and Foodwares*, FDA (Jan. 6, 2025), https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares (last accessed Nov. 20, 2026).

[3] *Lead Poisoning*, World Health Organization (June 10, 2026), https://who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed Nov. 20, 2026) ("*WHO: Lead Poisoning*").

[4] Transcript from Public Meeting, *Closer to Zero Action Plan: Impacts of Toxic Element Exposure and Nutrition at Different Crucial Developmental Stages for Babies and Young Children* (Nov. 18, 2021), https://www.fda.gov/media/155396/download at 32 (last accessed Nov. 20, 2026) ("*Closer to Zero Public Meeting Transcript*") (emphasis added).

[5] *Id.*; *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance* (March 2, 2023), at 5, https://www.fda.gov/media/166188/download (last accessed Nov. 20, 2026) ("Although we may not be able to say the reference level is a safe level, it is a level we could rely on as a benchmark to measure exposure to foods."); *see also* Kevin Loria, *Congressional Report Finds More Problems With Heavy Metals in Baby Food*, Consumer Reports (Sept. 29, 2021, updated Oct. 20, 2021), https://www.consumerreports.org/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/#:~:text=%E2%80%9CThere%20is%20no%20safe%20level,research%20and%20testing%20at%20CR (last accessed Nov. 20, 2026) ("*Consumer Reports: Heavy Metals in Baby Food*"); *see, e.g.*, *WHO: Lead Poisoning*, *supra* n.3.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

4. Exposure to heavy metals, including arsenic, cadmium, and lead, can cause negative health effects, such as various cancers, gastric and vascular disorders, liver, kidney, and brain damage, miscarriages, and reproductive disorders:[6]

5. Unlike nutrients or other substances that are beneficial at some doses and harmful only above a certain level, lead, cadmium, and arsenic have no beneficial function in the human body at any dose. They "do not have any known physiologic essential function in the body and there is no known safe level."[7] Because these metals provide no benefit at any level and no safe level of exposure has been identified, their presence in a product marketed for regular ingestion is material regardless of the quantity detected.

6. Heavy metals accumulate over time, resulting in latent health effects that cannot be mitigated and may appear years after exposure.[8] Critically, because of this, even very low-level exposure to heavy metals such as lead, cadmium, and arsenic on a regular basis can be hazardous.

**Figure 2:** Diagrams depicting harmful effects of heavy metals on the human body.[9]




[6] Anirban Goutam Mukherjee, et al., *Heavy Metal and Metalloid Contamination in Food and Emerging Technologies for Its Detection*, Sustainability (Jan. 9, 2023), at p. 4 & fig.1, https://www. mdpi.com/2071-1050/15/2/1195 (last accessed Nov. 20, 2026).

[7] *Closer to Zero Public Meeting Transcript*, *supra* n.4, at 72.

[8] *See, e.g.*, *What is the Biological Fate of Lead in the Body?*, Agency for Toxic Substances and Disease Registry ("ATSDR") (May 24, 2023), https://archive.cdc.gov/www_atsdr_cdc_gov/csem/leadtoxicity/biologic_fate.html ("The body accumulates lead over a lifetime and normally releases it very slowly.") (last accessed Nov. 20, 2026).

[9] Anirban Goutam Mukherjee, et al., *supra* n.6; *Arsenic - #1 King of Poisons*, InterClinical Laboratories (Nov. 1, 2022), https://interclinical.com.au/newsletter/arsenic-the-king-of-poisons/ (last accessed Nov. 20, 2026); S. Khomdram, et al., *Heavy Metal Toxicity in Human Beings*, E3S Web of Conferences (Apr. 2024), https://www.researchgate.net/publication/379682429_Heavy_Metal_Toxicity_in_Human_Beings (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

And here, the heavy metals in the Contaminated Products are ingested with every serving (from 10 to 20 per container, on average).

7. Amazon knew that bioaccumulation occurs with the heavy metals at issue here:

**Figure 3:** Screenshot of Amazon's AI Alexa for Shopping, stating heavy metals can accumulate in the body.

> Yes, many heavy metals bioaccumulate. This is general information, not professional advice.
>
> - **What it means:** Bioaccumulation happens when an organism takes in a substance faster than it can break it down or excrete it. The substance builds up in tissue over time.
> - **Metals that do this:** Mercury (especially methylmercury), lead, cadmium, and arsenic can all accumulate. Lead and cadmium tend to build up in bone, kidneys, or the liver.
> - **Biomagnification:** Some metals, methylmercury in particular, become more concentrated as they move up the food chain. This is why large predatory fish usually carry more mercury than smaller fish.
> - **Not all metals behave the same way.** Some essential metals, like iron and zinc, are regulated by the body. How much builds up depends on the metal, its chemical form, and the dose.

8. This is why the presence of heavy metals, which are substances with no beneficial function and no identified safe level of exposure, is material to reasonable consumers independent of the level or any regulatory benchmark. The acts of regulators and the market confirm this. California introduced legislation that would require testing and public disclosure of heavy metals in protein products, the Texas Attorney General has launched an industry-wide investigation into heavy metals in protein powders, and manufacturers seek third-party purity certification through programs such as the Clean Label Project's certification, which tests for heavy metals.[10]

---

[10] *California Senate Bill 1033*, https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202520260SB1033 (last accessed Nov. 20, 2026); The Attorney General of Texas, *Attorney General Ken Paxton Launches Industry-Wide Investigation into Protein Powder Manufacturers to Protect Texans from Heavy Metals, Including Lead and Cadmium, Found in Popular Protein Powders* (June 8, 2026), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-launches-industry-wide-investigation-protein-powder-manufacturers (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

9. Consumers themselves confirm that the presence of heavy metals matters. According to the International Food Information Council's ("IFIC") June 2026 Spotlight Survey, 74% of Americans are concerned about heavy metals in foods and beverages.[11]

**Figure 4:** Graph from IFIC Spotlight Survey.




10. Amazon itself recognizes that consumers care about heavy metals "for good reason" and that it "directly influences purchasing behavior":

**Figure 5:** Screenshot of Amazon's AI, Alexa for Shopping, stating the presence of heavy metals is material to consumers.




[11] *IFIC Spotlight Survey: Americans' Perceptions of Chemicals in Food & Packaging*, IFIC (June 2026), https://ific.org/wp-content/uploads/IFIC-June-Spotlight-Survey-Chemicals-in-Food-Packaging.pdf (last accessed Nov. 20, 2026) ("*IFIC Spotlight Survey*").


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

11. Amazon further ties the materiality of heavy metals to their ability to accumulate in the body over time, stating that "[d]amage can build up over years and may only show up after long exposure":

**Figure 6:** Screenshot of Amazon's AI, Alexa for Shopping, stating why consumers care about heavy metals.




**B. Amazon Deceived Consumers Based on the Misrepresentations, Partial Misrepresentations, Net Impression, and Omissions.**

12. Amazon directly sells the Contaminated Products to consumers on its platform and markets the Contaminated Products as pure and clean through the following representations (collectively, the "Misrepresentations"): The Misrepresentations include:

| Statements on Amazon's Point-of-Sale Webpages | + 50 Superfoods (Creamy Chocolate Fudge) | + 50 Superfoods (Vanilla Bean) | Protein Powder (Vanilla Bean) | Protein Powder (Creamy Chocolate Fudge) |
|---|---|---|---|---|
| "HIGHER STANDARDS" / "Higher Standards" | ✓ | ✓ | ✓ | ✓ |
| "what we left out" | ✓ | ✓ | - | - |
| "The Power of Clean" | ✓ | ✓ | ✓ | ✓ |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Statements on Amazon's Point-of-Sale Webpages | + 50 Superfoods (Creamy Chocolate Fudge) | + 50 Superfoods (Vanilla Bean) | Protein Powder (Vanilla Bean) | Protein Powder (Creamy Chocolate Fudge) |
|---|---|---|---|---|
| "You can bet this organic protein powder packs good, clean nutrition" | ✓ | ✓ | - | - |
| "master plan to give you good, clean fuel in every sip" | ✓ | ✓ | ✓ | ✓ |
| "good, clean nutrition" | ✓ | ✓ | ✓ | ✓ |
| "what's on the inside [] matters most" | ✓ | ✓ | - | - |
| "CLEANER INGREDIENTS" | ✓ | ✓ | ✓ | ✓ |
| "Quality Ingredients" | ✓ | ✓ | ✓ | ✓ |
| "uber clean ingredients" | ✓ | ✓ | ✓ | ✓ |

13. The Misrepresentations on the point-of-sale webpages for the Contaminated Products are each independently misleading and, when taken together with other statements, create the net impression that the Contaminated Products are pure, clean, and without detectable levels of heavy metals—an impression that is misleading and false.

14. These packaging and point-of-sale promises have the capacity to and do deceive reasonable consumers into believing that the Contaminated Products are pure, clean, and do not contain heavy metals.

15. Defendant fails to disclose the Contaminated Products contain heavy metals. Nowhere at Amazon's point-of-sale webpages (also referred to as "product detail pages") does it disclose to consumers that the Contaminated Products contain heavy metals, including lead, cadmium, and arsenic (collectively, the "Omissions").

16. Based on the messaging and net impression communicated by Defendant's point-of-sale webpages, including the material Misrepresentations, no reasonable consumer would expect the Contaminated Products to contain heavy metals, especially since they are marketed as


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

high quality, clean, pure, nutritious, and intended to be ingested. Furthermore, reasonable consumers, like Plaintiff, would consider the inclusion of heavy metals a material fact when considering what protein powder products to purchase.

17. Reasonable consumers, like Plaintiff, could not learn of the inclusion of heavy metals in the Contaminated Products unless Amazon included a proper disclosure. Identifying the presence of heavy metals requires expensive and sophisticated laboratory testing. Similarly, a reasonable consumer buying a low-cost everyday product is not expected to spend time researching and locating a non-conflicted laboratory for heavy metals testing when: (1) there is no disclosure that would tell a consumer that the product may contain heavy metals; (2) the testing would cost more than the product itself; (3) consumers cannot test the product before purchase; and (4) any testing would take days or weeks. Amazon may want to say this is the consumer's duty but it is Amazon's obligation based on its decision to use the Misrepresentations, partial misrepresentations, net impression, and Omissions.

### C. Testing Confirms the Uniform Presence of Detectable Heavy Metals in the Contaminated Products

18. Reporting by the Clean Label Project and Consumer Reports showed detectable levels of heavy metals, including lead, in protein powder products, including organic and plant-based protein powders such as the Contaminated Products.[12] In October 2025, Consumer Reports published a report that included test results for Orgain Organic Plant-Based Protein Powder in Vanilla Bean that showed detectable levels of lead (at 143% of Consumer Reports' level of concern for lead).[13]

19. Independent laboratory testing confirmed that lead, cadmium, and arsenic are present in each of the Contaminated Products tested, across both product lines and both flavors:

[12] *Nearly half of top-selling protein powders exceed safety thresholds for heavy metal contamination*, Clean Label Project (Jan. 9, 2025), https://cleanlabelproject.org/protein-study/ (last accessed Nov. 20, 2026) ("*Clean Label Project Protein Study*").

[13] Paris Martineau, *Protein powders and shakes contain high levels of lead*, Consumer Reports (Oct. 14, 2025, updated Jan. 8, 2026), https://www.consumerreports.org/lead/protein-powders-and-shakes-contain-high-levels-of-lead-a4206364640/ (last accessed Nov. 20, 2026) ("*Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead*").


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Product | Lead | Cadmium | Arsenic |
|---|---|---|---|
| Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | 37.1 ppb | 32.2 ppb | 17.3 ppb |
| Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | 18.2 ppb | 84.8 ppb | 15.2 ppb |
| Orgain Organic Protein Powder in Vanilla Bean | 13.2 ppb | 32.2 ppb | 18.8 ppb |
| Orgain Organic Protein Powder in Creamy Chocolate Fudge | 26 ppb | 87.9 ppb | 14.1 ppb |

20. Reasonable consumers must and do rely on Defendant to honestly and completely report what the Contaminated Products contain. And Defendant knows its customers trust the quality of the Contaminated Products it markets and sells and expect the Contaminated Products to conform to the packaging and advertising and be nutritious, clean, pure, and high quality with no risk of containing detectable levels of heavy metals.

21. Defendant intended for consumers to rely on the net impression, Misrepresentations, Omissions, and other deceptive conduct of the advertising and packaging in purchasing the Contaminated Products at a premium. Defendant's business practices—including the Misrepresentations—were deceptive, misleading, unfair, and/or false because, among other things, the Contaminated Products contained undisclosed toxic heavy metals.

22. Defendant also knows consumers will pay more (i.e., a premium) for products that they are led to believe are pure and free from detectable levels of heavy metals.

23. On behalf of a class of all purchasers of the Contaminated Products, Plaintiff brings claims that, by engaging in the conduct alleged in this complaint, Defendant has violated Washington state law and the common law.

## II. JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because: (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) minimal diversity exists because at least one member of the proposed class is a citizen of a state different from the Defendant; and (c) the proposed class consists of more than 100 members. Amazon sells the Contaminated Products from


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

coast to coast in the United States and, as such, Class Members are citizens of numerous diverse states outside of Washington. Any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

25. Plaintiff has Article III standing to bring this action. Plaintiff suffered a concrete and particularized injury-in-fact: she paid approximately $30 per container for approximately 21 containers of the Contaminated Products, products she would not have purchased at any price had Amazon disclosed the presence of heavy metals. Plaintiff's injuries are fairly traceable to Amazon's deceptive conduct because, absent the Misrepresentations, Omissions, and net impression, Plaintiff would not have purchased the Contaminated Products or would have purchased lower-priced alternatives with non-detectable levels of heavy metals. Plaintiff's injuries are redressable by a favorable judicial decision awarding damages and injunctive relief. Plaintiff has standing to seek injunctive relief because she would purchase the Contaminated Products again in the future if she could rely on Defendant's product detail pages, including the Contaminated Products' labeling, to confirm they do not contain heavy metals, but she currently cannot rely on Defendant's product detail pages, including the Contaminated Products' labeling, to make that determination.

26. The Western District of Washington has personal jurisdiction over Defendant Amazon.com, Inc. because it is headquartered in this District and conducts substantial business in this State and in this District through its headquarters and sale of products, including the Contaminated Products.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is headquartered and resides in this District. Venue is further appropriate in this District pursuant to the forum selection clause in Amazon's online "conditions of use," which are available when a consumer signs up for an Amazon account and makes purchases. The conditions provide that "[a]ny dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts."


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

28. Pursuant to RCW § 19.86.095, the Washington Attorney General shall be served with a copy of this Complaint contemporaneously with or shortly after its filing.

## III. PARTIES

29. Plaintiff Dawn Cada is, and at all relevant times was, a resident and citizen of the State of Florida. During the Class Period, Plaintiff purchased Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge and Vanilla Bean flavors and Orgain Organic Protein Powder in Creamy Chocolate Fudge from Amazon for her family, including her adult child with severe special needs. Plaintiff paid approximately $30 per container for the Contaminated Products, purchasing approximately 21 containers between approximately January 2023 and June 2026.

30. Prior to purchasing, Plaintiff saw and relied upon the point-of-sale webpages of the Contaminated Products and the representations communicated on Amazon's platform, including the claims that the Contaminated Products meet "Higher Standards," embody "The Power of Clean," provide "good, clean nutrition," and have "Cleaner Ingredients" and "Quality Ingredients." Each of the point-of-sale webpages included statements regarding the purity of the Contaminated Products.

31. Plaintiff Cada specifically read and relied on the following representations in deciding to purchase the products:

| Date Purchased from Amazon | Product | Misleading Statements Relied On |
|---|---|---|
| 1/5/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>"uber clean ingredients"<br>"good, clean nutrition" |



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Date Purchased from Amazon | Product | Misleading Statements Relied On |
|---|---|---|
| 2/12/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 5/6/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 6/7/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 6/21/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Date Purchased from Amazon | Product | Misleading Statements Relied On |
|---|---|---|
| 8/11/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 8/25/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 9/6/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 10/9/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Date Purchased from Amazon | Product | Misleading Statements Relied On |
|---|---|---|
| 10/10/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 12/2/2023 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 1/14/2024 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 2/13/2024 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Date Purchased from Amazon | Product | Misleading Statements Relied On |
|---|---|---|
| 10/16/2024 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 10/18/2024 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 6/28/2025 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 10/5/2025 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Date Purchased from Amazon | Product | Misleading Statements Relied On |
|---|---|---|
| 10/7/2025 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 12/28/2025 | Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 6/8/2026 | Orgain Organic Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |
| 6/24/2026 | Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | "HIGHER STANDARDS" / "Higher Standards"<br>"what we left out"<br>"The Power of Clean"<br>"You can bet this organic protein powder packs good, clean nutrition"<br>"what's on the inside [] matters most"<br>"CLEANER INGREDIENTS"<br>"Quality Ingredients"<br>“uber clean ingredients”<br>“good, clean nutrition” |

32. These specific representations were material to Plaintiff’s purchasing decisions because they conveyed that the Contaminated Products were pure and free from harmful


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

contaminants. During the time Plaintiff was purchasing and consuming the Contaminated Products, and as a result of the Misrepresentations, partial misrepresentations, Omissions, and net impression as a whole as detailed herein, Plaintiff was unaware the Contaminated Products contained or had a material risk of containing heavy metals. Plaintiff expected the Contaminated Products to be free from detectable levels of undisclosed heavy metals and would not have purchased the Contaminated Products or would have paid less for them if that information had been fully disclosed. Plaintiff did not get the benefit of the bargain because the Contaminated Products she purchased had less value because they were not pure as represented due to the undisclosed presence of heavy metals. Had Plaintiff known the Contaminated Products contained lead, cadmium, and arsenic, Plaintiff would not have purchased the Contaminated Products at all and certainly would not have paid a premium price. Plaintiff would, however, purchase the Contaminated Products again in the future, if she could be certain the Contaminated Products do not contain or have a material risk of containing harmful heavy metals.

33. Plaintiff suffered economic harm based on paying a premium price for the Contaminated Products. She believes the Contaminated Products are worth less because they are not pure as represented due to the undisclosed presence of heavy metals. Plaintiff suffered economic loss because she would not have spent the money on the Contaminated Products or paid a premium for these products that promised to be pure. Plaintiff did not receive the benefit of the bargain based on the misleading Misrepresentations, partial misrepresentations, Omissions, and net impression that promised a higher value to the products.

34. Defendant's unfair, unlawful, and deceptive conduct in marketing, advertising, and selling the Contaminated Products as described herein on its platform caused Plaintiff out-of-pocket loss. Defendant knew it does not disclose the presence of heavy metals at the point-of-sale. It also knew that Plaintiff could not independently check for the presence of heavy metals in the Contaminated Products before making her purchases but did not disclose those facts to Plaintiff. Plaintiff then purchased the Contaminated Products on the reasonable, but mistaken belief that the Contaminated Products were pure and did not contain detectable levels of heavy metals.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

35. Defendant Amazon.com, Inc. is a Delaware corporation with its principal executive offices located at 410 Terry Avenue North, Seattle, Washington 98109.

36. At all relevant times, Amazon was engaged in the trade and commerce of selling consumer goods, including dietary supplements and protein powder products, to the general public in Washington and nationwide. Amazon marketed and sold the Contaminated Products to consumers, including Plaintiff and Class Members, on its platform.

37. Amazon knowingly created, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive point-of-sale webpages for the Contaminated Products that did not disclose the presence of heavy metals, including cadmium, arsenic, and lead.

38. Plaintiff relied on the point-of-sale webpages, including the Misrepresentations, Omissions, and net impression as a whole, which were prepared, reviewed, and/or approved by Amazon and its agents at its headquarters in Seattle and disseminated by Amazon and its agents. The Misrepresentations, partial misrepresentations, Omissions, and net impression were material in that a reasonable consumer would consider them important when purchasing the Contaminated Products.

## IV. FACTUAL ALLEGATIONS

### A. The Contaminated Products

39. The Contaminated Products are plant-based protein powder products sold through Amazon's platform and at a minimum include:


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

a. Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge;

**Figure 7:** Image of Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge from Amazon.com.




b. Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean;

**Figure 8:** Image of Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean from Amazon.com.





HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

c. Orgain Organic Protein Powder in Creamy Chocolate Fudge; and

**Figure 9:** Image of Orgain Organic Protein Powder in Creamy Chocolate Fudge from Amazon.com.




d. Orgain Organic Protein Powder in Vanilla Bean.

**Figure 10:** Image of Orgain Organic Protein Powder in Vanilla Bean from Amazon.com.




40. Plaintiff and the Class Members were exposed to the Misrepresentations and Omissions on Defendant's point-of-sale webpages for the Contaminated Products, which included the Contaminated Products' packaging and other marketing.

41. The point-of-sale webpages for the Contaminated Products, including the packaging, do not contain any disclosure or warning regarding the presence of lead, cadmium,


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

arsenic, or other heavy metals. The point-of-sale webpages, including the packaging, prominently feature claims such as "clean nutrition," "The Power of Clean," "good, clean fuel," and "cleaner ingredients," which a reasonable consumer would associate with purity and the absence of harmful contaminants such as heavy metals.

## B. Amazon Sells the Contaminated Products in Its Online Marketplace and Delivers These Products Directly to Consumers

42. Amazon operates the largest online retail marketplace in the United States, which includes its website, applications for mobile devices, and voice-controlled devices that allow consumers to make purchases from Amazon ("Amazon's marketplace").

43. Amazon had more than $700 billion in revenue in 2025,[14] and more than 185 million Prime customers in the U.S.[15]

44. Amazon directly sells a wide range of consumer goods—approximately 12 million goods—to customers on its marketplace.[16] Some of these products are manufactured by third parties but sold to consumers by Amazon as a traditional first-party retailer.

45. Amazon sells the Contaminated Products directly to consumers as a first party. In other words, Amazon itself—not a third party—lists the Contaminated Products on Amazon's marketplace and sells, ships, and delivers them to consumers.

46. Sales on Amazon's marketplace make up 65-70% of all online marketplace sales in the United States and account for over 50% of all online retail sales revenue in the United States.[17] The vast majority of sales on Amazon's marketplace are of products that are either sold by Amazon as a first party or handled and shipped by Amazon via Fulfillment by Amazon.

---

[14] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, Statista (Feb. 10, 2026), https://www.statista.com/statistics/266282/annual-net-revenue-of-amazoncom/ (last accessed Nov. 20, 2026).

[15] David Curry. *Amazon Statistics*, Business of Apps (June 11, 2026), https://www.businessofapps.com/data/amazon-statistics/ (last accessed Nov. 20, 2026).

[16] *Amazon Statistics: Key Numbers and Fun Facts*, AMAZON SCOUT, https://amzscout.net/blog/amazon-statistics (last accessed Nov. 20, 2026).

[17] Jerrold Nadler and David N. Cicilline, *Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations*, SUBCOMMITTEE ON ANTITRUST, COMMERCIAL, AND ADMINISTRATIVE LAW OF THE COMMITTEE ON THE JUDICIARY OF THE HOUSE OF REPRESENTATIVES, Part I, 117th Congress, (released Oct. 2020, adopted Apr. 2021, published


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

### C. Amazon Controls and Creates Content for the Contaminated Products' Detail Pages which Make a Net Impression, including the Omissions, Misrepresentations and Partial Misrepresentations, that Contradict the Presence of Heavy Metals

47. Amazon controls the content for the point-of-sale webpages for products, including the Contaminated Products, sold to consumers on its platform. Amazon's own descriptions of the products are also available at the point-of-sale via "Alexa," Amazon's artificial intelligence shopping agent technology developed by Amazon. Amazon authored, edited, or adopted each statement present on the product detail pages or provided by Alexa, including the Misrepresentations, Partial Misrepresentations, and Omissions.

48. Amazon does not require the manufacturer of the Contaminated Products to test its products, including the Contaminated Products, for heavy metals or to include the results of such tests on the product detail pages.

49. Each of the Contaminated Products is sold on Amazon's website via a product detail page, or point-of-sale webpage. The point-of-sale webpage for each product includes the Omissions and Misrepresentations, in the form of product descriptions and pictures of the product packaging and ingredient panel and marketing, as well as statements from the manufacturer. The Misrepresentations and Omissions include but are not limited to those described below.

50. For example, the point-of-sale webpage for Orgain Organic Protein + 50 Superfoods Protein Powder (Creamy Chocolate Fudge) is set forth below:

---

July 2022), https://www.govinfo.gov/content/pkg/CPRT-117HPRT47832/pdf/CPRT-117HPRT47832.pdf, at 213 (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 11:** Screenshot from Amazon Product Detail Page for Orgain Organic Protein +50 Superfoods Protein Powder in Creamy Chocolate Fudge.




51. The Product Detail Page contains language touting the product as clean and made to high standards including the statements, "CLEANER INGREDIENTS," "HIGHER STANDARDS," "We believe it's what's on the inside that matters most, and that includes what we left out," and "ORGANIC 50 SUPERFOODS BLEND."


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 12:** Screenshot from Amazon Product Detail Page for Orgain Organic Protein +50 Superfoods Protein Powder in Creamy Chocolate Fudge.

**Top highlights**

✓ 21g plant protein plus 50 superfoods in every scoop

✓ Smooth, creamy texture without chalky aftertaste

✓ Only 1g sugar with prebiotic fiber for gut support

Summarized from product information

**About this item**

- CLEANER INGREDIENTS: 21g plant protein and 1g sugar per serving. Our protein blend consists of Organic pea, brown rice, and chia seeds, to provide a complete protein with all nine essential amino acids. It also features 9g of Prebiotic + fiber* for gut support and our 50 Superfoods Blend.
- HIGHER STANDARDS: We believe it's what's on the inside that matters most, and that includes what we left out. This product is USDA Organic, vegan, gluten-free, kosher, made without soy, and Non-GMO. You also won't find any carrageenan, lactose or dairy ingredients, artificial colors, flavors, sweeteners, or preservatives. We also use third parties to verify that we are certified USDA Organic and plant based.
- ORGANIC 50 SUPERFOODS BLEND: Each serving contains 50 organic superfoods like chia, tumeric, kale, flax, broccoli, spinach, quinoa, beet, acai and is an excellent source of Vitamin B6, Vitamin C and iron to support your immune system.
- CUSTOMIZE ANY WAY YOU WANT: You can mix this with any liquid like water, almond milk, oat milk, or blend it to create a delicious shake or smoothie for a quick breakfast or snack drink. For even more creative ways to use this, you can add it to your overnight oats, cookies, brownies, and other baked goods for a protein and energy boost.
- PERFECT FOR ANY LIFESTYLE: This protein powder is perfect for men and women alike, whether you're maintaining a healthy lifestyle, working out, looking to add more protein to your diet, following a diet regiment or an on the go meal replacement.
- WHAT TO EXPECT: Includes 1 (2.03 Lb) (20 Servings) ready to mix Orgain Organic Protein + 50 Superfoods Creamy Chocolate Fudge Protein Powder.

52. Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims emphasizing the product's "The Power of Clean" and "good, clean nutrition," "Quality Ingredients," "Higher Standards" and the manufacturer's belief that "it's what's on the inside that matters most" further stating "We thought it was about time protein cleaned up its act. Every gram here comes from hand-selected ingredients for maximum nutrition. It's all part of our master plan to give you good, clean fuel in every sip."


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 13:** Screenshots from Amazon Product Detail Page for Orgain Organic Protein +50 Superfoods Protein Powder in Creamy Chocolate Fudge.




53. The point-of-sale webpage for Orgain Organic Protein + 50 Superfoods Protein Powder (Vanilla Bean) is set forth below:

**Figure 14:** Screenshot from Amazon Product Detail Page for Orgain Organic Protein +50 Superfoods Powder in Vanilla Bean.





HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

54. The Product Detail Page contains language touting the product as clean and made to high standards including the statements, "CLEANER INGREDIENTS," "HIGHER STANDARDS," "We believe it's what's on the inside that matters most, and that includes what we left out," and "ORGANIC 50 SUPERFOODS BLEND":

**Figure 15:** Screenshot from Amazon Product Detail Page for Orgain Organic Protein +50 Superfoods Powder in Vanilla Bean.

**Top highlights**

- ✓ 21g protein keeps you full for hours
- ✓ 50 superfoods plus 8g fiber in every scoop
- ✓ Smooth, creamy texture without the grittiness

Summarized from product information

**About this item**

- CLEANER INGREDIENTS: 21g plant protein and 1g sugar per serving. Our protein blend consists of Organic pea, brown rice, and chia seeds, to provide a complete protein with all nine essential amino acids. It also features 8g of Prebiotic plus fiber for gut support and our 50 Superfoods Blend.
- HIGHER STANDARDS: We believe it's what's on the inside that matters most, and that includes what we left out. This product is USDA Organic, vegan, gluten-free, kosher, made without soy, and Non-GMO. You also won't find any carrageenan, lactose or dairy ingredients, artificial colors, flavors, sweeteners, or preservatives. We also use third parties to verify that we are certified USDA Organic and plant based.
- ORGANIC 50 SUPERFOODS BLEND: Each serving contains 50 organic superfoods like chia, tumeric, kale, flax, broccoli, spinach, quinoa, beet, acai and is an excellent source of Vitamin B6, Vitamin C and iron to support your immune system.
- CUSTOMIZE ANY WAY YOU WANT: You can mix this with any liquid like water, almond milk, oat milk, or blend it to create a delicious shake or smoothie for a quick breakfast or snack drink. For even more creative ways to use this, you can add it to your overnight oats, cookies, brownies, and other baked goods for a protein and energy boost.
- PERFECT FOR ANY LIFESTYLE: This protein powder is perfect for men and women alike, whether you're maintaining a healthy lifestyle, working out, looking to add more protein to your diet, following a diet regiment or an on the go meal replacement.
- WHAT TO EXPECT: Includes 1 (2.03 Lb) (20 Servings) ready to mix Orgain Organic Protein plus 50 Superfoods Vanilla Bean Protein Powder.

55. Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims emphasizing the product's "The Power of Clean" and "good, clean nutrition," "Quality Ingredients," "Higher Standards" and the manufacturer's belief that "it's what's on the inside that matters most" further stating "We thought it was about time protein


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

cleaned up its act. Every gram here comes from hand-selected ingredients for maximum nutrition. It's all part of our master plan to give you good, clean fuel in every sip."

**Figure 16:** Screenshots from Amazon Product Detail Page for Orgain Organic Protein +50 Superfoods Powder in Vanilla Bean.




56. The point-of-sale webpage for Orgain Organic Protein Powder (Vanilla Bean) is set forth below:



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 17:** Screenshot from Amazon Product Detail Page for Orgain Organic Protein Powder in Vanilla Bean.




57. The Product Detail Page contains language touting the product as clean and made to high standards including the statements, “CLEANER INGREDIENTS” and “HIGHER STANDARDS”:



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 18:** Screenshot from Amazon Product Detail Page for Orgain Organic Protein Powder in Vanilla Bean.


**Top highlights**

- 21g protein plus 6g prebiotic fiber per serving
- Blends smooth into any liquid without grittiness
- Works in smoothies, baking, oatmeal, and more

Summarized from product information

**About this item**

- CLEANER INGREDIENTS: 21g of Organic plant based protein and 1g sugar. Our protein blend contains Organic peas, brown rice & chia seeds with all 9 essential amino acids. Each serving has low net carbs and features 6g of prebiotic + fiber* for gut support.
- HIGHER STANDARDS: This product is vegan, contains no erythritol, gluten-free, kosher, made without soy ingredients & Non-GMO. You also won't find any carrageenan, lactose & dairy ingredients, artificial colors, flavors, sweeteners, or preservatives.
- USDA ORGANIC & CERTIFIED PLANT-BASED: To ensure we are delivering on high-quality products, we use third parties to verify that we are certified USDA Organic and plant based.
- CUSTOMIZE ANY WAY: You can mix this with any liquid like water, almond milk, oat milk, or blend it to create a delicious shake or smoothie. For even more creative ways you can add it to overnight oats and other baked goods for a protein and energy boost.
- PERFECT FOR ANY LIFESTYLE: This protein powder is perfect for men and women alike, whether you're maintaining a healthy lifestyle, working out, looking to add more protein to your diet, following a diet regimen or an on the go meal replacement.

58. Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims emphasizing the product's "The Power of Clean" and "good, clean nutrition," "Quality Ingredients," further stating "We thought it was about time protein cleaned up its act. Every gram here comes from hand-selected ingredients for maximum nutrition. It's all part of our master plan to give you good, clean fuel in every sip."

**Figure 19:** Screenshots from Amazon Product Detail Page for Orgain Organic Protein Powder in Vanilla Bean.








HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX







59. The point-of-sale webpage for Orgain Organic Protein Powder (Creamy Chocolate Fudge) is set forth below:

**Figure 20:** Screenshots from Amazon Product Detail Page for Orgain Organic Protein Powder in Creamy Chocolate Fudge.




60. The Product Detail Page contains language touting the product as clean and made to high standards including the statements, "CLEANER INGREDIENTS" and "HIGHER STANDARDS":


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 21:** Screenshots from Amazon Product Detail Page for Orgain Organic Protein Powder in Creamy Chocolate Fudge.

**Top highlights**

✓ 21g plant protein plus 6g prebiotic fiber per serving

✓ Zero added sugar, no artificial sweeteners or dairy ingredients

✓ Keeps you full for hours without bloating or digestive upset

Summarized from product information

**About this item**

- CLEANER INGREDIENTS: 21g of Organic plant based protein and 0g sugar*. Our protein blend contains Organic peas, brown rice & chia seeds with all 9 essential amino acids. Each serving has low net carbs and features 6g of prebiotic + fiber* for gut support.
- HIGHER STANDARDS: This product is vegan, contains no erythritol, gluten-free, kosher, made without soy ingredients & Non-GMO. You also won't find any carrageenan, lactose & dairy ingredients, artificial colors, flavors, sweeteners, or preservatives.
- USDA ORGANIC & CERTIFIED PLANT-BASED: To ensure we are delivering on high-quality products, we use third parties to verify that we are certified USDA Organic and plant based.
- CUSTOMIZE ANY WAY: You can mix this with any liquid like water, almond milk, oat milk, or blend it to create a delicious shake or smoothie. For even more creative ways you can add it to overnight oats and other baked goods for a protein and energy boost.
- PERFECT FOR ANY LIFESTYLE: This protein powder is perfect for men and women alike, whether you're maintaining a healthy lifestyle, working out, looking to add more protein to your diet, following a diet regimen or an on the go meal replacement.
- WHAT TO EXPECT: Includes 1 (2.03 Lb) (20 Servings) ready to mix Orgain Organic Creamy Chocolate Fudge Protein Powder. Each serving contains 150 Calories (2 Scoops).

61. Amazon also includes statements from the manufacturer on the point-of-sale webpage, including claims emphasizing the product's "The Power of Clean" and "good, clean nutrition," "Quality Ingredients," further stating "We thought it was about time protein cleaned up its act. Every gram here comes from hand-selected ingredients for maximum nutrition. It's all part of our master plan to give you good, clean fuel in every sip."


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 22:** Screenshots from Amazon Product Detail Page for Orgain Organic Protein Powder in Creamy Chocolate Fudge.




62. The content of the point-of-sale webpages for the Contaminated Products shows that Defendant knows the benefits and ingredients of a protein powder are material to consumers and that it fails to disclose to consumers the fact that the Contaminated Products contain heavy metals.

63. Amazon's point-of-sale webpages for the Contaminated Products described above contradict the presence of heavy metals in the Contaminated Products.

64. The point-of-sale webpages make no disclosure whatsoever regarding the presence of any heavy metals in the Contaminated Products. To the contrary, the Contaminated Products' point-of-sale webpages misleadingly and deceptively convey to reasonable consumers that the Contaminated Products are high quality, clean, and nutritious, and not contaminated with heavy metals.

65. When reasonable consumers view the point-of-sale webpages' net impression, including the Misrepresentations and Omissions, they would have no reason to suspect that the Contaminated Products contain or risk containing heavy metals. Foods that contain high levels of heavy metals are neither nutritious nor healthy.

66. Additionally, the Misrepresentations, net impression, and Omissions contradict Amazon's own guidelines prohibiting misleading claims:


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

> Amazon is committed to maintaining customer trust by ensuring that product listings are accurate, transparent, and compliant with applicable laws and regulations. Amazon requires that all product listings comply with regulatory standards that prohibit deceptive advertising, and international consumer protection laws that require all claims to be truthful and verifiable … This policy applies to claims on all product detail pages, including images, descriptions, packaging and marketing materials, across all categories.[18]

67. Amazon defines a misleading claim as one that "falsely advertises, or uses language that is not directly truthful, such as unsubstantiated representations about a product's features. Misleading claims are not necessarily false in their literal wording, but they could create a false impression or mislead a consumer . . . Amazon policy prohibits the sale of products that are misleading about the qualities or characteristics of the product."[19]

68. Amazon's own guidelines instruct sellers to avoid the very practices Amazon employs in marketing the Contaminated Products. Where the guidelines state that all claims must be truthful and not misleading, Amazon instead displays the Misrepresentations and Omissions, including "cleaner ingredients," "good, clean fuel," and "The Power of Clean," which are in fact misleading to consumers and create a false net impression as to the purity of the Contaminated Products. Amazon authored, adopted, or otherwise permitted, and displayed claims that do not meet Amazon's own rules.

**D. The Challenged Purity Statements and the Context in Which They Appear**

69. The statements Plaintiff challenges include the Misrepresentations: "Higher Standards" and "what we left out"; "The Power of Clean"; "good, clean nutrition," "good, clean fuel in every sip," and "what's on the inside [] matters most"; "Cleaner Ingredients"; and "Quality Ingredients."

---

[18] *Misleading and prohibited claims*, Amazon Seller Central, https://sellercentral.amazon.com/help/hub/reference/external/G202024200 (last accessed Nov. 20, 2026).

[19] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Statement on Amazon Product Detail Page | Products | Why It Is Misleading |
|---|---|---|
| "HIGHER STANDARDS" / "Higher Standards" | **All Products** | • Conveys that the Products meet elevated purity standards and that undesirable substances have been excluded; the product contains lead, cadmium, and arsenic.<br>• Consumers are misled because the Products actually contain toxic heavy metals, and Amazon fails to disclose that it does not test or require the manufacturer to test for heavy metals. |
| "The Power of Clean" | **All Products** | • Represents the Product as clean, i.e., free of contaminants, such as heavy metals.<br>• Clean implies that the Products are of superior quality and free from harmful contaminants, which is contradicted by the presence of heavy metals, which are ingested in every serving. |
| "master plan to give you good, clean fuel in every sip" | **All Products** | • Represents that every serving is "clean"; heavy metals are uniformly present across Products, lots, and flavors.<br>• Consumers are misled because the Products contain toxic heavy metals, so each sip delivers lead, cadmium, and arsenic, not "clean fuel." |
| "good, clean nutrition" | **All Products** | • Represents the Product as clean, i.e., free of contaminants, such as heavy metals.<br>• Clean implies that the Products are of superior quality and free from harmful contaminants, which is contradicted by the presence of heavy metals, which are ingested in every serving. |
| "CLEANER INGREDIENTS" | **All Products** | • Represents the ingredients as clean and purer than alternatives.<br>• Consumers are misled because the Products actually contain toxic heavy metals, including lead (up to 37.1 ppb) and cadmium (up to 87.9 ppb), for which there is no known safe level of exposure.<br>• The Products are not cleaner than alternatives: comparable, lower-priced protein powders have non-detectable or far lower levels of heavy metals. |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Statement on Amazon Product Detail Page | Products | Why It Is Misleading |
|---|---|---|
| "Quality Ingredients" | **All Products** | • Represents the ingredients as high quality; contaminated ingredients are not.<br>• Consumers are misled because the products actually contain toxic heavy metals, which have no known beneficial function and no known safe level of exposure. |
| "uber clean ingredients" | **All Products** | • Represents the ingredients as clean and purer than alternatives.<br>• Consumers are misled because the Products actually contain toxic heavy metals, including lead (up to 37.1 ppb) and cadmium (up to 87.9 ppb), for which there is no known safe level of exposure.<br>• The Products are not cleaner than alternatives: comparable, lower-priced protein powders have non-detectable or far lower levels of heavy metals. |
| "You can bet this organic protein powder packs good, clean nutrition" | **+ 50 Superfoods Creamy Chocolate Fudge; + 50 Superfoods Vanilla Bean** | • Affirmatively represents the nutrition as "clean"; heavy metals have no beneficial function at any dose.<br>• Consumers are misled because the Products actually contain toxic heavy metals, which are ingested in every serving and are neither good, clean, nor nutritious. |
| "what we left out" | **+ 50 Superfoods Creamy Chocolate Fudge; + 50 Superfoods Vanilla Bean** | • Tells consumers what has been excluded from the product, implying contaminants are absent.<br>• Consumers are misled because the Products actually contain toxic heavy metals. |
| "what's on the inside [] matters most" | **+ 50 Superfoods Creamy Chocolate Fudge; + 50 Superfoods Vanilla Bean** | • Directs consumers to the Products' contents while the ingredient listing omits heavy metals.<br>• This also implies that the contents of Products have been carefully selected, are of a superior quality, and are free from harmful contaminants, which is contradicted by the presence of heavy metals. |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

70. These statements speak directly to what is, and is not, inside the Contaminated Products. "Higher Standards" and "what we left out" tell consumers that undesirable substances have been excluded. "The Power of Clean" and "good, clean nutrition" tell consumers that the products are clean, that is, free of contaminants. "What's on the inside [] matters most" directs consumers to the product's contents. Each conveys that the Contaminated Products are pure.

71. The product detail pages also display the Contaminated Products' full ingredient listing. Presented alongside the Misrepresentations, that listing purports to be a complete account of what consumers will ingest: each protein source, superfood, and other ingredient is itemized, and the accompanying free-from claims tell consumers what has been excluded. A reasonable consumer who is told the product meets "Higher Standards," is told "what we left out," and then sees an itemized list of what is inside would understand that the listing, read together with those statements, describes the whole of the product and that it contains nothing else of concern. The undisclosed presence of lead, cadmium, and arsenic makes that impression false.

72. The functional claims (*e.g.*, "Feel Good Energy," "Muscle Support & Recovery," and "Supports Metabolism"), free-from and allergen claims (*e.g.*, "Non-GMO," "Gluten Free," "No Soy Ingredients," "No Added Sugar," and "USDA Organic"), and superlative claims (*e.g.*, "#1 plant protein powder brand") appear on the same pages as the Misrepresentations and reinforce the net impression that the Contaminated Products are clean and pure.

| **Claim** | **Product** | **Why Claim is Misleading and Has Capacity to Deceive** |
|---|---|---|
| "Feel Good Energy" | **All Products** | • This implies the Products promote health and well-being and supply energy without any harmful side effects.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals, and long-term exposure to arsenic can cause fatigue, and lead exposure can cause anemia, lethargy, and other symptoms that are the opposite of "feel good energy." |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Claim | Product | Why Claim is Misleading and Has Capacity to Deceive |
|---|---|---|
| "Muscle Support & Recovery" | **All Products** | • This implies the Products support the body's health and physical recovery and are safe for regular, repeated consumption.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals that accumulate in bones and soft tissue, and cadmium can cause bones to become fragile, undermining rather than supporting physical recovery. |
| "Supports Metabolism" | **All Products** | • This implies the Products support the body's health and are safe for regular, repeated consumption.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals that undermine the body's health by causing numerous health issues. |
| "Non-GMO" | **All Products** | • This creates the impression that the Products are free from unwanted substances.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals. |
| "Gluten Free" | **All Products** | • This creates the impression that the Products are free from unwanted substances.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals. |
| "No Soy Ingredients" | **All Products** | • This creates the impression that the Products are free from unwanted substances.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals. |
| "No Added Sugar" | **All Products** | • This creates the impression that the Products are free from unwanted substances.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals. |
| "USDA Organic" | **All Products** | • This creates an impression of government-backed purity and safety, implying the Products are free from harmful contaminants.<br>• This contributes to a misleading net impression because certified organic protein powders have tested on average at more than two times the heavy metal levels of non-organic products. |


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Claim | Product | Why Claim is Misleading and Has Capacity to Deceive |
|---|---|---|
| "#1 plant protein powder brand" | **All Products** | • This implies that these are superior, trusted Products, with superior quality ingredients that meet or exceed the standards of competing products.<br>• This contributes to a misleading net impression because the Products actually contain toxic heavy metals at levels far higher than competing protein powders, several of which have non-detectable levels of lead, cadmium, and arsenic. |

73. Based on these statements and the net impression created, no reasonable consumer could expect or understand that the Contaminated Products contained heavy metals. The statements are inconsistent with, if not directly contradictory to, the presence of heavy metals in the Contaminated Products.

74. Defendant knows reasonable consumers expect the Contaminated Products to be healthy and not have detectable levels of harmful heavy metals, including lead, cadmium, and arsenic. The representations above reinforce these reasonable expectations.

75. When reasonable consumers view the net impression communicated by the Contaminated Products' point-of-sale webpages and the packaging's net impression, Misrepresentations and Omissions, they would have no reason to suspect that the Contaminated Products contain or risk containing heavy metals. Foods that contain high levels of heavy metals are neither nutritious nor healthy.

76. Consumers like Plaintiff and the Class Members rely on Defendant to supply clean, pure, and nutritious products and to provide accurate and complete information about the contents of the Contaminated Products it sells.

77. Defendant had a duty to ensure the Contaminated Products were not deceptively, misleadingly, unfairly, or falsely marketed and that all material information was properly and fully disclosed, which it failed to do, including by its failure to sufficiently or adequately monitor or test for (or require the Contaminated Products' manufacturer to sufficiently or adequately monitor or test for) and disclose the presence (or material risk) of heavy metals in the Contaminated Products.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

78. As detailed below, the inclusion or material risk of elevated levels of lead, cadmium, and arsenic contradicts and impedes the central function of the Contaminated Products. Lead, cadmium, and arsenic provide no such benefits and instead pose health risks.

**E. The Consumption of Heavy Metals Poses Real Health Risks**

79. Heavy metals are neurotoxins, i.e., poisons that affect the nervous system.[20]

80. Exposure to heavy metals, even in small amounts, can lead to life-long effects. Heavy metals can remain in the human body for years and, as a result, can accumulate in the body, such as in the kidneys and other internal organs, increasing their risk to a person over time.[21]

81. Because heavy metals bioaccumulate in the body, even regular consumption of small amounts can increase the material risk of various health issues, including bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[22]

82. Exposure to heavy metals has also been shown to have long-lasting effects on cardiovascular toxicity, hypertension, arrhythmia, atherosclerosis,[23] as well as gastrointestinal and kidney dysfunction, nervous system disorders, skin lesions, vascular damage, immune system dysfunction, birth defects, and cancer.[24]

83. Government agencies and other experts, led by the FDA and the WHO, acknowledge that there are no known safe levels of heavy metals. The FDA states that "there is no

[20] *See*, *e.g.*, U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, at 2, Feb. 4, 2021, https://oversightdemocrats.house.gov/imo/media/doc/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed Nov. 20, 2026) ("*Congressional Committee Report*") ("The Food and Drug Administration and the World Health Organization have declared them dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.").

[21] *Consumer Reports: Heavy Metals in Baby Food*, *supra* n.5.

[22] *Id.*

[23] Pan Ziwei, et al., *Heavy Metal Exposure and Cardiovascular Disease*, Circulation Research (Apr. 26, 2024), https://www.ahajournals.org/doi/epub/10.1161/CIRCRESAHA.123.323617 (last accessed Nov. 20, 2026).

[24] Mahdi Balali-Mood, et al., *Toxic Mechanisms of Five Heavy Metals: Mercury, Lead, Chromium, Cadmium, and Arsenic*, Frontiers in Pharmacology (Apr. 12, 2021), https://www.frontiersin.org/journals/pharmacology/articles/10.3389/fphar.2021.643972/full (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

known safe level of exposure to lead," and the WHO states that "[t]here is no level of exposure to lead that is known to be without harmful effects."[25] Additional examples include:

- Conrad Choiniere, Director of the Office of Analytics and Outreach in the U.S. Food and Drug Administration's ("FDA") Center for Food Safety and Applied Nutrition: "However overall exposure adds up because many of the foods we eat contain these contaminants in small amounts. This is not to say that we should not be concerned. On the contrary, for the contaminants we are discussing today, we have not identified safe levels of exposure for developmental outcomes."[26]

- Dr. Aparna Bole, pediatrician speaking on behalf of the American Academy of Pediatrics ("AAP"): "There is no known safe level of exposure to these metals for children. Exposure to toxic elements has a disproportionate effect on infants and toddlers because their brains are rapidly developing, especially during their first 1,000 days."[27]

- Dr. Karagas, Professor and Chair of the Department of Epidemiology at the Geisel School of Medicine at Dartmouth College: "Arsenic, cadmium, mercury and lead, shown here, circled in these red circles, they do not have any known physiologic essential function in the body and there is no known safe level to our knowledge."[28]

84. Lead, cadmium, and arsenic are not nutrients. Unlike substances that serve a beneficial physiological function at some doses and become harmful only above a certain level, these metals have no beneficial function in the human body at any dose. Because they offer no benefit at any level and no safe level of exposure has been identified, their presence in a product marketed for regular ingestion is material regardless of the amount detected, and the materiality of their presence does not depend on whether any particular quantity exceeds a regulatory benchmark.

**F. Negative Health Effects of Arsenic**

85. There is no health benefit to the inclusion of arsenic in food products.

---

[25] *Lead in Food and Foodwares*, *supra* n.2; *WHO: Lead Poisoning*, *supra* n.3.

[26] *Closer to Zero Public Meeting Transcript*, *supra* n.4, at 32.

[27] *Id.* at 179.

[28] *Id.* at 72.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

86. Arsenic is toxic to humans, classified as a carcinogen, and is one of the World Health Organization's ("WHO") "10 chemicals of major public concern."[29]

87. Arsenic can cause cancer, as well as diabetes, atherosclerosis, and potentially cardiovascular disease when ingested chronically.[30]

88. Arsenic can affect multiple organs and systems, including the endocrine, immune, nervous, and respiratory systems; liver, kidney, and bladder; prostate glands; and skin.[31]

**Figure 23:** Diagram depicting harmful effects of arsenic on the human body.[32]




---

[29] *Arsenic*, World Health Organization (Dec. 7, 2022), https://www.who.int/news-room/fact-sheets/detail/arsenic (last accessed Nov. 20, 2026) ("*WHO: Arsenic*").

[30] J. Christopher States, et al., *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis,* PLOS ONE (June 15, 2012), 7(6): e38713, https://doi.org/10.1371/journal.pone.0038713 (last accessed Nov. 20, 2026).

[31] *Arsenic and Your Health*, National Institute of Environmental Health Sciences (Oct. 2023), at 3, http://www.niehs.nih.gov/sites/default/files/health/materials/arsenic_and_your_health_508.pdf (last accessed Nov. 20, 2026) ("*Arsenic and Your Health*").

[32] *Arsenic - #1 King of Poisons*, *supra* n.9.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

89. Chronic or long-term exposure to arsenic can cause skin disease and is also associated with skin, bladder, and lung cancer, as well as adverse pregnancy outcomes, infant mortality, diabetes, and cardiovascular disease.[33]

90. Even low-level exposure to arsenic can result in severe long-term health effects and increase the risk of other types of chronic disease.[34] Long-term exposure to lower levels of arsenic can also cause a shortage of red and white blood cells, which can lead to fatigue and an increased risk of infections.[35]

91. Further, "[t]here is no evidence that the harm caused by arsenic is reversible."[36]

92. Regulators have set limits for arsenic in certain products, including 10 parts per billion ("ppb") in drinking water (an EPA maximum contaminant level), apple juice (FDA), and bottled water (FDA, for inorganic arsenic). These limits are not determinations that exposure at or below those levels is safe. They are product-specific feasibility or action levels that reflect what is practically achievable for a particular product and trigger regulatory action.[37]

---

[33] *WHO: Arsenic*, *supra* n.29; Stephen J. Genuis, et al., *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE (Nov. 21, 2012), 7(11): e49676, https://doi.org/10.1371/journal.pone.0049676 (last accessed Nov. 20, 2026) ("*Toxic Element Contamination of Natural Health Products*") (chronic exposure to arsenic has also been associated with dermatological lesions and malignancies).

[34] *Arsenic and Your Health*, *supra* n.31, at 3.

[35] *Arsenic and Cancer Risk*, American Cancer Society (June 1, 2023), https://www.cancer.org/cancer/risk-prevention/chemicals/arsenic.html (last accessed Nov. 20, 2026).

[36] *What's in My Baby's Food?*, Healthy Babies Bright Futures (Oct. 2019), at 13, https://hbbf.org/sites/default/files/2022-12/BabyFoodReport_ENGLISH_R6_0.pdf (last accessed Nov. 20, 2026).

[37] *See* Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Nov. 22, 2026); *see also* 21 C.F.R. § 165.110(b)(4)(iii)(A) (1995).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**G. Negative Health Effects of Cadmium**

93. There is no known safe level of exposure to cadmium,[38] and cadmium has no known beneficial function in the human body.[39]

94. The U.S. Department of Health and Human Services ("HHS") and the International Agency for Research on Cancer ("IARC") have determined that cadmium and cadmium compounds are known human carcinogens, and the EPA has likewise determined that cadmium is a probable human carcinogen.[40]

95. Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequester[s] in [human] tissue."[41]

96. Cadmium exposure may be associated with prostate, bladder, pancreatic, kidney, and breast cancers; and the development of diseases related to the central nervous system including Alzheimer's, Parkinsonism and Parkinson's disease, Huntington's disease, amyotrophic lateral sclerosis, multiple sclerosis; and osteoporosis.[42]

---

[38] *See Closer to Zero Public Meeting Transcript*, *supra* n.4, at 72.

[39] *What Is the Biological Fate of Cadmium in the Body?*, ATSDR (May 23, 2023), https://archive.cdc.gov/www_atsdr_cdc_gov/csem/cadmium/Biological-Fate.html (last accessed Nov. 20, 2026).

[40] *See Public Health Statement for Cadmium*, ATSDR https://www.atsdr.cdc.gov/toxprofiles/tp5-c1-b.pdf (last accessed Nov. 20, 2026) ("*Public Health Statement for Cadmium*").

[41] *Toxic Element Contamination of Natural Health Products*, *supra* n.33.

[42] Angelika Edyta Charkiewicz, et al., *Cadmium Toxicity and Health Effects- A Brief Summary*. Molecules (Sept. 14, 2023); 28(18):6620, https://pmc.ncbi.nlm.nih.gov/articles/PMC10537762/ (last accessed Nov. 20, 2026) ("*Cadmium Toxicity and Health Effects*").


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 24:** Diagram depicting harmful effects of cadmium on the human body.[43]




97. Cadmium is also suspected to be mutagenic, meaning it can cause genetic mutation and can inhibit DNA repair and induce DNA strand breaks and chromosomal aberrations.[44]

98. Chronic exposure to even lower levels of cadmium can damage the kidneys, liver, and other parts of the body, and can cause bones to become fragile and easily break.[45] Long-term exposure to low levels of cadmium can also cause various diseases, such as cancer, leukemia, and genetic toxicity.[46]

99. Cadmium is particularly harmful to children and exposure in childhood is associated with decreases in cognitive ability, as well as the development of attention deficit hyperactivity disorder ("ADHD"). A 2018 study linked cadmium exposure to ADHD, finding that

---

[43] S. Khomdram, et al., *supra* n.9.

[44] *See, e.g.*, Yong Hwan Jin, et al., *Cadmium is a mutagen that acts by inhibiting mismatch repair,* National Library of Medicine (July 2003) https://pmc.ncbi.nlm.nih.gov/articles/PMC2662193/#:~:text=Cadmium%20is%20a%20mutagen%20that%20acts%20by%20inhibiting%20mismatch%20repair (last accessed Nov. 20, 2026).

[45] *Public Health Statement for Cadmium*, *supra* n.40; *see also Cadmium in Food and Foodwares*, FDA (Mar. 5, 2024), https://www.fda.gov/food/environmental-contaminants-food/cadmium-food-and-foodwares (last accessed Nov. 20, 2026).

[46] *Cadmium Toxicity and Health Effects*, *supra* n.42.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the disorder was more common among children with the highest levels of cadmium exposure as compared to a control group.[47]

100. Cadmium appears to affect cognitive development of children, particularly of boys, with studies showing that boys exhibiting higher amounts of cadmium exposure had seven fewer IQ points than those exhibiting less cadmium exposure.

101. Cadmium can also cross the placenta and the barrier to a fetus, resulting in teratogenic effects.[48] Human and animal epidemiological studies have shown cadmium exposure in pregnancy to be associated with significant reduction in birthweight and increased occurrence of stillbirth.[49]

102. Like lead, cadmium accumulates in the body with a long half-life of 6 to 38 years in the kidneys and 4 to 19 years in the liver.[50]

103. The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb (*see* 40 C.F.R. §141.62(b) (2004)); the FDA has set a level for bottled water of 5 ppb; and the WHO has set a cadmium guideline for drinking water of 3 ppb. Like the arsenic limits, these are product-specific feasibility or action levels, not findings that any level of cadmium exposure is safe.[51]

## H. Negative Health Effects of Lead

104. Lead is a highly toxic heavy metal, used in the production of batteries, ammunition, and metal products such as solder and pipes.[52]

---

[47] *See* Min-Jing Lee, et al., *Heavy Metals' Effect on Susceptibility to Attention-Deficit/ Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony*, Int'l Journal of Env't Research and Public Health, June 10, 2018, https://doi.org/10.3390/ijerph15061221 (last accessed Nov. 20, 2026).

[48] *Id.*

[49] *Evidence on Developmental and Reproductive Toxicity of Cadmium*, State of California Office of Environmental Health Hazard Assessment ("OEHHA") (Oct. 1996), https://oehha.ca.gov/sites/default/files/media/downloads/proposition-65/chemicals/cd-hid.pdf (last accessed Nov. 20, 2026).

[50] *What Is the Biological Fate of Cadmium in the Body?*, *supra* n.39.

[51] *See Congressional Committee Report*, *supra* n.20, at 29.

[52] *Lead – ToxFAQs*, ATSDR (Aug. 7, 2020), https://www.atsdr.cdc.gov/toxfaqs/tfacts13.pdf (last accessed Nov. 20, 2026) ("*ATSDR ToxFAQs for Lead*").


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

105. Lead is highly toxic to humans and has been identified as a carcinogen. The harmful effects of lead cannot be reversed or remediated due to its accumulation in the body over time.[53]

106. There is no health benefit to the inclusion of lead in food products.

107. Lead is an element, which means it does not break down.

108. Lead is universally identified as a probable human carcinogen by health agencies in the United States and worldwide. For example:

- HHS determined that lead was "reasonably anticipated to be a human carcinogen."
- The EPA classifies lead as a "probable human carcinogen."
- The IARC classifies lead as "probably carcinogenic to humans."

109. Lead is number one on the Agency for Toxic Substances and Disease Registry's ("ATSDR") list of substances present in the environment that pose the most significant potential threat to human health[54] and the WHO identifies lead as one of ten chemicals of major public health concern requiring action.[55]

110. Once lead enters the body, it is distributed to organs, including the brain, kidneys, and liver, and it accumulates and is stored in teeth and bones.[56]

111. Because lead accumulates in the body, even very low-level exposure can be hazardous over time. Lead is a cumulative toxin in bones and soft tissues, where it continues to disrupt critical biological functions long after exposure. The risk intensifies with repeated or prolonged exposure. As the Mayo Clinic warns, "Signs and symptoms usually don't appear until

---

[53] *See Congressional Committee Report*, *supra* n.20, at 11.

[54] *Substance Priority List*, ATSDR (April 13, 2026), https://www.atsdr.cdc.gov/programs/substance-priority-list.html (last accessed Nov. 20, 2026).

[55] *WHO: Lead Poisoning*, *supra* n.3.

[56] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the amount of lead detected in the blood has climbed to a dangerous level."[57] The CDC also states, "The effects of lead poisoning can be permanent and disabling."[58]

112. Because exposure to lead builds up in the human body over time, it can disrupt neurological, skeletal, reproductive, hematopoietic, renal, and cardiovascular systems.[59]

113. Even "[r]epeated low-level exposure [to lead] over a prolonged period" can result in clinical symptoms including "[p]ersistent vomiting, encephalopathy, lethargy, delirium and coma[.]"[60]

114. No amount of lead is safe for human consumption or exposure.[61]

115. Nearly 50 years ago, in 1978, the U.S. banned lead-based paint use in residential homes because of concerns over exposure risks to lead.[62] The use of lead as an additive to automobile gasoline was also banned in the United States.[63] This is notable given that paint and gasoline—unlike the Contaminated Products—are not intended to be consumed and put directly into the body or bloodstream.

---

[57] *Lead Poisoning*, Mayo Clinic (Dec. 24, 2025), https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717 (last accessed Nov. 20, 2026).

[58] *About Childhood Lead Poisoning Prevention*, CDC (Aug. 21, 2025), https://www.cdc.gov/lead-prevention/about/index.html (last accessed Nov. 20, 2026).

[59] M. Samuel Collin, M., *Bioaccumulation of Lead (Pb) and Its Effects on Human: A Review*, Journal of Hazardous Materials Advances (May 17, 2022), (7), https://doi.org/10.1016/j.hazadv.2022.100094 (last accessed Nov. 20, 2026).

[60] Taanvi Bhasin, et al., *Unveiling the Health Ramifications of Lead Poisoning: A Narrative Review*, Cureus (Oct. 9, 2023), 15(10), https://www.cureus.com/articles/184381-unveiling-the-health-ramifications-of-lead-poisoning-a-narrative-review#!/ (last accessed Nov. 20, 2026).

[61] *See, e.g.*, *Lead in Food and Foodwares*, *supra* n.2 ("Because there is no known safe level of exposure to lead, the FDA monitors and regulates levels of lead in foods."); *WHO: Lead poisoning*, *supra* n.3 ("There is no level of exposure to lead that is known to be without harmful effects."); *CDC Updates Blood Lead Reference Value*, CDC (Apr. 2, 2024), https://www.cdc.gov/lead-prevention/php/news-features/updates-blood-lead-reference-value.html (last accessed Nov. 20, 2026); *Lead Exposure in Children*, AAP (May 12, 2025), https://www.aap.org/en/patient-care/lead-exposure/lead-exposure-in-children/#:~:text=How%20Much%20Lead%20is%20Safe,Prevention%20recommends%20evaluation%20and%20intervention (last accessed Nov. 20, 2026); *see also Consumer Reports: Heavy Metals in Baby Food*, *supra* n.5.

[62] *About Lead in Paint*, CDC (March 26, 2025), https://www.cdc.gov/lead-prevention/prevention/paint.html (last accessed Nov. 20, 2026).

[63] *ATSDR ToxFAQs for Lead*, *supra* n.52.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

116. Lead can cause health problems in almost every organ and system in your body.[64] As examples, exposure to lead can cause damage to the kidneys, anemia (low iron in the blood), and increases in blood pressure. Long-term exposure to lead can also result in neuropathy and brain damage, along with cognitive deficits, such as decreased learning, memory, and attention.

**Figure 25:** Diagram depicting the toxic effects of lead.[65]




[64] *Learn About Lead*, EPA (May 28, 2026), https://www.epa.gov/lead/learn-about-lead (last accessed Nov. 20, 2026) ("Lead can harm almost every organ and system in your body."); *NTP Monograph: Health Effects of Low-Level Lead*, HHS, National Toxicology Program (June 2012), https://ntp.niehs.nih.gov/sites/default/files/ntp/ohat/lead/final/monographhealtheffectslowlevellead_newissn_508.pdf (last accessed Nov. 20, 2026); A. Spivey, *The Weight of Lead: Effects Add Up in Adults*, Environ. Health Perspectives (Jan. 2007), 115(1), at A30-A36, https://pmc.ncbi.nlm.nih.gov/articles/PMC1797860/ (last accessed Nov. 20, 2026).

[65] *Chemical Health and Safety*, World Health Organization, https://www.who.int/images/default-source/infographics/chemical-safety/toxic-effects-lead-who-logo.jpg?sfvrsn=ba1a04c1_8 (last accessed Nov. 22, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

117. Exposure to high lead levels can severely damage the brain and kidneys, damage male reproductive organs, and even cause death.[66]

118. Exposure to lead contributed to more than 3.5 million deaths globally in 2023.[67]

119. During pregnancy, lead can cause premature birth, lower birth weight, harm to the baby's brain, kidneys, and nervous system, and learning or behavior problems.[68] It can be transmitted from pregnant women to their babies during pregnancy.[69] This can result in "miscarriage, stillbirth, premature birth, and low birth weight infants."[70]

120. Lead is particularly dangerous to the health and well-being of small children, and early childhood exposure to lead is known to cause behavioral health problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth, as well as severe neurological effects. Lead exposure in children is linked to learning disabilities, behavioral difficulties, and lowered IQ. Additionally, lead exposure in early childhood is proven to have a strong inverse relationship with test scores, as well as lower reading and math scores in third-grade children.

---

[66] *ATSDR ToxFAQs for Lead*, *supra* n.52; *Update: Preventing Lead Poisoning from Geneva: Environmental and Health Impacts of Lead*, Geneva Environment Network (May 18, 2026), https://www.genevaenvironmentnetwork.org/resources/updates/lead-poisoning-prevention/ (last accessed Nov. 20, 2026).

[67] *WHO: Lead Poisoning*, *supra* n.3.

[68] *Risk Factors and Pregnancy*, CDC (March 13, 2025), https://www.cdc.gov/lead-prevention/risk-factors/pregnancy.html (last accessed Nov. 20, 2026).

[69] *Id.*

[70] Taanvi Bhasin, et al., *supra* n.60.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 26:** Diagram listing symptoms of lead poisoning.[71]




121. Lead levels in protein powders are not regulated, approved, reviewed, or tested by United States regulatory bodies. Regulators have set limits for lead in certain other products, such as the FDA's 5 ppb level for bottled water, the WHO's 10 ppb provisional guideline for drinking water, and the EPA's 15 ppb action level for lead in drinking water. None of these is a safety determination; the EPA itself acknowledges that "there is no known safe level of lead in a child's blood."[72]

122. Under the Lead and Copper Rule, the 15 ppb action level operates as a trigger: if more than 10 percent of tap water samples from a public water system exceed it, the system is required to take corrective action.[73] Similarly, the FDA's interim reference levels and its action

[71] Ravi Rao, *Lead vs. Lead-free Solder: Which is better for PCB manufacturing?*, Wevolver (Jan. 31, 2023), https://www.wevolver.com/article/lead-free-solder-vs-lead-solder (last accessed Nov. 22, 2026).

[72] *Basic Information About Lead in Drinking Water*, EPA (June 18, 2026), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water (last accessed Nov. 20, 2026).

[73] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

levels for lead in processed foods intended for babies and young children are benchmarks and enforcement tools, not safe levels.[74] As the FDA has explained, "we may not be able to say the reference level is a safe level."[75]

123. The FDA has also issued non-binding guidance for lead in certain juices (50 ppb) and candy (100 ppb), and the EU has set a maximum lead level in infant formula of 20 ppb. These, too, are product-specific action levels, not safety thresholds.

## I. The Contaminated Products Contain Levels of Heavy Metals that are Unhealthy and Unsafe at Any Level

124. While Defendant's marketing repeatedly communicates that the Contaminated Products are carefully and safely manufactured and clean, laboratory tests show that, in fact, Defendant sold Contaminated Products containing undisclosed lead levels as high as 37.1 ppb and cadmium levels as high as 87.9 ppb.

125. The Clean Label Project is a national nonprofit "on a mission to bring truth and transparency to food and consumer product labeling."[76]

126. In January 2025, the Clean Label Project published a report that showed 47% of 165 protein powder products tested exceed California's Proposition 65 limits for heavy metals.[77]

---

[74] *Action Levels for Lead in Processed Food Intended for Babies and Young Children: Guidance for Industry*, FDA (Jan. 2025), at 5, https://www.fda.gov/media/164684/download (last accessed Nov. 20, 2026).

[75] *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance, supra* n.5, at 5.

[76] *Know What's Really in Your Products*, Clean Label Project, https://cleanlabelproject.org/app/ (last accessed Nov. 20, 2026).

[77] *Clean Label Project Protein Study*, *supra* n.12. Clean Label Project states in the same paragraph that they tested 165 and 160 products ("Clean Label Project purchased and rigorously tested 165 of the top-selling protein powders . . . Clean Label Project amassed 35,862 data points from 70 brands and 160 products . . . "), but the list of products tested has 165 products. *See The Clean Label Project (CLP) performed a comprehensive analysis of the Protein Powder category that included the following 165 products*, Clean Label Project https://cleanlabelproject.org/protein-powder-v2-category-tested-products/ (last accessed Nov. 20, 2026).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

127. The Clean Label Project tested the Contaminated Products, none of which are included on its list of "clean sixteen" nor among the sixteen protein powders that are Clean Label Project Certified.[78]

128. The Clean Label Project collaborated with an analytical chemistry laboratory to test 165 of the top-selling protein powders.[79] It reported that 79% of organic protein powders and 77% of plant-based protein powders exceeded California's Proposition 65 warning benchmark for lead.[80] It also reported that 47% of the tested products exceeded federal or state benchmarks.[81] These benchmarks are not safe levels; the results show the widespread presence of heavy metals in organic and plant-based protein powders:

**Figure 27:** Infographic from The Clean Label Project breaking down lead testing of protein powders related to Prop 65 levels for lead.




[78] Products are tested for purity and chemicals of concern including heavy metals and compares the results to California's Proposition 65 list; if the product is found to comply, it qualifies for Clean Label Certification. Certification also requires ongoing compliance with unannounced sampling and testing. *Clean Label Project Certification*, Clean Label Project, https://cleanlabelproject.org/clean-label-project-certification/ (last accessed Nov. 20, 2026); *Clean Sixteen*, Clean Label Project, https://cleanlabelproject.org/wp-content/uploads/CLPSweet-16OneSheeter_061125.pdf (last accessed Nov. 20, 2026) ("*Clean Sixteen*").

[79] *Clean Label Project Protein Study*, *supra* n.12.

[80] *Id.*

[81] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

129. Consumer Reports "is an American nonprofit consumer organization dedicated to independent product testing, investigative journalism, consumer-oriented research, public education, and consumer advocacy."[82]

130. In October 2025, Consumer Reports published a report that showed more than two-thirds of the 23 protein products it tested exceeded its level of concern for lead.[83]

131. Consumer Reports further found that plant-based protein powders had lead levels nine times higher than dairy-based powders on average.

132. Consumer Reports tested the Orgain Organic Plant-Based Protein Powder in Vanilla Bean and found detectable levels of lead, at 143% of Consumer Reports' level of concern for lead:[84]

**Figure 28:** Consumer Reports lead test result analysis for Orgain Plant-Based Protein Powder in Vanilla Bean.




133. In introducing Consumer Reports' test results, the Report described the significant health risks for any human consumption of lead, explaining:

> While no amount of lead is technically safe, the greatest danger comes from repeated or continued exposure, particularly at high doses, says Rose Goldman, MD, an associate professor of medicine

---

[82] *Consumer Reports*, Wikipedia, https://en.wikipedia.org/wiki/Consumer_Reports (last accessed Nov. 20, 2026).

[83] *Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead*, *supra* n.13.

[84] *Id.*



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

> and physician at Cambridge Health Alliance in Medford, Mass. Children and pregnant people are most vulnerable because lead can damage the developing brain and nervous system, which has the potential to cause neurological issues, learning delays, and behavioral problems. But chronic lead exposure has also been linked to immune suppression, reproductive problems, kidney damage, and high blood pressure in adults.[85]

134. To conduct its testing, Consumer Reports:

> [P]urchased multiple samples of each product, including two to four distinct lots, over a three-month period beginning [November 2024]. CR bought the products anonymously from a variety of sources, including popular online retailers like Amazon and Walmart, and at supermarkets and health food stores in New York state, such as the Vitamin Shoppe and Whole Foods Market. Then CR tested samples from multiple lots of each product for total protein, arsenic, cadmium, lead, and other elements.[86]

135. To conduct its study, Consumer Reports analyzed two to three unique samples of the 23 products it tested, which were blind coded and sent to an independent, accredited laboratory for testing in accordance with the Association of Official Analytical Chemists ("AOAC") Method 2015.01. According to Consumer Reports, the "testing conformed to the quality control criteria and performance requirements set in cited official methods, as well as those in ISO 17025."[87]

136. Consumer Reports based its daily exposure limit for lead on the California Proposition 65 (the Safe Drinking Water and Toxic Enforcement Act of 1986) maximum allowable dose level ("MADL") for lead, which is 0.5 micrograms per day.[88]

---

[85] *Id.*

[86] *Id.*

[87] *Heavy Metals in Protein Supplements*, Consumer Reports (Oct. 2025), at 1 https://article.images.consumerreports.org/image/upload/v1761140939/prod/content/dam/CRO-Images-2025/Special%20Projects/Consumer-Reports-Protein-Powders-and-Shakes-Contain-High-Levels-of-Lead-Methodology-Test-Results-v2.pdf (last accessed Nov. 20, 2026) ("*Consumer Reports: Heavy Metals in Protein Supplements*").

[88] *See, generally*, *id.*; *see also About Proposition 65*, State of California Office of Environmental Health Hazard Assessment ("OEHHA"), https://oehha.ca.gov/proposition-65/about-proposition-65#:~:text=Proposition%2065%20requires%20businesses%20to,are%20released%20into%20the%20environment (last accessed Nov. 20, 2026); *Proposition 65 No Significant Risk Levels (NSRLs) and Maximum Allowable Dose Levels (MADLs)*, State of California OEHHA, https://oehha.ca.gov/proposition-65/general-info/proposition-65-no-significant-risk-levels-nsrls-and-maximum-allowable-dose-levels-madls (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

137. These findings were later confirmed by additional independent testing: Plaintiff's counsel tested the Contaminated Products, and the results confirmed the presence of detectable levels of heavy metals in the Contaminated Products:

| Product | Lead | Cadmium | Arsenic |
|---|---|---|---|
| Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean | 37.1 ppb | 32.2 ppb | 17.3 ppb |
| Orgain Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge | 18.2 ppb | 84.8 ppb | 15.2 ppb |
| Orgain Organic Protein Powder in Vanilla Bean | 13.2 ppb | 32.2 ppb | 18.8 ppb |
| Orgain Organic Protein Powder in Creamy Chocolate Fudge | 26 ppb | 87.9 ppb | 14.1 ppb |

138. The heavy metals in the Contaminated Products are ingested with every serving (each container includes 10 to 20 servings on average).

139. The laboratory results demonstrate that heavy metals are uniformly present in the Contaminated Products: heavy metals were detected across multiple product lots, multiple Amazon orders, both product lines, and both flavors. Cadmium was detected in every tested sample. Lead was detected in multiple samples across different lots and locations.

140. The FDA does not review, approve, or test protein powder supplements before they are sold to consumers. Unlike prescription drugs and medical devices, dietary supplements, including protein powders, are not subject to pre-market approval by the FDA. *See* 21 U.S.C. § 342(f)(1) (2005) (placing burden on FDA to prove adulteration after product reaches market). There are no federal regulatory limits for heavy metals in protein supplements or dietary supplements generally. The FDA has not established maximum allowable levels for lead, cadmium, or arsenic in protein powder products, nor has it issued any regulation requiring disclosure of heavy metal content on dietary supplement labels. This regulatory gap means that consumers must rely entirely on the manufacturer's and retailer's voluntary representations regarding product purity, representations that Amazon made through the Misrepresentations,


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

including "Higher Standards," "The Power of Clean," and "good, clean nutrition," while omitting the presence of toxic heavy metals.

141. The market treats the presence of heavy metals in protein powder as material. State legislators, state enforcement authorities, and the purity-certification market have each responded to the presence of heavy metals in protein powders because that information matters to consumers' purchasing decisions.

142. For example, in February 2026, California introduced Senate Bill 1033, which would require mandatory testing and public disclosure of heavy metals in protein products sold in the state.[89] The bill reflects a legislative judgment that consumers of protein products need information about heavy metal content to make informed purchasing decisions.

143. On June 8, 2026, the Texas Attorney General launched an industry-wide investigation into protein powder manufacturers, targeting potential violations of the Texas Deceptive Trade Practices Act related to undisclosed heavy metal contamination.[90] The investigation is premised on the understanding that undisclosed heavy metals in protein powder can deceive consumers, that is, that the information is material to their purchasing decisions.

144. The market for third-party purity certification confirms the same point. The Clean Label Project operates a certification program under which products are tested for heavy metals and other chemicals of concern, and certification requires ongoing compliance through unannounced sampling and testing.[91] Manufacturers seek this certification, and display it to consumers, because purchasers value assurance that the products they ingest are free of detectable levels of heavy metals. None of the Contaminated Products are Clean Label Project Certified.

145. Amazon's own AI, Alexa for Shopping, admits that heavy metals are "a real concern in protein powders," and acknowledges that the safest options include those that are Clean Label Project Certified.

---

[89] *California Senate Bill 1033*, *supra* n.10.

[90] *Attorney General Ken Paxton Launches Industry-Wide Investigation into Protein Powder Manufacturers to Protect Texans from Heavy Metals, Including Lead and Cadmium, Found in Popular Protein Powders*, *supra* n.10.

[91] *Clean Label Project Certification*, *supra* n.78.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 29:** Screenshot from Amazon's AI, Alexa for Shopping, stating heavy metals are a concern for protein powders.




### J. Amazon Actively Concealed the Truth About the Contaminated Products from Consumers

146. Amazon actively and knowingly concealed from and failed to disclose to consumers, including Plaintiff and the Class, that the Contaminated Products it sells to consumers contain or materially risk containing heavy metals, including lead, cadmium, and arsenic.

147. Amazon actively and knowingly concealed and failed to disclose material facts to Plaintiff and other consumers about the negative health effects of the Contaminated Products it sells.

148. The Misrepresentations and Omissions cannot be discovered by consumers before purchasing the Contaminated Products. Not only does identifying the presence of heavy metals require expensive and sophisticated laboratory testing, but such testing could not be conducted until *after purchase* of the Contaminated Products.

149. Accordingly, reasonable consumers, such as Plaintiff, cannot learn of the presence of heavy metals in the Contaminated Products unless Amazon includes a proper disclosure.

150. The cost of conducting heavy metals testing of the Contaminated Products by Amazon, a retailer with more than $700 billion in revenue in 2025,[92] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a

[92] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

consumable product at the point of sale. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

151. Therefore, Amazon has superior access to information regarding the presence of heavy metals in the Contaminated Products, which is not readily available to consumers. Defendant chose to not disclose such material information to consumers and thus actively concealed the presence of heavy metals in the Contaminated Products.

152. Further, while there has been limited, sporadic media coverage regarding the heavy metals in protein powders, none mentioned any of the specific products bought by Plaintiff.

153. Amazon knowingly and actively concealed the material facts from consumers because it knew consumers cared about the Contaminated Products' quality, ingredients, standards, and suitability for use, and if consumers were to learn the truth about Amazon's claims, it would negatively affect its finances.

154. Amazon knew or should have known of the negative health effects caused by exposure to heavy metals, yet knowingly and actively concealed the presence or material risk of heavy metals in the Contaminated Products.

155. Other manufacturers of protein products publish heavy metals test results for their products, including Ritual, Momentous, and Transparent Labs.[93]

156. The knowing and active concealment of these material facts renders the point-of-sale webpages for the Contaminated Products deceptive, misleading, and unfair because without full disclosure, reasonable consumers, including Plaintiff and the Class, believe the Contaminated Products to be of a certain quality and suitable for use when they are not.

---

[93] *See, e.g.*, Ritual, *Product Page for Daily Shake (vanilla)*, https://ritual.com/collections/all/products/essential-protein-daily-shake-18?variant=42291511951454 (last accessed Nov. 20, 2026); Momentous, *Product Page for 100% Plant Protein Powder*, https://www. livemomentous .com/products/100-plant-protein-powder (last accessed Nov. 20, 2026); Transparent Labs, *Product Page for Organic Vegan Plant-Based Protein*, https://www.transparentlabs.com/products/organic-vegan-protein-powder (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**K. Plaintiff and other Reasonable Consumers Paid a Price Premium and Did Not Receive the Benefit of the Bargain Based on the Misleading Marketing by Amazon**

157. The Misrepresentations, Omissions, and net impression created by the point-of-sale webpages caused Plaintiff and other reasonable consumers to suffer economic harm.

158. Amazon intended for the Misrepresentations, Omissions, and net impression to cause consumers like Plaintiff and other Class Members to purchase products at a premium price and to be part of the benefit of the bargain. Amazon was successful in this goal as Plaintiff and other reasonable consumers purchased products that they would not have if the Omissions were disclosed.

159. Plaintiff and the Class Members made purchases they would not have made or paid a premium price for the Contaminated Products they would not have paid and did not receive the benefit of the bargain had they known the truth based on Defendant's Omissions, Misrepresentations, partial misrepresentations, net impression, and other deceptive conduct regarding the presence or material risk of heavy metals in the Contaminated Products.

160. Defendant charged, and Plaintiff purchased, the Contaminated Products, paying a premium price, despite the availability of comparable, lesser-priced protein powder products sold by other retailers with materially lower levels of heavy metals.

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Orgain Organic Protein + 50 Superfoods Protein Powder (Vanilla Bean) | $1.06/oz | 37.1 | 17.3 | 32.2 |
| Orgain Organic Protein + 50 Superfoods Protein Powder (Creamy Chocolate Fudge) | $1.06/oz | 18.2 | 15.2 | 84.8 |
| Orgain Organic Protein Powder (Vanilla Bean) | $0.91/oz | 13.2 | 18.8 | 32.2 |
| Orgain Organic Protein Powder (Creamy Chocolate Fudge) | $0.91/oz | 26 | 14.1 | 87.9 |
| **Competitor Products** | **Price/oz** | **Lead (ppb)** | **Arsenic (ppb)** | **Cadmium (ppb)** |
| MuscleTech 100% Mass Gainer (Vanilla Milkshake)[94] | $0.42/oz | ND | 5.2 | ND |

[94] *Consumer Reports: Heavy Metals in Protein Supplements*, *supra* n.87.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Dymatize Super Mass Gainer (Gourmet Vanilla)[95] | $0.49/oz | 0.4 | 6.1 | ND |
| **Premier Protein 100% Whey (Vanilla Milkshake)[96]** | $0.65/oz | ND | ND | ND |
| Transparent Labs Mass Gainer (Vanilla)[97] | $0.78/oz | 2.2 | 2.7 | ND |
| BSN Syntha-6 Ultra Premium Protein Matrix (Vanilla Ice Cream)[98] | $0.96/oz | 4.8 | 4.3 | ND |

161. Further, Plaintiff and other reasonable consumers did not receive the benefit of the bargain because the Contaminated Products they purchased had less value as they were not high quality, clean, or nutritious as marketed and promised by Amazon.

162. The facts misrepresented, concealed, omitted, or not disclosed by Defendant were material such that reasonable consumers, including Plaintiff and the Class, would have considered them when deciding whether to purchase the Contaminated Products. Had Plaintiff known the truth, she would not have purchased the Contaminated Products or paid the premium price.

163. As a result of Amazon's scheme and deceptive, unfair, and misleading Misrepresentations, Omissions, partial misrepresentations, and net impression as a whole, Amazon was able to generate substantial sales, which allowed it to reap enormous profits from Plaintiff and similarly situated consumers who paid the purchase price or premium and did not receive the benefit of the bargain for the Contaminated Products that were not as advertised.

## L. Protein Powder Products Sold by Amazon Can Be Manufactured Without Detectable Levels of Heavy Metals

164. It is possible to manufacture protein powder products with non-detectable levels of heavy metals, including lead, cadmium, and arsenic.

---

[95] *Id.*

[96] *Clean Sixteen*, *supra* n.78.

[97] *Consumer Reports: Heavy Metals in Protein Supplements*, *supra* n.87.

[98] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

165. Of the 165 protein powders tested by the Clean Label Project for heavy metals, 16 had non-detect levels of arsenic, cadmium, lead, and mercury (the "Clean Sixteen").[99] Amazon sells seven products on the Clean Sixteen list:[100] Isopure Zero Carb Protein (unflavored); Premier Protein 100% Whey (vanilla milkshake); Body Fortress Super Advanced Whey Protein (vanilla); Garden of Life Certified Grass Fed Whey (vanilla); Optimum Nutrition Gold Standard 100% Whey (vanilla ice cream); Dymatize ISO 100 Hydrolyzed Protein Powder (gourmet vanilla); and Cellucor C4 Whey Protein (vanilla).

**Figure 30:** Infographic from The Clean Label Project, depicting the "Clean Sixteen" protein powders.[101]




166. In October 2025, Consumer Reports published heavy metals testing results for a number of protein powders and shakes for heavy metal contamination.[102] For example, Consumer

[99] *Clean Sixteen*, *supra* n.78.

[100] *Id.*

[101] *Id.*

[102] *Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead*, *supra* n.13.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Reports tested MuscleTech's 100% Mass Gainer Vanilla Milkshake product and found no detectable levels of lead or cadmium.[103]

167. Six additional products were categorized as "Better Choices for Daily Consumption," with less than 88% of Consumer Reports' level of concern for lead per serving and one product with no detectable level of lead.[104]

168. In January 2026, Consumer Reports published heavy metals test results for five additional products.[105] Four of the products, including one plant-based protein product, were categorized as "Better Choices for Daily Consumption," with 93% or less of Consumer Reports' level of concern for lead per serving and one product with no detectable level of lead.[106]

169. Additionally, Lead Safe Mama tested another protein powder with no detectable levels of heavy metals, including arsenic, cadmium, and lead.[107]

170. It is possible to manufacture *plant-based* protein powder products with non-detectable levels of heavy metals. For example, Ritual, a manufacturer of vegan, plant-based protein powders, published heavy metals test results that showed non-detectable levels of heavy metals in its raw plant protein products in dark chocolate, vanilla, and unflavored.[108]

---

[103] *Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead*, *supra* n.13.

[104] *Id.*

[105] Paris Martineau, *Readers Asked Us to Test These 5 Protein Powders. All Had Low Levels of Lead*, Consumer Reports (Jan. 8, 2026), https://www.consumerreports.org/health/food-safety/these-five-protein-powders-had-low-lead-levels-a1151050701/ (last accessed Nov. 20, 2026).

[106] *Id.*

[107] Lead Safe Mama, *Testing Simply Tera's Organic Whey Protein (Plain, Unsweetened) for Lead, Cadmium, Mercury, and Arsenic with Independent, Third-Party Laboratory Analysis* (Oct. 25, 2025, updated Oct. 29, 2025), https://tamararubin.com/2025/10/simply-teras-organic-whey-protein/ (last accessed Nov. 20, 2026).

[108] *See, e.g.*, Vivo Life lab results for Ritual: dark chocolate raw plant protein, vanilla raw plant protein, and unflavored raw plant protein https://www.goodfood.si/wp-content/uploads/2020/05/ritual-coa.pdf (last accessed Nov. 20, 2026); *see also Clean Sixteen*, *supra* n.78 (Ritual's Essential Protein Pregnancy & Postpartum was included in the Clean Label Project's Clean Sixteen list, meaning it had non-detectable levels of arsenic, cadmium, lead, and mercury).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## M. The Material Omissions and Misrepresentations Mislead and Deceive Reasonable Consumers

171. Amazon does not disclose anywhere on the product detail pages for the Contaminated Products (or anywhere else) that the Contaminated Products contain heavy metals. Those point-of-sale webpages list the ingredients of the Contaminated Products but omit any mention of heavy metals, including lead, cadmium, or arsenic.

172. The presence of heavy metals in the Contaminated Products is material to consumers.

173. Survey evidence confirms consumers care about the presence of heavy metals in products such as the Contaminated Products. According to the IFIC Spotlight Survey, 74% of Americans express concern about heavy metals, such as arsenic and lead, in foods and beverages, the second-highest-ranked concern among the chemicals surveyed.[109] A reasonable consumer would therefore consider the presence of lead, cadmium, and arsenic important in deciding whether to purchase a protein powder.

**Figure 31:** Graph from IFIC Spotlight Survey.[110]




[109] *IFIC Spotlight Survey*, *supra* n.11.

[110] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

174. Another survey, from The Pew Charitable Trusts, found that 78% of people were somewhat or very concerned about harmful chemicals in food:[111]

**Figure 32:** Graph from Pew Charitable Trusts.




175. Amazon's own AI, Alexa for Shopping, admits that the presence of heavy metals is material to consumers, stating that "consumers increasingly care about heavy metals," and acknowledges why consumers care about heavy metals:

[111] Jennifer McPartland, *Americans Are Concerned About Harmful Chemicals in Food, Water, and Everyday Products*, The Pew Charitable Trusts (Feb. 26, 2026), https://www.pew.org/en/research-and-analysis/articles/2026/02/26/americans-are-concerned-about-harmful-chemicals-in-food-water-and-everyday-products (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**Figure 33:** Screenshot of Amazon's AI, Alexa for Shopping, stating the presence of heavy metals is material to consumers.




**Figure 34:** Screenshot of Amazon's AI, Alexa for Shopping, stating why consumers care about heavy metals.




176. The Misrepresentations, Omissions, and net impression wrongfully cause reasonable consumers to believe the Contaminated Products do not contain heavy metals, when in fact they do contain heavy metals, including lead, cadmium, and/or arsenic.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

177. The Misrepresentations and Omissions cannot be discovered by consumers before purchasing the Contaminated Products. Not only does identifying the presence of heavy metals require expensive and sophisticated laboratory testing, but such testing could not be conducted until *after purchase* of the Contaminated Products.

178. Accordingly, reasonable consumers, such as Plaintiff, cannot learn of the presence of heavy metals in the Contaminated Products unless Amazon includes a proper disclosure.

179. The cost of conducting heavy metals testing of the Contaminated Products by Amazon, a retailer with more than $700 billion in revenue in 2025,[112] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a consumable product at the point of sale. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

180. Therefore, Amazon has superior access to information regarding the presence of heavy metals in the Contaminated Products, which is not readily available to consumers. Amazon chose to not disclose such information to consumers and thus actively concealed the presence of heavy metals in the Contaminated Products. Reasonable consumers must and do rely on Amazon to honestly report what the Contaminated Products it sells contain.

181. Because of Amazon's failure to disclose the presence or material risk of heavy metals at the Contaminated Products' point-of-sale, no reasonable consumer would expect, suspect, or understand that the Contaminated Products contained or had a material risk of containing heavy metals.

182. In light of Amazon's statements at the point-of-sale regarding the quality of the Contaminated Products, Amazon knew or should have known the Contaminated Products contained or had a material risk of containing heavy metals.

183. Plaintiff's claims do not depend on a free-standing duty to disclose. The Misrepresentations are affirmative statements about the purity of the Contaminated Products. A statement that is literally true in part but that conveys a false net impression, a half-truth, is itself

---

[112] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

an affirmative misrepresentation. By representing that the Contaminated Products meet "Higher Standards," touting "what we left out," promoting "The Power of Clean" and "good, clean nutrition," and presenting an ingredient listing as a complete account of what is inside, Amazon chose to speak about the purity of the Contaminated Products. Those statements are misleading because they convey that the Contaminated Products are pure when the products in fact contain lead, cadmium, and arsenic. The deception lies in what Amazon affirmatively said, not merely in what it failed to say.

184. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive point-of-sale webpages based on the material Misrepresentations, partial misrepresentations, Omissions, and net impression.

185. The Misrepresentations, partial misrepresentations, Omissions, and net impression communicated on Defendant's point-of-sale webpages for the Contaminated Products are material and reasonably likely to deceive reasonable consumers, such as Plaintiff, in their purchasing decisions.

186. The Misrepresentations, partial misrepresentations, Omissions, and net impression were intended to and did, in fact, cause consumers like Plaintiff and the other Class Members, to purchase products they would not have purchased if Defendant had disclosed that the Contaminated Products contained heavy metals, or for which they would not have paid a premium price, or any price at all.

187. As a result of the Misrepresentations, partial misrepresentations, Omissions, and net impression, Defendant generated substantial sales and profited from Plaintiff's lack of information about the presence of heavy metals in the Contaminated Products.

188. Plaintiff and other reasonable consumers would not have purchased the Contaminated Products or would have paid less for them but for the Misrepresentations, partial misrepresentations, Omissions, concealment, net impression, and other deceptive conduct.

189. The Contaminated Products' point-of-sale webpages misled and deceived reasonable consumers because Defendant omitted and/or misrepresented that the Contaminated


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Products contained or had a material risk of containing heavy metals, while representing the Contaminated Products' health benefits.

190. Based on Defendant's Misrepresentations, partial misrepresentations, and Omissions, and the net impression given by the point-of-sale webpages, no reasonable consumer could expect or understand the Contaminated Products contained or had a material risk of containing heavy metals such as cadmium and lead.

191. Amazon markets the Contaminated Products as "PERFECT FOR ANY LIFESTYLE," inviting use by every member of a household, including children. Plaintiff purchased the Contaminated Products for her family, including her child with severe special needs. A reasonable parent purchasing a protein powder marketed as clean nutrition for any lifestyle would consider the presence of lead, cadmium, and arsenic, substances with no beneficial function and no identified safe level of exposure, important to the decision whether to purchase.

192. Amazon's point-of-sale webpages for the Contaminated Products contradict the presence of heavy metals such as lead, cadmium, and arsenic; such communications include the following Misrepresentations, for example:

a. Organ Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean;

- "Good, clean nutrition"

good, clean nutrition

good, clean nutrition

Good, Clean Nutrition

- "Cleaner ingredients"

CLEANER INGREDIENTS

- "uber clean ingredients"

uber clean ingredients

- "Higher standards"

HIGHER STANDARDS



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

higher standards

Higher Standards

higher standards,

Higher Standards

- "what's on the inside [ ] matters most"

what's on the inside that matters most,

We believe it's what's on the inside that matters most, and that includes what we left out. Our blend is Organic, vegan,

- "what we left out"

what we left out.

We believe it's what's on the inside that matters most, and that includes what we left out. Our blend is Organic, vegan,

- "master plan to give you good, clean fuel in every sip"

our master plan to give you good, clean fuel in every sip.

- "Quality Ingredients"

Quality Ingredients

Quality Ingredients

- "You can bet this organic protein powder packs good, clean nutrition."

You can bet this organic protein powder packs good, clean nutrition.

- "The Power of Clean"

The Power of Clean



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

The Power of Clean

b. Organ Organic Protein + 50 Superfoods Protein Powder in Creamy Chocolate Fudge;

- "Good, clean nutrition"

good, clean nutrition

good, clean nutrition

Good, Clean Nutrition

- "Cleaner ingredients"

CLEANER INGREDIENTS

- "uber clean ingredients"

uber clean ingredients

- "Higher standards"

HIGHER STANDARDS

higher standards

Higher Standards

higher standards,

Higher Standards

- "what's on the inside [ ] matters most"

what's on the inside that matters most,

We believe it's what's on the inside that matters most, and that includes what we left out. Our blend is Organic, vegan,

- "what we left out"

what we left out.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

We believe it's what's on the inside that matters most, and that includes what we left out. Our blend is Organic, vegan,

- "master plan to give you good, clean fuel in every sip"

our master plan to give you good, clean fuel in every sip.

- "Quality Ingredients"

Quality Ingredients

Quality Ingredients

- "You can bet this organic protein powder packs good, clean nutrition."

You can bet this organic protein powder packs good, clean nutrition.

- "The Power of Clean"

The Power of Clean

The Power of Clean

c. Orgain Organic Protein Powder in Vanilla Bean; and

- "good, clean nutrition"

Good, Clean Nutrition

- "Cleaner ingredients"

CLEANER INGREDIENTS:

- "uber clean ingredients"

protein, but it's made with uber clean ingredients too! Packed with 21 grams of

- "Higher standards"

HIGHER STANDARDS:

- "master plan to give you good, clean fuel in every sip"


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

our master plan to give you good, clean fuel in every sip.

- "Quality Ingredients"

Quality Ingredients

Quality Ingredients

- "The Power of Clean"

The Power of Clean

The Power of Clean

d. Orgain Organic Protein Powder in Creamy Chocolate Fudge.

- "good, clean nutrition"

Good, Clean Nutrition

- "Cleaner ingredients"

CLEANER INGREDIENTS:

- "uber clean ingredients"

protein, but it's made with uber clean ingredients too! Packed with 21 grams of

- "Higher standards"

HIGHER STANDARDS:

- "master plan to give you good, clean fuel in every sip"

our master plan to give you good, clean fuel in every sip.

- "Quality Ingredients"

Quality Ingredients

Quality Ingredients


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

- "The Power of Clean"







193. The Omissions, Misrepresentations, and partial misrepresentations, along with the net impression, misleadingly convey to consumers that the Contaminated Products are of a high quality and have certain characteristics that they do not actually possess.

194. Defendant misleadingly causes consumers to believe the Contaminated Products it sells do not contain or have a material risk of containing heavy metals, including lead, cadmium, and arsenic, due to the material Omissions, Misrepresentations and partial misrepresentations, and net impression when in fact the Contaminated Products do contain or have a material risk of containing lead, cadmium, and/or arsenic.

195. Whether the Contaminated Products contain heavy metals is material information to reasonable consumers, including Plaintiff.

196. Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) heavy metals in the Contaminated Products.

197. Due to the point-of-sale webpages, Misrepresentations, partial misrepresentations, Omissions, and net impression, reasonable consumers, like Plaintiff, would not suspect the presence of heavy metals in the Contaminated Products.

198. Reasonable consumers, unlike Defendant, are not able to independently detect the presence of heavy metals in the Contaminated Products and are generally without the means to conduct their own scientific tests on the Contaminated Products.

199. The Omissions cannot be discovered by consumers before purchasing the Contaminated Products. Not only does identifying the presence of heavy metals require expensive and sophisticated laboratory testing, but such testing could not be conducted until *after purchase* of the Contaminated Products.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

200. Accordingly, reasonable consumers, such as Plaintiff, cannot learn of the presence of heavy metals in the Contaminated Products unless Defendant includes a proper disclosure.

201. The cost of conducting heavy metals testing of the Contaminated Products by Defendant, a retailer with more than $700 billion in revenue in 2025,[113] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a consumable product at the point of sale. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

202. Amazon could have disclosed the presence of heavy metals on the Contaminated Products' point-of-sale webpages. Its failure to do so renders the Misrepresentations, partial misrepresentations, and net impression misleading.

203. Moreover, Amazon has superior access to material information regarding the presence of heavy metals in the Contaminated Products, which is not available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of heavy metals in the Contaminated Products.

204. Based on the failure to disclose the presence (or material risk) of heavy metals on the Contaminated Products' point-of-sale, no reasonable consumer would expect, suspect, or understand that the Contaminated Products contained or had a material risk of containing heavy metals.

205. In light of Defendant's statements regarding the quality of the Contaminated Products on its point-of-sale webpages, Defendant knew or should have known the Contaminated Products contained or had a material risk of containing heavy metals—material information that was not disclosed at the point-of-sale.

206. Amazon has been on notice and thus knew or should have known about the problematic presence of heavy metals in organic and plant-based protein powders such as the Contaminated Products, and of its deceptive, misleading, and unfair conduct associated with

[113] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

selling the Contaminated Products to unsuspecting consumers without warning or disclosing the presence or risk of heavy metals by:

a. The Clean Label Project's January 2025 report that identified protein powder products it tested and found contaminated with heavy metals, including the Contaminated Products (specifically, Orgain Organic Protein +50 Superfoods in Creamy Chocolate Fudge and Vanilla Bean) and those with non-detectable levels of heavy metals.[114]

b. The October 2025 Consumer Reports article that identified Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean as a product "Okay to eat occasionally" with lead levels at 143% of its level of concern and a limit of 4 ¾ servings per week.[115]

c. In February 2026, California introduced Senate Bill 1033, which would require mandatory testing and public disclosure of heavy metals in protein products sold in the state.[116]

d. In June 2026, the Texas Attorney General launched an industry-wide investigation into protein powder manufacturers, targeting potential violations of the Texas Deceptive Trade Practices Act due to the undisclosed contamination of heavy metals.[117]

207. Defendant had a duty to ensure the Contaminated Products it sold were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

---

[114] *The Clean Label Project (CLP) performed a comprehensive analysis of the Protein Powder category that included the following 165 products*, *supra* n.77 (CLP tested Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean and Creamy Chocolate Fudge); *Clean Label Project Protein Study, supra* n.12; *Clean Sixteen*, *supra* n.78.

[115] *Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead, supra* n.13.

[116] *California Senate Bill 1033*, *supra* n.10.

[117] *Attorney General Ken Paxton Launches Industry-Wide Investigation into Protein Powder Manufacturers to Protect Texans from Heavy Metals, Including Lead and Cadmium, Found in Popular Protein Powders*, *supra* n.10.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

208. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive point-of-sale webpages based on the material Misrepresentations, partial misrepresentations, Omissions, and net impression.

209. Defendant knew or should have known that reasonable consumers, including Plaintiff, expected it to ensure the Contaminated Products it sold on its platform were sufficiently monitored and tested for heavy metals and to disclose the presence or risk of heavy metals in the Contaminated Products.

210. Further, Defendant knew or should have known that reasonable consumers paid higher prices, or paid any price at all, for the Contaminated Products and expected the Contaminated Products sold by Defendant to be sufficiently tested and monitored for the presence of heavy metals.

211. The Misrepresentations, partial misrepresentations, Omissions, and net impression were misleading due to Defendant's failure to ensure the Contaminated Products were sufficiently or adequately monitored or tested for heavy metals and to disclose the presence or material risk of heavy metals in the Contaminated Products.

212. The Misrepresentations, partial misrepresentations, Omissions, and net impression are material and render the Contaminated Products' point-of-sale webpages deceptive because without full disclosure, reasonable consumers, such as Plaintiff, believe the Contaminated Products do not contain or have a material risk of containing heavy metals.

213. Plaintiff and the Class Members made purchases they would not have made or paid a premium price for the Contaminated Products they would not have paid and did not receive the benefit of the bargain had they known the truth based on Defendant's active concealment, Omissions, Misrepresentations, partial misrepresentations, and net impression regarding the presence or material risk of heavy metals in the Contaminated Products.

214. Defendant charged, and Plaintiff purchased, the Contaminated Products, paying a premium price, despite the availability of comparable, lesser-priced protein powder products sold by other retailers with materially lower levels of heavy metals.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| The Contaminated Products | Price/oz | Lead (ppb) | Arsenic (ppb) | Cadmium (ppb) |
|---|---|---|---|---|
| Orgain Organic Protein + 50 Superfoods Protein Powder (Vanilla Bean) | $1.06/oz | 37.1 | 17.3 | 32.2 |
| Orgain Organic Protein + 50 Superfoods Protein Powder (Creamy Chocolate Fudge) | $1.06/oz | 18.2 | 15.2 | 84.8 |
| Orgain Organic Protein Powder (Vanilla Bean) | $0.91/oz | 13.2 | 18.8 | 32.2 |
| Orgain Organic Protein Powder (Creamy Chocolate Fudge) | $0.91/oz | 26 | 14.1 | 87.9 |
| **Competitor Products** | **Price/oz** | **Lead (ppb)** | **Arsenic (ppb)** | **Cadmium (ppb)** |
| MuscleTech 100% Mass Gainer (Vanilla)[118] | $0.42/oz | ND | 5.2 | ND |
| Dymatize Super Mass Gainer (Gourmet Vanilla)[119] | $0.49/oz | 0.4 | 6.1 | ND |
| **Premier Protein 100% Whey (Vanilla Milkshake)**[120] | $0.65/oz | ND | ND | ND |
| Transparent Labs Mass Gainer (Vanilla)[121] | $0.78/oz | 2.2 | 2.7 | ND |
| BSN Syntha-6 Ultra Premium Protein Matrix (Vanilla Ice Cream)[122] | $0.96/oz | 4.8 | 4.3 | ND |

215. Further, Plaintiff and other reasonable consumers did not receive the benefit of the bargain because the Contaminated Products they purchased had less value as they were not high quality, clean, or nutritious as marketed and promised by Amazon.

216. As a result of Defendant's deceptive, unfair, and misleading Misrepresentations, partial misrepresentations, Omissions, and net impression, it was able to generate substantial sales, which allowed it to reap enormous profits from Plaintiff and similarly situated consumers who paid the purchase price or premium for the Contaminated Products that were not as advertised.

---

[118] *Consumer Reports: Heavy Metals in Protein Supplements*, *supra* n.87.

[119] *Id.*

[120] *Clean Sixteen*, *supra* n.78.

[121] *Consumer Reports: Heavy Metals in Protein Supplements*, *supra* n.87.

[122] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

217. Plaintiff and other reasonable consumers would not have purchased the Contaminated Products or would have paid less for them but for the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions.

**N. Amazon's Knowledge and Duty to Disclose**

218. As a major national retailer with sophisticated supply-chain management and quality control processes, Amazon knew or should have known about the heavy metals in the products it sells, including the Contaminated Products.

219. Amazon has strict requirements for dietary supplements listed and sold on its platform, including that they must be tested for the presence of heavy metals.[123]

**Figure 35:** Testing requirements for products listed on Amazon.

**Testing**

Additionally, all dietary supplements intended for bodybuilding, joint health, sexual enhancement, sports nutrition, weight management:

- Must be tested for the presence of heavy metal and microbial contaminants. Based on a review of the finished product components, products may also be tested for pesticides in accordance with requirements outlined in NSF/ANSI 173-2024 or according to USP (United States Pharmacopeia) standards, such as <<2022>, 2021>, <561>, <62>
- Must contain dietary ingredients according to tolerances listed in 21 CFR 101.36 and 101.9(g)(3) & (g)(4).
- Must undergo testing for known adulterants outlined in NSF/ANSI 173-2024 5.3.5.1- 4

220. Given Amazon's requirement that "all dietary supplements . . . be tested for the presence of heavy metals,"[124] Amazon has been on notice and thus knew or should have known about the problematic presence of heavy metals in protein powders such as the Contaminated Products, and of its deceptive, misleading, and unfair conduct associated with selling the Contaminated Products to unsuspecting consumers without warning or disclosing the presence or risk of heavy metals by:

---

[123] *Dietary Supplements*, Amazon Seller Central, https://sellercentral.amazon.com/help/hub/reference/external/G55N3JF2WQS7RVNE (last accessed Nov. 20, 2026).

[124] *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

a. The Clean Label Project's January 2025 report that identified protein powder products it tested and found contaminated with heavy metals, including the Contaminated Products (specifically, Orgain Organic Protein +50 Superfoods in Creamy Chocolate Fudge and Vanilla Bean) and those with non-detectable levels of heavy metals.[125]

b. The October 2025 Consumer Reports article that identified Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean as a product "Okay to eat occasionally" with lead levels at 143% of its level of concern and a limit of 4 ¾ servings per week.[126]

c. In February 2026, California introduced Senate Bill 1033, which would require mandatory testing and public disclosure of heavy metals in protein products sold in the state.[127]

d. In June 2026, the Texas Attorney General launched an industry-wide investigation into protein powder manufacturers, targeting potential violations of the Texas Deceptive Trade Practices Act due to the undisclosed contamination of heavy metals.[128]

221. Despite this knowledge, or constructive knowledge, Amazon continued to sell the Contaminated Products without any warning or disclosure to consumers regarding the presence or material risk of heavy metals in the Contaminated Products.

222. Reasonable consumers are not able to independently detect the presence of heavy metals in the Contaminated Products and are generally without the means to conduct their own

---

[125] *The Clean Label Project (CLP) performed a comprehensive analysis of the Protein Powder category that included the following 165 products*, *supra* n.77 (CLP tested Orgain Organic Protein + 50 Superfoods Protein Powder in Vanilla Bean and Creamy Chocolate Fudge); *Clean Label Project Protein Study*, *supra* n.12; *Clean Sixteen*, *supra* n.78.

[126] *Consumer Reports: Protein Powders and Shakes Contain High Levels of Lead*, *supra* n.13.

[127] *California Senate Bill 1033*, *supra* n.10.

[128] *Attorney General Ken Paxton Launches Industry-Wide Investigation into Protein Powder Manufacturers to Protect Texans from Heavy Metals, Including Lead and Cadmium, Found in Popular Protein Powders*, *supra* n.10.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

scientific tests on the Contaminated Products. Not only does identifying the presence of heavy metals require expensive and sophisticated laboratory testing, but such testing could not be conducted until *after purchase* of the Contaminated Products.

223. The cost of conducting heavy metals testing of the Contaminated Products by Defendant, a retailer with more than $700 billion in revenue in 2025,[129] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a consumable product at the point of sale. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

224. Reasonable consumers, like Plaintiff, could not learn of the inclusion of heavy metals in the Contaminated Products unless Amazon includes a proper disclosure.

225. Based on the messaging and net impression communicated by Amazon's point-of-sale webpages, including the material Misrepresentations, partial misrepresentations, Omissions, active concealment, and other deceptive conduct, no reasonable consumer purchasing protein powder products would expect the Contaminated Products to contain heavy metals, especially since the Contaminated Products are marketed as high quality, clean, and nutritious, and intended to be ingested.

226. For example, the "USDA Organic" labeling is not challenged as independently false; it is context that reinforces the net purity impression. The "USDA Organic" certification addresses the use of synthetic pesticides, fertilizers, and genetically modified organisms, but does not test for or certify the absence of heavy metals such as lead, cadmium, and arsenic. A consumer who sees "USDA Organic" alongside the Misrepresentations is more, not less, likely to believe the product is pure.

227. Also, a reasonable consumer would not expect a protein powder marketed with "Higher Standards," "The Power of Clean," and as "good, clean nutrition" to contain lead, cadmium, and arsenic. The absence of any disclosure regarding heavy metal content, combined with the Misrepresentations, creates a deceptive net impression of purity.

[129] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

228. Independently, and in the alternative, Defendant had a duty to ensure the Contaminated Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

229. Amazon's failure to disclose the presence of heavy metals in the Contaminated Products was not the result of ignorance or inability. As one of the largest retailers in the world, with annual revenue exceeding $700 billion, Amazon has the resources and capability to test the products it sells on its platform for heavy metal contamination and to require disclosure from its vendors.

230. Specifically, Amazon knew or should have known of the heavy metal contamination for the following reasons: (a) the Clean Label Project's January 2025 report—which found that 79% of organic protein powders exceeded California's Proposition 65 limits for lead—was widely publicized in national media outlets and covered extensively on social media; (b) Consumer Reports' October 2025 investigation of protein powders, which specifically identified Orgain products as exceeding its level of concern for lead, was one of its most-read articles of the year; (c) as one of the world's most sophisticated retailers with dedicated quality assurance and product safety teams, Amazon actively monitors media coverage, regulatory developments, and consumer safety reports related to products it sells; (d) Amazon's requirement that all dietary supplements listed and sold on its platform be tested for the presence of heavy metals.

231. Plaintiff's claims are not preempted by federal law. Plaintiff does not allege that Amazon violated the Federal Food, Drug, and Cosmetic Act ("FDCA") or the Nutrition Labeling and Education Act ("NLEA"), nor does she seek to enforce any federal labeling requirement. Rather, Plaintiff brings her claim exclusively under the Washington Consumer Protection Act, which independently prohibits unfair or deceptive acts or practices in trade or commerce, as well as common law. Plaintiff's claims exist independently of any federal labeling requirement because they are based on Amazon's affirmative misrepresentations that the Contaminated Products meet "Higher Standards," embody "The Power of Clean," provide "good, clean nutrition," and have "Cleaner Ingredients" and "Quality Ingredients," claims that are deceptive under state law


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

regardless of any federal labeling obligation. Plaintiff does not seek to impose labeling requirements that are "in addition to" or "different from" those required by federal law. *See* 21 U.S.C. § 343-1(a) (2010). Instead, Plaintiff challenges Amazon's voluntary affirmative representations and omissions that deceive consumers about the actual purity of the Contaminated Products.

232. Amazon had a duty to disclose the presence of heavy metals in the Contaminated Products on three independent grounds:

- *Seller's knowledge*. As the seller of the Contaminated Products, Amazon had a duty to disclose the Omissions because they are material facts known to Amazon that consumers cannot discover prior to purchase.
- *Half-truths*. Amazon chose to speak about the purity of the Contaminated Products, including statements that the Products, *e.g.*, "good, clean nutrition"; "higher standards"; prominent display of "USDA organic" certification; "certified plant based" verification logo; "The Power of Clean"; and "uber clean ingredients." Having spoken on those subjects, Amazon had a duty to disclose the facts that support what it said, including the Omissions.
- *Special position of trust*. Amazon, as the host of the platform where the Contaminated Products are sold, is in a special position of trust upon which consumers rely. Amazon controls the format and content of the point-of-sale webpages for all of the Contaminated Products. Consumers cannot see, handle, or inspect products, including the Contaminated Products, before buying them on Amazon's platform, so consumers must rely on what Amazon chooses to show them, and Amazon knows they do and invites that reliance. In fact, Amazon purposefully acts to gain customer trust. One of the basic leadership principles at Amazon includes "[l]eaders . . . work vigorously to earn and keep


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

customer trust."[130] As CEO Jeff Bezos put it when testifying under oath before Congress: "Who do Americans trust more than Amazon to do the right thing? Only their doctors and the military."[131] Or as Amazon noted in a 2022 report, "Since opening our doors in 1995, trust has been at the foundation of everything we do."[132]

233. Plaintiff did not discover and could not have discovered through reasonable diligence the presence of heavy metals in the Contaminated Products because: (a) the FDA does not require testing or disclosure of heavy metals in protein supplements, leaving no publicly available regulatory data for consumers to review; (b) identifying the presence of heavy metals in food products requires sophisticated inductively coupled plasma mass spectrometry ("ICP-MS") laboratory equipment that is not available to consumers and costs hundreds of dollars per test; (c) consumers are unable to inspect or conduct their own heavy metals testing of the Contaminated Products until *after purchase*; and (d) Amazon actively concealed the contamination by marketing the Contaminated Products as meeting "Higher Standards," embodying "The Power of Clean," and providing "good, clean nutrition," with "Cleaner Ingredients" and "Quality Ingredients," while omitting any disclosure of heavy metal content, thereby affirmatively lulling consumers into a false sense of security. The statute of limitations was tolled by Defendant's fraudulent concealment of the heavy metal contamination and by the discovery rule, which delays accrual of a claim until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the claim.

---

[130] *Elements of Amazon's Day 1 Culture*, AWS, https://aws.amazon.com/executive-insights/content/how-amazon-defines-and-operationalizes-a-day-1-culture/ (last accessed Nov. 20, 2026).

[131] *Opening Statement to Congress on Amazon.com, Inc.*, Before the U.S. House of Representatives Committee on the Judiciary, Subcommittee on Antitrust, Commercial, and Administrative Law (July 29, 2020) (Statement by Jeffrey P. Bezos), https://www.americanrhetoric.com/speeches/jeffbezosamazonantitrustcongress.htm (last accessed Nov. 20, 2026).

[132] *Brand Protection Report*, Amazon, June 2022, https://assets.aboutamazon.com/68/b7/27c5eeee4121971b3d330fd6c16c/amazon-brand-protection-report-2022.pdf (last accessed Nov. 20, 2026).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## V. CLASS ACTION ALLEGATIONS

234. Plaintiff brings this action on behalf of herself and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> **Nationwide Class**: All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Contaminated Products from Amazon.com for household use and not for resale (the "Class").

235. Members of the Class are sometimes, where appropriate, referred to herein collectively as "Class Members."

236. Excluded from the Class are: (a) Defendant, its officers, directors, employees, agents, and affiliates; (b) the Judge(s) assigned to this case and their immediate family members; (c) any member of the Class who timely and validly opts out of the Class; and (d) any entity in which Defendant has a controlling interest.

237. **Numerosity (FRCP 23(a)(1)):** The Class consists of thousands, if not tens of thousands, of consumers. The Contaminated Products are regularly stocked items at Amazon's numerous warehouse locations and are sold through Amazon.com. Amazon is the largest online retailer in the United States, with more than 185 million Prime customers in the U.S. Given that the Contaminated Products are among Amazon's regularly stocked dietary supplement items, sold continuously throughout the Class Period online, the number of Class Members is necessarily large. The exact number of Class Members is readily ascertainable from Amazon's sales records, membership transaction data, and point-of-sale webpages, which track every purchase by member number. Joinder of all Class Members is impracticable due to the large number of geographically dispersed Class Members.

238. **Commonality (FRCP 23(a)(2)):** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions are capable of generating common answers that will drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The deceptive conduct at issue, namely Amazon's uniform affirmative representations that the Contaminated Products meet "Higher Standards," embody "The Power of Clean," provide "good, clean nutrition," and


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

have "Cleaner Ingredients" and "Quality Ingredients," while failing to disclose heavy metals in the Contaminated Products, was identical as to all Class Members. Whether such conduct constitutes an unfair or deceptive practice is answerable on a class-wide basis without reference to individual circumstances. Common questions include:

a. Whether Amazon engaged in unfair or deceptive acts or practices;

b. whether the Misrepresentations, partial misrepresentations, Omissions, and net impression created by the point-of-sale webpages as a whole were material to a reasonable consumer;

c. whether the Misrepresentations, partial misrepresentations, Omissions, and net impression created by the point-of-sale webpages as a whole were misleading;

d. whether Amazon had knowledge that the Misrepresentations, partial misrepresentations, Omissions, and net impression created by the point-of-sale webpages as a whole were material, false, deceptive, and misleading;

e. whether Amazon owed a duty to disclose;

f. whether Amazon knew or should have known that the Contaminated Products contained or may contain detectable levels of heavy metals, including lead, cadmium, and/or arsenic;

g. whether Amazon failed to disclose that the Contaminated Products contained or may contain detectable levels of heavy metals, including lead, cadmium, and/or arsenic;

h. whether Amazon had exclusive knowledge of the Omissions;

i. whether Plaintiff could have reasonably discovered the Omissions;

j. whether Amazon violated Washington state law;

k. Whether Amazon's conduct occurred in trade or commerce within the meaning of RCW §19.86.010(2);

l. Whether Amazon's conduct affects the public interest;



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

m. Whether Class Members suffered injury to their business or property;

n. Whether Amazon's conduct caused Class Members' injuries;

o. whether Plaintiff and the Class Members are entitled to actual, statutory, and punitive damages; and

p. whether Plaintiff and the Class Members are entitled to declaratory and injunctive relief.

239. These common questions are capable of generating common answers that will drive the resolution of the litigation. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

240. **Typicality (FRCP 23(a)(3)):** Plaintiff's claims are typical of the claims of the Class because they arise from the same course of conduct by Amazon—namely, the sale of Contaminated Products containing heavy metals without any warning or disclosure. Plaintiff and all Class Members were exposed to the same packaging, the same product webpage representations, and the same material omissions regarding heavy metal content. Plaintiff and all Class Members were subject to the same deceptive Misrepresentations and Omissions and suffered the same type of injury: economic loss from purchasing products they would not have purchased, or would have paid less for, had the contamination been disclosed. The claims do not require any individualized proof unique to the named Plaintiff—the same representations, the same omissions, and the same laboratory test results establish liability as to all Class Members. No defense unique to the named Plaintiff exists that would render her claims atypical.

241. **Adequacy (FRCP 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with, and are not antagonistic to, the interests of other Class Members. Plaintiff has retained counsel experienced in consumer protection and class action litigation who will adequately represent the interests of the Class.

242. **Predominance (FRCP 23(b)(3)):** Common questions of law and fact predominate over any questions affecting only individual Class Members. The central issues in this case—whether Amazon's sale of products with undisclosed heavy metals constitutes an unfair, misleading, and/or deceptive practice under Washington law, whether such conduct affects the


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

public interest, and the appropriate measure of damages—are common to all Class Members and can be resolved on a class-wide basis.

243. Individual issues, if any, do not predominate. Amazon's Misrepresentations and failure to disclose were uniform across all sales of the Contaminated Products. The materiality of the presence of lead, cadmium, and arsenic, substances with no beneficial function and no identified safe level of exposure, can be assessed on a class-wide basis under an objective "reasonable consumer" standard.

244. **Superiority (FRCP 23(b)(3)):** A class action is the superior method for the fair and efficient adjudication of this controversy. Individual Class Members' damages may be relatively small compared to the expense and burden of individual litigation, making it impractical for individual Class Members to seek redress on their own. A class action efficiently adjudicates the claims of all members in a single proceeding, avoids inconsistent adjudications, and conserves judicial resources.

245. Class treatment is manageable because Amazon's sales records, membership transaction data, and point-of-sale webpages will identify Class Members and their purchases, and the legal and factual issues are common to the Class.

246. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VI. CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, Wash. Rev. Code Ann. §19.86.010, *et seq*. (Against Defendant on Behalf of the Class)

247. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

248. Plaintiff brings this Count on behalf of all Class Members.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

249. Washington's Consumer Protection Act ("Washington CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" RCW §19.86.020.

250. Amazon's acts complained of herein are deceptive and unfair within the meaning of the Washington CPA. RCW §19.86.020.

251. Amazon committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of the Washington CPA. Wash. Rev. Code Ann. §19.86.010. Amazon's decision to offer the Contaminated Products for sale was made from its offices in Washington as was its approval of the material on Amazon's website that describes the Contaminated Products.

252. To establish a claim under the Washington CPA, a plaintiff must prove five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) injury to the plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

253. Amazon's deceptive and unfair practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop on its website.

254. Amazon's deceptive and unfair acts or practices, as alleged herein, injured Plaintiff and the Class in their business or property. Plaintiff and the Class paid a price premium for the Contaminated Products that were marketed as pure and clean but did not receive the benefit of the bargain. The Contaminated Products are objectively different from, and worth less than, what was represented by Amazon.

255. Amazon's deceptive conduct satisfies the public interest element of the Washington CPA because it involves a pattern of deceptive conduct occurring in the regular course of Amazon's business. Amazon is the largest online retailer in the United States, with 185 million


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Prime customers in the U.S. The Contaminated Products are among the top-selling protein powders on Amazon's platform.

256. Amazon's deceptive practice—marketing the Contaminated Products as clean, safe, and high quality while omitting the presence of toxic heavy metals—has the capacity to affect millions of consumers who purchase protein powder on the platform. This is not a private dispute between individual parties but involves a pattern of conduct in trade or commerce affecting the general consuming public. Per se public interest exists where, as here, the deceptive practice occurs in the regular course of the seller's business and is part of a pattern or generalized course of conduct.

257. Amazon's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, net impression, and other deceptive conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Amazon's business and were capable of deceiving a substantial portion of the consuming public.

258. The cumulative effect of the marketing on the packaging of the Contaminated Products and on their point-of-sale webpages creates the net impression the Contaminated Products are clean and pure—an impression that is inconsistent with the presence of heavy metals through communications such as:

a. "good, clean nutrition";

b. "higher standards";

c. prominent display of "USDA organic" certification;

d. "certified plant based" verification logo;

e. "The Power of Clean"; and

f. "uber clean ingredients."

259. Amazon's Misrepresentations are actionable as affirmative misrepresentations under the Washington CPA. Each is a half-truth: by representing that the Contaminated Products meet "Higher Standards," touting "what we left out," and promoting "The Power of Clean" and


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

"good, clean nutrition," alongside an ingredient listing presented as complete, Amazon conveyed a net impression of purity that is false because the Contaminated Products contain lead, cadmium, and arsenic. This theory does not depend on any duty to disclose: a representation that has the capacity to deceive is unfair or deceptive under the Washington CPA regardless of whether the speaker otherwise owed a duty to disclose.

260. Amazon's acts or practices are also deceptive because of the net impression created by the point-of-sale webpages as a whole. Whether a claim is deceptive depends on the net impression of the advertisement, label, or other promotional material at issue. Amazon includes numerous cues such as "good, clean nutrition"; "higher standards"; prominent display of "USDA organic" certification; "certified plant based" verification logo; "The Power of Clean"; and "uber clean ingredients." Taken together, these cues convey the net impression that the Contaminated Products are pure and do not contain detectable levels of heavy metals. That net impression is deceptive even if an individual statement could be read as literally true, because Amazon cannot substantiate it and omits the material facts that contradict it, including the Omissions.

261. The facts concealed or not disclosed or misrepresented by Amazon were material facts in that Plaintiff and the Class, and other reasonable consumers, would have considered them in deciding whether to purchase the Contaminated Products.

262. Amazon alone possessed the information that was material to Plaintiff and the Class and failed to disclose such material information to consumers.

263. Reasonable consumers, unlike Defendant, are not able to independently detect the presence of heavy metals in the Contaminated Products and are generally without the means to conduct their own scientific tests on the Contaminated Products.

264. The Omissions cannot be discovered by consumers before purchasing the Contaminated Products. Not only does identifying the presence of heavy metals require expensive and sophisticated laboratory testing, but such testing could not be conducted until *after purchase* of the Contaminated Products.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

265. Accordingly, reasonable consumers, such as Plaintiff, cannot learn of the presence of heavy metals in the Contaminated Products unless Defendant includes a proper disclosure.

266. The cost of conducting heavy metals testing of the Contaminated Products by Defendant, a retailer with more than $700 billion in revenue in 2025,[133] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a consumable product at the point of sale. But Amazon failed to perform or require any heavy metal testing, or to disclose the presence of heavy metals.

267. Amazon intended for Plaintiff and the Class Members to rely on the Misrepresentations and partial misrepresentations, Omissions, active concealment, net impression, and other deceptive conduct regarding the Contaminated Products' quality, ingredients, standards, and suitability for use when purchasing the Contaminated Products, unaware of the undisclosed material facts.

268. Plaintiff and the Class Members did in fact rely on the material misrepresentations and partial misrepresentations, including the Misrepresentations, and Omissions, and net impression and purchased the Contaminated Products to their detriment. Given the materiality of the Omissions, Plaintiff's and the Class's reliance on the misrepresentations, partial misrepresentations, Omissions, and net impression was justifiable.

269. All of these acts or practices cause substantial injury. Plaintiff and the Class paid a premium for products that had lower value based on the misleading and deceptive advertising on Amazon's point-of-sale webpages. Plaintiff did not receive the benefit of the bargain as the Contaminated Products were not pure due to the presence of heavy metals.

270. If not for Amazon's deceptive and unfair conduct, Plaintiff and the Class would not have purchased the Contaminated Products or would not have purchased the Contaminated Products at the prices they paid. No consumer received the benefit of the bargain because the Contaminated Products had less value as they contained heavy metals.

[133] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

271. Had Plaintiff and the Class Members known the Contaminated Products did not have the quality, ingredients, standards, and suitability for use as advertised by Amazon and contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic, they would not have purchased the Contaminated Products or paid a premium price.

272. Amazon charged, and Plaintiff and the Class Members paid, a premium price for the Contaminated Products despite the availability of other protein powder products with non-detectable levels of heavy metals.

273. The misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct caused Plaintiff and the Class Members to suffer injury in the form of actual damages when they purchased the Contaminated Products that were worth less than the price paid and that they would not have purchased at all had they known the Contaminated Products contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic.

274. Plaintiff and the Class Members have been harmed, and that harm will continue unless Amazon is enjoined from further omitting the true quality, ingredients, standards, and suitability for use of the Contaminated Products.

275. As a direct and proximate result of Amazon's conduct, Plaintiff and the Class suffered quantifiable economic injury to their business or property by: (1) paying a premium price for the Contaminated Products they reasonably believed did not contain or have a material risk of containing heavy metals, including lead, cadmium, and/or arsenic; (2) not receiving the benefit of the bargain because the Contaminated Products contained heavy metals; (3) purchasing the Contaminated Products they would not have purchased without Defendant's Misrepresentations and partial misrepresentations, Omissions, active concealment, net impression, and other deceptive conduct created by the point-of-sale webpages as a whole at the prices they paid; and/or (4) receiving the Contaminated Products that were worth less than the price paid because they contained heavy metals, rendering the Contaminated Products less valuable than represented. This injury constitutes a tangible, quantifiable economic loss—not merely "dashed expectations"—


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

sufficient to satisfy the Washington CPA's requirement of injury to "business or property" under RCW §19.86.090.

276. The price premium paid by Plaintiff and the Class is quantifiable and measurable. The difference between the price paid and the value received—given the undisclosed presence of toxic heavy metals—constitutes a concrete, measurable financial loss that can be calculated on a per-unit and per-Class-Member basis using Amazon's sales records.

277. Amazon is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under RCW §19.86.090.

## COUNT II

### FRAUDULENT CONCEALMENT
### (Based on Washington Law
### Against Defendant on Behalf of the Class)

278. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

279. Plaintiff brings this Count on behalf of all Class members as a Nationwide class under Washington law.

280. Defendant, as a seller of the Contaminated Products to Plaintiff and the Class, had a duty to disclose to consumers that the Contaminated Products contained heavy metals, including lead, cadmium, and arsenic.

281. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and the Class, and other reasonable consumers, would have considered them in deciding whether to purchase the Contaminated Products. Had Plaintiff and the Class Members known the Contaminated Products did not have the quality, ingredients, standards, and suitability for use as advertised by Amazon and contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic, they would not have purchased the Contaminated Products or paid a premium price.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

282. Defendant alone possessed the information that was material to Plaintiff and the Class and failed to disclose such material information to consumers.

283. Defendant misrepresented, partially misrepresented, omitted, suppressed, and concealed material facts regarding the Contaminated Products, namely the fact that the Contaminated Products contained heavy metals, including lead, cadmium, and arsenic.

284. Amazon concealed and failed to disclose the Omissions—material facts necessary to make the Misrepresentations and partial misrepresentations not misleading.

285. The cumulative effect of the marketing on the packaging of the Contaminated Products and on their product pages creates the net impression the Contaminated Products are clean—an impression that is inconsistent with the presence of heavy metals through communications such as:

a. “good, clean nutrition”;

b. “higher standards”;

c. prominent display of “USDA organic” certification;

d. “certified plant based” verification logo;

e. “The Power of Clean”; and

f. “uber clean ingredients.”

286. As a result of Defendant’s Misrepresentations and partial misrepresentations and net impression, with no disclosures as to the presence or risk of heavy metals in the Contaminated Products at the point-of-sale, Plaintiff did not expect the Contaminated Products to contain heavy metals.

287. Defendant intended for Plaintiff and the Class to rely on its Misrepresentations and partial misrepresentations, Omissions, active concealment, and other deceptive conduct regarding the Contaminated Products’ quality, ingredients, standards, and suitability for use when purchasing the Contaminated Products, unaware of the undisclosed material facts.

288. Plaintiff and the Class Members did in fact rely on the material Misrepresentations, partial misrepresentations, and Omissions and purchased the Contaminated Products to their


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

detriment. Given the materiality of the Omissions, Plaintiff's and the Class's reliance on the Misrepresentations, partial misrepresentations, and Omissions was justifiable.

289. Because identifying the presence of heavy metals requires expensive and sophisticated laboratory testing, reasonable consumers, such as Plaintiff, could not reasonably conduct their own testing and learn of the inclusion of heavy metals in the Contaminated Products unless Defendant includes a proper disclosure. The cost of conducting heavy metals testing of the Contaminated Products by Defendant, a retailer with more than $700 billion in revenue in 2025,[134] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a consumable product at the point of sale.

290. Consumers are also unable to conduct their own heavy metals testing until *after* they purchase the Contaminated Products.

291. Even though Amazon was well aware of consumers' inability to learn of the presence of heavy metals in the Contaminated Products before purchasing, it did not disclose those material facts to consumers.

292. Amazon further knows that reasonable consumers, including Plaintiff and the Class, rely on the point-of-sale webpages because they are not able to inspect or have the Contaminated Products tested before buying. Amazon knew the Misrepresentations, partial misrepresentations, Omissions, and net impression would induce Plaintiff and the Class Members to purchase the Contaminated Products.

293. Amazon concealed the Omissions intending for consumers to rely on the Misrepresentations. Had Amazon disclosed them, Plaintiff would not have bought the Contaminated Products or would not have paid the price she did.

294. Amazon had a duty to disclose the Omissions on three independent grounds:

- *Seller's knowledge*. As the seller of the Contaminated Products, Amazon had a duty to disclose the Omissions because they are material

[134] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

facts known to Amazon that consumers cannot discover prior to purchase.

- *Half-truths*. Amazon chose to speak about the purity of the Contaminated Products, including statements that the Products, *e.g.*, "good, clean nutrition"; "higher standards"; prominent display of "USDA organic" certification; "certified plant based" verification logo; "The Power of Clean"; and "uber clean ingredients." Having spoken on those subjects, Amazon had a duty to disclose the facts that support what it said, including the Omissions.
- *Special position of trust*. Amazon, as the host of the platform where the Contaminated Products are sold, is in a special position of trust upon which consumers rely. Amazon controls the format and content of the point-of-sale webpages for all of the Contaminated Products. Consumers cannot see, handle, or inspect products, including the Contaminated Products, before buying them on Amazon's platform, so consumers must rely on what Amazon chooses to show them, and Amazon knows they do and invites that reliance. In fact, Amazon purposefully acts to gain customer trust. One of the basic leadership principles at Amazon includes "[l]eaders . . . work vigorously to earn and keep customer trust."[135] As CEO Jeff Bezos put it when testifying under oath before Congress: "Who do Americans trust more than Amazon to do the right thing? Only their doctors and the military."[136] Or as Amazon noted in a 2022 report, "Since opening our doors in 1995, trust has been at the foundation of everything we do."[137]

---

[135] *Elements of Amazon's Day 1 Culture*, *supra* n.130.

[136] *Opening Statement to Congress on Amazon.com, Inc.*, *supra* n.131.

[137] *Brand Protection Report*, *supra* n.132.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

295. Plaintiff and the Class Members purchased the Contaminated Products that contain undisclosed levels of heavy metals despite the availability of other protein powder products with non-detectable levels of heavy metals.

296. Amazon's deceptive and unfair acts or practices, as alleged herein, injured Plaintiff and the Class in their business or property. Despite the availability of other protein powder products with non-detectable levels of heavy metals, Defendant charged, and Plaintiff and the Class paid, a price premium for the Contaminated Products that were marketed as pure and clean but did not receive the benefit of the bargain. The Contaminated Products are objectively different from, and worth less than, what was represented by Amazon.

297. Defendant's Misrepresentations and partial misrepresentations, Omissions, active concealment, net impression, and other deceptive conduct alleged herein caused Plaintiff and the Class Members to make their purchases of the Contaminated Products. Plaintiff was unaware of these material facts, and had Defendant communicated these material facts to consumers, Plaintiff and the Class Members would not have purchased the Contaminated Products or would not have purchased the Contaminated Products at the prices they paid. Accordingly, Plaintiff and the Class Members have suffered injury in fact, including lost money or property, as a result of Defendant's Misrepresentations, partial misrepresentations, Omissions, net impression, and other deceptive conduct.

298. Accordingly, Defendant is liable to Plaintiff and the Class Members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

299. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, and in reckless disregard of Plaintiff's and other Class Members' rights, in order to enrich itself. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## COUNT III

### FRAUDULENT MISREPRESENTATION
### (Based on Washington Law
### Against Defendant on Behalf of the Class)

300. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

301. Plaintiff brings this Count on behalf of all Class members as a Nationwide class under Washington law.

302. On the point-of-sale webpages (controlled by Amazon), the Contaminated Products (sold by Amazon) are marketed with affirmative representations, including "good, clean nutrition"; "higher standards"; prominent display of "USDA organic" certification; "certified plant based" verification logo; "The Power of Clean"; and "uber clean ingredients."

303. Amazon advertises the Contaminated Products with the Misrepresentations, Omissions, and net impression communicated on the point-of-sale webpages without disclosing the presence of heavy metals to consumers.

304. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and the Class, and other reasonable consumers, would have considered them in deciding whether to purchase the Contaminated Products. Had Plaintiff and the Class Members known the Contaminated Products did not have the quality, ingredients, standards, and suitability for use as advertised by Amazon and contained or had a material risk of containing heavy metals, including lead, cadmium, and arsenic, they would not have purchased the Contaminated Products or paid a premium price.

305. As Amazon is well aware, consumers seek out and wish to purchase protein products, such as the Contaminated Products, that are pure and will pay for such products they believe possess these qualities.

306. When made by Amazon, the Misrepresentations were false or misleading.

307. Amazon's claims that the Contaminated Products are clean are false because they contain heavy metals, including cadmium, lead, and arsenic.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

308. Amazon knew or should have known the Misrepresentations were false or misleading.

309. Amazon knows it does not test, and that it also does not require manufacturers to test, the Contaminated Products for heavy metals, but does not disclose those material facts to consumers.

310. Amazon is the seller and shipper of the Contaminated Products. Amazon also controls the format and content of the point-of-sale webpages for all products sold on its platform, including the Contaminated Products. As such, Amazon knew or should have known the claims about the purity of the Contaminated Products were false and not as marketed or promised.

311. Amazon is in a superior position to know whether the Misrepresentations, Omissions, and net impression are true, through its control of the point-of-sale webpages.

312. Because identifying the presence of heavy metals requires expensive and sophisticated laboratory testing, reasonable consumers, such as Plaintiff, could not reasonably conduct their own testing and learn of the inclusion of heavy metals in the Contaminated Products unless Defendant includes a proper disclosure. The cost of conducting heavy metals testing of the Contaminated Products by Defendant, a retailer with more than $700 billion in revenue in 2025,[138] would be a trivial expense, especially when compared to the financial burden imposed on individual consumers evaluating a consumable product at the point of sale.

313. Consumers are also unable to conduct their own heavy metals testing until *after* they purchase the Contaminated Products.

314. Even though Amazon was well aware of consumers' inability to learn of the presence of heavy metals in the Contaminated Products before purchasing, it did not disclose those material facts to consumers.

315. Amazon further knows that reasonable consumers, including Plaintiff and the Class, rely on the point-of-sale webpages because they are not able to inspect or have the Contaminated Products tested before buying. Amazon knew the Misrepresentations, partial

[138] *Revenue of Amazon from 2005 to 2025 (in billion U.S. dollars)*, *supra* n.14.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

misrepresentations, Omissions, and net impression would induce Plaintiff and the Class Members to purchase the Contaminated Products.

316. Amazon, as the host and owner of the platform where the Contaminated Products are sold, is in a special position of trust upon which consumers rely. Amazon controls the content of the point-of-sale webpages and knows consumers rely on that content because they cannot inspect or test the Products themselves before buying.

317. Amazon knows the Misrepresentations, Omissions, and net impression would induce consumers, including Plaintiff and the Class, to purchase the Contaminated Products.

318. Because of the Misrepresentations, reasonable consumers, including Plaintiff and the Class, did not know the Contaminated Products were not as marketed or promised by Amazon.

319. For example, Amazon markets the Contaminated Products as "good, clean nutrition," even though consumers cannot inspect or test the Products before purchase.

320. Prior to purchasing the Contaminated Products, reasonable consumers are unable to independently confirm the veracity of the purity statements as marketed and displayed by Amazon on the point-of-sale webpages or determine whether the Misrepresentations, Omissions, and net impression are true.

321. Amazon was well aware of consumers' inability to confirm such attributes before purchasing the Contaminated Products but did not disclose those material facts to consumers.

322. The limited and scattered public reporting concerning the Contaminated Products is not reasonably discoverable by ordinary consumers at the point-of-sale. Reasonable consumers must and do rely on Amazon to honestly report and not omit the truth about the purity of the Products it sells on its platform.

323. Amazon's deceptive and unfair acts or practices, as alleged herein, injured Plaintiff and the Class in their business or property. Despite the availability of other protein powder products with non-detectable levels of heavy metals, Defendant charged, and Plaintiff and the Class paid, a price premium for the Contaminated Products that were marketed as pure and clean


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

but did not receive the benefit of the bargain. The Contaminated Products are objectively different from, and worth less than, what was represented by Amazon.

324. Defendant's Misrepresentations and partial misrepresentations, Omissions, active concealment, net impression, and other deceptive conduct alleged herein caused Plaintiff and the Class Members to make their purchases of the Contaminated Products. Plaintiff was unaware of these material facts, and had Defendant communicated these material facts to consumers, Plaintiff and the Class Members would not have purchased the Contaminated Products or would not have purchased the Contaminated Products at the prices they paid. Accordingly, Plaintiff and the Class Members have suffered injury in fact, including lost money or property, as a result of Defendant's Misrepresentations, partial misrepresentations, Omissions, net impression, and other deceptive conduct.

325. Accordingly, Defendant is liable to Plaintiff and the Class Members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

326. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, and in reckless disregard of Plaintiff's and other Class Members' rights, in order to enrich itself. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court enter judgment against Defendant and grant the following relief:

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

B. Enter judgment against Defendant on Plaintiff's claims for violation of the laws of Washington, and judgment under the law of fraudulent concealment and fraudulent misrepresentation;


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

C. Award Plaintiff and all Class Members their actual damages and judgment under the law of fraudulent concealment;

D. Award treble damages up to the maximum amount permitted under RCW § 19.86.090;

E. Award Plaintiff and the Class reasonable attorneys' fees and costs of suit pursuant to RCW § 19.86.090;

F. Enter injunctive relief requiring Defendant to: (i) disclose the presence and levels of heavy metals, including lead, cadmium, and arsenic, in the Contaminated Products sold on Amazon.com; and (ii) cease selling such products without adequate disclosure of heavy metal contamination;

G. Award pre-judgment and post-judgment interest at the maximum rate permitted by law; and

H. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

DATED: November 23, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
Steve W. Berman, WSBA No. 12536
By: */s/ Shelby Smith*
Shelby Smith, WSBA No. 31377
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
shelby@hbsslaw.com

Rebecca A. Peterson (*pro hac vice*)
Krista K. Freier
Arica F. Reesman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (952) 246-5155

Email: rebecca.peterson@hbsslaw.com
krista.freier@hbsslaw.com
arica.reesman@hbsslaw.com

*Attorneys for Plaintiff*



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX